UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

GABRIEL MARQUEZ VARGAS,

               Plaintiff,

    v.

RRA CP OPPORTUNITY TRUST 1, REAL
TIME RESOLUTIONS, INC., and NORTH
STAR TRUSTEE, LLC,

               Defendants

Case No.: 2:22-cv-01440-LK

Defendants RRA CP Opportunity
Trust 1 and Real Time Resolutions'
Motion To Dismiss

Oral Argument Requested

Note On Motion Calendar:
January 20, 2023

MOTION TO DISMISS
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. FACTS ...................................................................................................................... 2

III. LEGAL STANDARD................................................................................................ 5

IV. ARGUMENT ............................................................................................................ 7

    A.    The statute of limitations to enforce the Deed of Trust and Note has not expired, and therefore Plaintiff fails to state a claim for quiet title. ...................... 7

    B.    The Complaint's Fair Debt Collection Practices Act count fails to state a claim because the limitations period is not expired, the RRA Defendants have standing to bring a non-judicial foreclosure, Plaintiff lacks standing to challenge the Note's assignment, and the statute of limitations has run on many of the FDCPA claims. ................................................................... 10

        1.    There can be no FDCPA claim based on the Note's statute of limitations being expired because it is not expired. ................................ 10

        2.    The DTA permits a holder of a note to bring a non-judicial foreclosure and does not require proof of outright ownership................. 10

        3.    The Note is negotiable. .......................................................................... 13

        4.    Even if the Note is not negotiable, the RRA Defendants have the right to bring a non-judicial foreclosure action because the holder of an original non-negotiable note and deed of trust is entitled to enforce it. ............................................................................................... 14

        5.    Plaintiff lacks standing to challenge the assignment of loan documents. ............................................................................................. 19

        6.    Whether the Note was charged off is immaterial to a FDCPA claim..................................................................................................... 20

        7.    Many of the Complaint's FDCPA claims have expired. ........................ 20

    C.    The Complaint fails to state a claim for violation of the CPA and for injunctive and declaratory relief because RRA Defendants did not seek to collect time-barred debts................................................................................... 21

V. CONCLUSION.......................................................................................................... 22

MOTION TO DISMISS - i
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*,
382 P.3d 1 (Wash. Ct. App. 2016)...................................................................................8

*Andrews v. Countrywide Bank, NA*,
95 F. Supp. 3d 1298 (W.D. Wash. 2015)........................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................5

*Barker v. Round Hill Country Club*,
No. C08-2977SI, 2008 WL 4447730 (N.D. Cal. Sept. 30, 2008)...................................6

*Bavand v. OneWest Bank*,
385 P.3d 233 (Wash. Ct. App. 2016), *as modified* (Dec. 15, 2016) .........................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................5

*Birmingham Trust & Sav. Co. v. Jackson Cnty. Mill Co.*,
27 So. 43 (Fla. 1899)......................................................................................................17

*Blair v. Nw. Tr. Servs., Inc.*,
372 P.3d 127 (Wash. Ct. App. 2016)........................................................................11, 12

*Brown v. Washington State Dep't of Com.*,
359 P.3d 771 (Wash. 2015).................................................................................12, 14, 15

*Campidoglio LLC v. Wells Fargo & Co.*,
2012 WL 4514333 (W.D. Wash. Oct. 2, 2012) ...............................................................5

*Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*,
434 P.3d 554 (Wash. Ct. App. 2019)..............................................................................9

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) .........................................................................................5

*CHD, Inc. v. Boyles*,
157 P.3d 415 (Wash. Ct. App. 2007)..............................................................................19

MOTION TO DISMISS - ii
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) .............................................................................................5, 13

*In re Columbia Pac. Mortg., Inc.*,
22 B.R. 753 (Bankr. W.D. Wash. 1982) ...................................................................................16

*Deutsche Bank Nat'l Tr. Co. v. Harris*,
No. 82622-1-I (Wash. Ct. App. Apr. 25, 2022) ...................................................................17

*Dollar v. Int'l Banking Corp.*,
109 P. 499 (Cal. Ct. App. 1910) ...................................................................................17

*Edmundson v. Bank of Am.*,
378 P.3d 272 (Wash. Ct. App. 2016) .............................................................................1, 7

*Edward L. Eyre & Co. v. Hirsch*,
218 P.2d 888 (Wash. 1950)...................................................................................17

*Edwards v. JPMorgan Chase Bank, N.A.*,
No. C10-5839BHS, 2011 WL 3516155 (W.D. Wash. Aug. 11, 2011) ....................................10

*Gidden Motor Co. v. Johnston*,
124 So. 367 (Miss. 1929)...................................................................................17

*Hummel v. Nw. Tr. Servs., Inc.*,
180 F. Supp. 3d 798 (W.D. Wash. 2016).............................................................................19

*Hunter v. Bank of Am., N.A.*,
No. 2:16-CV-01718-RAJ, 2021 WL 928176 (W.D. Wash. Mar. 11, 2021)..........................12

*Kalk v. Sec. Pac. Bank Wash. N.A.*,
866 P.2d 1276 (Wash. Ct. App. 1994)...................................................................................16

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...................................................................................2

*Krieg v. Palmer Nat'l Bank*,
111 N.E. 31 (1916)...................................................................................17

*Kucher v. Scott*,
165 P. 82 (Wash. 1917)...................................................................................17

*Lake v. MTC Fin., Inc.*,
No. C16-1482JLR, 2017 WL 1378438 (W.D. Wash. Apr. 11, 2017) ....................................19

MOTION TO DISMISS - iii
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

*Lake v. MTC Fin., Inc.*,
   No. C16-1482JLR, 2017 WL 3129624 (W.D. Wash. July 24, 2017)....................................19

*Lodge v. Lewis*,
   72 P. 1009 (Wash. 1903)....................................................................................................19

*Maryland Cas. Co. v. Grays Harbor Cnty.*,
   293 P. 441 (Wash. 1930)....................................................................................................17

*McDonald v. OneWest Bank, FSB*,
   929 F. Supp. 2d 1079 (W.D. Wash. 2013)......................................................................11, 16

*Merceri v. Bank of New York Mellon*,
   434 P.3d 84 (Wash. Ct. App. 2018)......................................................................................8

*Merritt v. USAA Fed. Sav. Bank*,
   No. 82162-8-I, 2022 WL 895949, *review granted,* 516 P.3d 372 (2022) ...............................8

*Nat'l Bank of San Diego v. Falkenhan*,
   29 P. 866 (Cal. 1892) ........................................................................................................17

*OneWest Bank, FSB v. Erickson*,
   367 P.3d 1063 (Wash. 2016)..............................................................................................16

*Petheram v. Wells Fargo Bank*,
   2013 WL 4761049 (W.D. Wash. Sept. 3, 2013)..............................................................5, 12

*Piland v. Nationstar Mortg., LLC*,
   No. 2:12-CV-00444-MJP, 2013 WL 593790 (W.D. Wash. Feb. 15, 2013) ...........................2

*Renfroe v. Quality Loan Serv. Corp. of Washington*,
   No. 2:17-CV-00194-SMJ, 2017 WL 6733968 (E.D. Wash. Dec. 29, 2017)..........................14

*Rodgers v. Seattle-First Nat. Bank*,
   697 P.2d 1009 (Wash. Ct. App. 1985)........................................................................12, 16, 20

*Saepoff v. HSBC Bank USA as Tr. for Ace Sec. Corp. Home Equity Loan Tr.
   2007-WM2*,
   No. 20-36031, 2022 WL 1500799 (9th Cir. May 12, 2022)..................................................12

*Sebring v. Fagin*,
   141 P.2d 792 (Okl. 1943)....................................................................................................18

*Snider v. United States*,
   No. 520CV02644JWHSHKX, 2021 WL 8773826 (C.D. Cal. Dec. 9, 2021)..........................6

MOTION TO DISMISS - iv
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

*Swedish-Am. Bank of Minneapolis v. Koebernick*,
  117 N.W. 1020 (Wis. 1908) .................................................................................. 18

*Taylor v. PNC Bank, Nat'l Ass'n*,
  No. C19-1142-JCC, 2019 WL 4688804 (W.D. Wash. Sept. 26, 2019) ................... 8

*Virginia Lee Homes, Inc. v. Schneider & Felix Const. Co.*,
  395 P.2d 99 (Wash. 1964) .................................................................................... 17

*Wood v. Sparks*,
  42 S.W.2d 142 (Tex. Civ. App. 1931) ................................................................... 18

*Wylde v. Schoening*,
  164 P. 752 (Wash. 1917) ...................................................................................... 17

**Statutes**

15 U.S.C. § 1692k(d) ................................................................................................. 21

Washington's Consumer Protection Act ................................................. 1, 5, 6, 7, 21, 22

Deed of Trust Act ........................................................ 1, 7, 10, 11, 12, 13, 18, 19, 22

Fair Debt Collection Practices Act ........................... 1, 5, 6, 7, 10, 13, 18, 19, 20, 21, 22

Uniform Commercial Code ................................................................................. 11, 14, 15

Uniform Commercial Code Article 3 ............................................................. 1, 13, 14, 15

Uniform Commercial Code Article 9 ........................................................ 1, 12, 13, 14, 15, 22

Uniform Commercial Code Section 3-104 ................................................................... 15

Wash. Rev. Code § 19.86.120 ..................................................................................... 21

Wash. Rev. Code § 61.24.03(7)(a) ............................................................................. 12

Wash. Rev. Code § 61.24.005(2) ............................................................................... 11

Wash. Rev. Code § 61.24.030(7)(a) ......................................................................... 1, 11

Wash. Rev. Code § 61.24.030(8), 61.24.010(2) ........................................................ 11

Wash. Rev. Code § 61.24.130 ..................................................................................... 11

Wash. Rev. Code § 61.24.130(7)(a) ........................................................................... 10

MOTION TO DISMISS - v
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

Wash. Rev. Code § 62A 1-201(a)(21) ...................................................................................11

Wash. Rev. Code § 62A.3-104 ......................................................................................13, 15

Wash. Rev. Code § 62A.9A.102(a)(47)..............................................................................14

Wash. Rev. Code § 62A.9A-203(b)....................................................................................12

Wash. Rev. Code § 62A.9A-330(d).....................................................................................20

**Other Authorities**

12 C.F.R. § 1026.5(b)(2)(i)................................................................................................20

12 C.F.R. § 1026.5(b)(2)(i) and 1026.7..............................................................................20

12 C.F.R. §1026.7...............................................................................................................20

Dale A. Whitman, *Transferring Nonnegotiable Mortgage Notes*, 11 Fla. A&M
   U.L. Rev. 63, available at
   http://commons.law.famu.edu/famulawreview/vol11/iss1/8 ...................................15

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 5, 6

Restatement (Second) of Contracts, § 332, cmt. c (Am. L. Inst. 1981).........................16

Washington HB 2057, 2018, Residential Real Property—Abandonment and
   Foreclosure, at 2, available at https://lawfilesext.leg.wa.gov/biennium/2017-
   18/Pdf/Bills/Session%20Laws/House/2057-S.SL.pdf?q=20221227130939
   (last visited December 27, 2022) ............................................................................11

MOTION TO DISMISS - vi
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

## I.    Introduction

This Court should dismiss Plaintiff's First Amended Complaint, Dkt. #26 (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief can be granted. The Complaint's causes of action are built on a foundation of erroneous and unsupported legal conclusions related to, *inter alia*, the statute of limitations for installment notes and HELOC loans and, when removed, Plaintiff's quiet title claim, Fair Debt Collection Practices Act ("FDCPA") claim, and Washington Consumer Protection Act ("CPA") claim collapse. Plaintiff's Complaint should be dismissed with prejudice.

*First*, the Complaint disregards settled Washington law in asserting that the limitations period runs from the time of last payment. Not so. Under Washington law, the statute of limitations on an installment note—like the note at issue here—runs on each installment due under the note from the time that each installment payment becomes delinquent. *See Edmundson v. Bank of Am.*, 378 P.3d 272, 277 (Wash. Ct. App. 2016).

*Second*, the Complaint attempts to dress up as a factual allegation the (erroneous) legal conclusion that Article 9 proof of ownership for non-judicial foreclosures is required for instruments not subject to Article 3 of the UCC. But Plaintiff is again mistaken as that legal conclusion directly contradicts Washington's Deed of Trust Act ("DTA"), which allows foreclosure by an instrument holder. *See* Wash. Rev. Code § 61.24.030(7)(a).

*Third*, even if Plaintiff's erroneous legal conclusions were correct, Plaintiff does not have standing to challenge the assignment of the Deed of Trust and Note (both terms defined *infra*) to Defendant RRA CP Opportunity Trust 1 ("RRA"), and the statute of limitations has run on many of the allegations in Plaintiff's FDCPA and CPA claims. The Complaint should be dismissed with prejudice.

MOTION TO DISMISS - 1
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

## II.     Facts

In December of 2005, Plaintiff Gabriel Marquez Vargas ("Plaintiff" or "Vargas") purchased the real property located at 4611 S. 164th St., Tukwila, WA 98188 (the "Property") through "an 80/20 mortgage." Compl. ¶¶ 1, 21. An 80/20 mortgage is where 80 percent of the property's purchase price is paid through a traditional mortgage, while the remaining 20 percent is paid through a subordinate home equity line of credit. *Piland v. Nationstar Mortg., LLC*, No. 2:12-CV-00444-MJP, 2013 WL 593790, at *1 (W.D. Wash. Feb. 15, 2013).

The December 7, 2005 Home Equity Credit Line Agreement and Disclosure Statement (the "Note") allowed a maximum credit limit of $59,900.00, which was the amount Plaintiff used to pay for the remaining 20 percent of the Property. Compl. ¶ 22; *see* Ex. 1-3 (the "RTR Letter") at 278–292.[1] The Lender under the Note was Countrywide Home Loans, Inc. Ex. 1-1 at 19. The Note is endorsed in blank with "Pay to the order of _____, without recourse, Countrywide Home Loans, Inc." and signed by Countrywide's Managing Director, David A. Spector. *Id.* at 53.

The $59,900.00 Note was secured by a Deed of Trust in the Property, which was recorded in King County on December 15, 2005 as Instrument No. 20051215002817 (the "Deed of Trust"). Compl. ¶ 28. The Deed of Trust cross-referenced the Note and defined the term Note as the "Home Equity Credit Line Agreement And Disclosure Statement." Compl. ¶ 32; Ex. 1-1 at 56. Landsafe Title of Washington was the named trustee under the Deed of Trust and Mortgage Electronic Registration Systems, Inc. ("MERS") was the named beneficiary. Compl. ¶¶ 29–30;

---

[1] Exhibit 1 to this Motion is an October 7, 2022 Letter from counsel for Defendant Real Time Resolutions, Inc. ("RTR") to Plaintiff's counsel Barraza Law. Due to size of this letter it is broken into four sub-parts, and cited to accordingly. An incomplete copy of this letter is attached to and referred to in the Complaint at Dkt. #26-1. Attaching a complete copy of the letter relied on and incorporated into Plaintiff's Complaint does not convert this Motion into a motion for summary judgment. *See infra* Argument § III. The Court may consider the complete copy of the letter under the incorporation-by-reference doctrine which treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting other portions. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citations omitted).

MOTION TO DISMISS - 2
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

Ex. 1-1 at 55. MERS was acting solely as nominee for Countrywide Home Loans, Inc. and its successors and assigns. Ex. 1-1 at 55.

The Note allowed a 60-month draw period that automatically renewed for an additional 60 months. *Id.* at 44, § 1. After the draw period, Plaintiff had to "pay the outstanding balance over the specified Repayment Period" unless the account was terminated under specific circumstances, in which case the outstanding balance became "payable in full at the time of such termination." *Id.* The Note set the Repayment Period at 180 months. *Id.* During the Repayment Period, "the Minimum Payment Due equals 1/180th of the outstanding principal balance of [the] Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any 'Amount Past Due.'" *Id.* at 47, § 4(G). Therefore, the Note has a maximum maturity of 300 months, or 25 years. The Deed of Trust confirms this, stating "TERM: The Maximum term of the Note is 25 years, including any renewals or extensions thereof." *Id.* at 56. This was further explained in plain language to Plaintiff, with examples of minimum payment requirements, in a document titled "Important Terms of Our Home Equity Line of Credit." Ex. 1-4 at 445.

Plaintiff made payments under the Note until February 18, 2011, when he made his last payment. Compl. ¶¶ 45–46; Ex. 1-4 at 407–410. RTR continued to send statements after Plaintiff stopped making payments. Compl. ¶ 54; *see generally* Ex. 1-1 to 1-4. Contrary to the Complaint's assertions, the statements detailed the effective interest rate. *Compare* Compl. ¶¶ 50–52 *with* Ex. 1-1 to 1-4.

In 2012, the Deed of Trust was assigned from MERS to The Bank of New York Mellon.[2] Ex. 1-1 at 60–61. From 2005 to July 1, 2011, the Note was serviced by BAC Home Loans Servicing LP, a subsidiary of Bank of America, which then transferred it to Bank of America,

---

[2] The full name listed is "The Bank of New York Mellon FKA The Bank of New York, as Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee on Behalf of the Certificate Holders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2005-I." Ex. 1-1 at 60.

MOTION TO DISMISS - 3
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

N.A. Ex. 1-3 at 299–302. The letter noting this transfer indicated that Plaintiff owed $63,824.14 as of July 6, 2011. *Id.* at 301.

RTR began servicing the Note on or around November 2012, and Plaintiff was notified of this change by Bank of America on October 12, 2012, and by RTR on November 7, 2012. *Id.* at 293–98. The Bill of Sale dated June 28, 2016, notes that the Bank of New York Mellon sold the Note and Deed of Trust to RRA on April 22, 2016. Ex. 1-1 at 66. By letter dated July 26, 2016, RTR notified Plaintiff of this sale. *Id.* at 63. An assignment of the Deed of Trust to RRA was recorded in 2017. *Id.* at 62.

In its October 7, 2022 letter, RTR provided Plaintiff a home loan history statement from Bank of America that detailed (i) payments received by Bank of America from Plaintiff, (ii) servicing expenses Bank of America paid to third parties, and (iii) late charges assessed and paid. Ex. 1-4 at 406–11. The Bank of America statement does not show missed payments, when payments were due, or whether statements or any sort of written correspondence were produced. *Id.* Therefore, it cannot indicate a statement gap. RTR sent a Loan History Summary showing amounts due from November 6, 2012 to the present. *Id.* at 433–37.

There is no indication or allegation that the Note was ever accelerated. On or around April 5, 2022, David Rosas, Real Time's Director of Loss Mitigation executed a document entitled "Declaration of Note Holder" which indicated that RRA through its attorney in fact, RTR, is the "holder of the Promissory Note dated 12/7/2005" and that it has possession of the original note. Compl. ¶ 67; Ex. 2.[3] On or around May 9, 2022, the current trustee of the Deed of Trust, Defendant North Star Trustee, LLC, executed and served the Notice of Default on Plaintiff. Compl. ¶ 68. The Notice of Default stated that the Note Amount was $59,900.00 and that Interest was paid to April 25, 2016, with a next due date of May 25, 2016. *Id.* On or about

---

[3] The Declaration of Note Holder is attached as Exhibit 2 to this Motion. It is relied on and incorporated by reference in the Complaint and is a declaration given under oath. Reliance on it in this Motion does not convert this Motion to a summary judgment motion. *See infra* § III.

MOTION TO DISMISS - 4
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

July 15, 2022, a Notice of Trustee sale was prepared, served, and recorded, noting the same Note amount, interest, and next due date, and noting payments due from May 25, 2016, through July 1, 2022. Compl. ¶ 70; Ex. 3 at 477.[4] The Notice of Trustee sale indicated that the trustee sale would occur on November 18, 2022. Ex. 3 at 476.

On October 11, 2022, Plaintiff filed his initial complaint alleging a cause of action for quiet title, violations of the FDCPA, violations of the CPA, and asking for declaratory and injunctive relief. The trustee sale was postponed following the filing of the initial complaint. On December 5, 2022, Plaintiff filed an amended complaint but did not alter the counts.

### III. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted if "the facts alleged in the complaint, taken as true, [do not] entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Thus, to survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citations

---

[4] Exhibit 3 to this Motion is a copy of the July 15, 2022, Notice of Trustee Sale issued by Defendant North Star Trustee LLC. It is referenced in the Complaint, and it is a publicly recorded notice of trustee sale, which the Court can take judicial notice of. *Petheram v. Wells Fargo Bank*, 2013 WL 4761049, at *1 (W.D. Wash. Sept. 3, 2013) (taking judicial notice of "the Notice of Trustee's Sale"); *Campidoglio LLC v. Wells Fargo & Co.*, 2012 WL 4514333, at *3 (W.D. Wash. Oct. 2, 2012) (taking judicial notice of mortgage notes and deeds of trust).

MOTION TO DISMISS - 5
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

omitted). Therefore, the many legal conclusions in the Complaint relating to the statute of limitations, HELOC loans, the FDCPA, and the CPA should not be taken as true.

Additionally, "[i]n considering a Rule 12(b)(6) motion, a court may 'consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.'" *Snider v. United States*, No. 520CV02644JWHSHKX, 2021 WL 8773826, at *2 (C.D. Cal. Dec. 9, 2021) (quoting *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)). "This includes 'evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'" *Id.* (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). A court may treat these documents "as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss." *Id.* Accordingly, because the RTR Letter, the April 5, 2022 Declaration of Note Holder, and the July 15, 2022 Notice of Trustee Sale (Exhibits 1-3) are central to Plaintiff's claims, extensively referenced in the complaint, and their authenticity cannot reasonably be questioned, this Court may consider these documents without converting this Motion into a motion for summary judgment. *See Snider*, 2021 WL 8773826, at * 3 (finding medical records incorporated by reference where they were referenced and quoted in the complaint and where "incomplete" copies of those records were attached to the complaint); *Barker v. Round Hill Country Club*, No. C08-2977SI, 2008 WL 4447730, at *1 (N.D. Cal. Sept. 30, 2008), *aff'd sub nom. Barker v. Round Hill Cnty. Club*, 350 F. App'x 175 (9th Cir. 2009) (considering a complete copy of an agreement submitted by the defendant on a motion to dismiss where "plaintiffs attached an incomplete copy of the" agreement).

MOTION TO DISMISS - 6
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

## IV.    Argument

Plaintiff's allegations do not allege sufficient facts to be plausible on their face because they rely on incorrect legal conclusions and do not allege sufficient facts to state a claim. First, the statute of limitations has not expired on the Note, which means that quiet title cannot be granted to Plaintiff and there are no violations of the FDCPA or CPA on that basis. Second, under the DTA, RRA Defendants do not have to prove up each assignment of the Note to proceed with a non-judicial foreclosure and are only required to declare that they are the note holder, which North Star Trustee, LLC is entitled to rely on. Therefore, there is no violation of the FDCPA or the CPA on that basis. Third, Plaintiff does not have standing to dispute the assignment to RRA.  Finally, the statute of limitations expired on many allegations in the FDCPA and CPA claims.

**A.    The statute of limitations to enforce the Deed of Trust and Note has not expired, and therefore Plaintiff fails to state a claim for quiet title.**

Plaintiff disregards established Washington case law in wrongly concluding that the statute of limitations "completely" bars the RRA Defendants'[5] attempts to foreclose on the Note and Deed of Trust. Indeed, a note and deed of trust are subject to a six-year statute of limitations. *Edmundson*, 378 P.3d at 276. When a note is payable on demand, the statute of limitations begins to run after the note is executed and expires six years thereafter. *Id.* 276–77. But, when the note is an installment note—*i.e.*, a note payable in periodic installments over an extended period of time—"the statute of limitations runs against *each installment* from the time it becomes due; that is, from the time when an action might be brought to recover it." *Id.* at 277 (emphasis added) (quoting *Herzog v. Herzog*, 161 P.2d 144–45 (Wash. 1945)).

Moreover, the "final six-year period to take . . . action related to the debt does not begin to run until it fully matures." *Merceri v. Bank of New York Mellon*, 434 P.3d 84, 87 (Wash. Ct.

---

[5] Defendant RRA and Defendant RTR are collectively referred to as RRA Defendants.

MOTION TO DISMISS - 7
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

App. 2018). And it is only when "an obligation that is to be paid in installments is accelerated, [that] the remaining balance becomes due and the statute of limitations is triggered for *all* installments that had not previously become due." *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1, 6 (Wash. Ct. App. 2016) (emphasis added).

Here, there can be no reasonable dispute that the Note is an installment note as it requires periodic payments (*i.e.*, installment payments). *See* Ex. 1-1 at 44, § 1. Indeed, the Note and Deed of Trust require periodic payments during the 120 month Draw Period and further require periodic payments during the Repayment Period equal to 1/180 of the total amount due for 180 months (until the debt is paid off). *See Id.* at 44, § 1; 47, § 4(G). Thus, because the Note requires periodic, installment payments, the Note is an installment contract. Other courts considering whether a HELOC promissory note and accompanying deed of trust are installment contracts have reached the same conclusion for precisely the same reason—the instruments require monthly periodic payments. *Taylor v. PNC Bank, Nat'l Ass'n*, No. C19-1142-JCC, 2019 WL 4688804, at \*2 (W.D. Wash. Sept. 26, 2019); *Merritt v. USAA Fed. Sav. Bank*, No. 82162-8-I, 2022 WL 895949, at \*3, *review granted,* 516 P.3d 372 (2022).

Because the Note is an installment contract, the statute of limitations expired *only* on the specific payments that are more than six years delinquent. For example, the Complaint alleges that Plaintiff last made a payment "in the amount of $342.60 on or about February 18, 2011." Compl. ¶ 45. Therefore, the statute of limitations for the subsequent March 2011 installment expired six-years after it became delinquent in 2017, however, monthly payments continued to accrue for April, May, and so forth in 2011, as well as in each subsequent year. None of those subsequent payments were made, and consequently became delinquent in due course. *See id.* As these payments became delinquent, the six-year statute of limitations for each installment began to run. Put differently, installments under the Note continued to come due after Plaintiff's last payment in 2011 and Plaintiff continued to be obligated to make the monthly installment

MOTION TO DISMISS - 8
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

payments until the Note was either accelerated or matured, at which time the final six-year limitations period would begin to run.

And, to be clear, the Deed of Trust explicitly provides that the maximum maturity of the Note is 25 years. *See* Ex. 1-1 at 56. While there is no allegation that the Note was ever accelerated, *see generally* Compl., Plaintiff disingenuously implies that the Note and Deed of Trust have no right of acceleration, *see* Compl. ¶¶ 27, 33. Plaintiff is wrong. *See* Ex. 1-1 at 50, § 13(B) (providing, *inter alia*, that lender "may declare all sums owing under this Agreement and any other agreement . . . to be immediately due and payable"). Thus, as a matter of law (and at the very least), the Note had not fully matured as of the filing of the Complaint. Therefore, the final six-year statute of limitations was not triggered on the Note.

Moreover, providing a notice of default followed by timely recording a notice of a trustee's sale tolls the statute of limitations. *Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*, 434 P.3d 554, 562 (Wash. Ct. App. 2019) (citing *Edmundson*, 378 P.3d at 277). Accordingly, the statute of limitations was tolled for all installments that became delinquent within six years of May 9, 2022, when the notice of default was prepared and served followed by the recording of the Notice of Trustee Sale. Compl. ¶¶ 68, 70. This is consistent with the default letter and with the Notice of Trustee Sale, which lists the monthly payments due from May 25, 2016, through July 1, 2022 (the month that the Notice of Trustee Sale was recorded). Ex. 3 at 477. The RRA Defendants' action to foreclose is not time barred.

Finally, the Complaint makes numerous allegations related to the RRA Defendants' standing to bring a non-judicial foreclosure action. *See, e.g.*, Compl. ¶ 82. Even if these allegations were true, however, they provide no grounds for granting quiet title based on the underlying debt to Plaintiff. Indeed, a quiet title action is designed to resolve competing claims to ownership, and a borrower's right to the subject property "is contingent upon the borrower's satisfaction of [his/her] loan obligations." *See Edwards v. JPMorgan Chase Bank, N.A.*, No.

MOTION TO DISMISS - 9
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

C10-5839BHS, 2011 WL 3516155, at *3 (W.D. Wash. Aug. 11, 2011) (quoting *Evans v. BAC Home Loan Servicing LP*, 2010 WL 5138394, at *4 (W.D. Wash. Dec. 10, 2010)). Plaintiff has not alleged (and cannot allege) he satisfied his obligations under the Note and Deed of Trust. Accordingly, Plaintiff has no competing ownership claim to the Property; this claim should be dismissed with prejudice. *See id.* (dismissing quiet title action where the plaintiff "failed to allege that they . . . satisfied the loan obligations").

**B.      The Complaint's Fair Debt Collection Practices Act count fails to state a claim because the limitations period is not expired, the RRA Defendants have standing to bring a non-judicial foreclosure, Plaintiff lacks standing to challenge the Note's assignment, and the statute of limitations has run on many of the FDCPA claims.**

**1.      There can be no FDCPA claim based on the Note's statute of limitations being expired because it is not expired.**

Primarily, the Complaint asserts violations of the FDCPA predicated on the expiration of the Note's statute of limitations. *See* Compl. ¶ 94. But since the Note's statute of limitations has not expired, Plaintiff's FDCPA claim fails as a matter of law to the extent it is predicated on the expiration of the statute of limitations.

**2.      The DTA permits a holder of a note to bring a non-judicial foreclosure and does not require proof of outright ownership.**

The Complaint also alleges the RRA Defendants violated the FDCPA by improperly bringing a non-judicial foreclosure action without establishing ownership of the Note. *See* Compl. ¶¶ 96-100. Nestled in this purported factual allegation is the erroneous legal conclusion that Washington law requires proof of ownership to non-judicially foreclose on a note. Not so. Washington law permits the *holder* of a note to non-judicially foreclose on that note. *See* Wash. Rev. Code § 61.24.130(7)(a).

Indeed, non-judicial foreclosure is governed by the DTA. Wash. Rev. Code § 61.24.130. Under the DTA, a "written notice of default must be provided by the beneficiary or the trustee" and the beneficiary has the power to appoint a trustee or successor trustee. *McDonald v.*

MOTION TO DISMISS - 10
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

*OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1086 (W.D. Wash. 2013); Wash. Rev. Code § 61.24.030(8), 61.24.010(2). The DTA specifically defines a beneficiary as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." Wash. Rev. Code § 61.24.005(2). Moreover, as a requisite to the trustee sale, the trustee "shall have proof that the beneficiary is the *holder* of any promissory note or other obligation secured by the deed of trust." Wash. Rev. Code § 61.24.030(7)(a) (emphasis added).[6] A declaration from the beneficiary stating that the beneficiary is the holder of the Note is sufficient proof. *Id.*

The DTA defines the term "beneficiary" broadly so subsequent purchasers of a debt can bring a foreclosure action:

> Traditionally, the "beneficiary" of a deed of trust is the lender who has loaned money to the homeowner . . . . Lenders, of course, have long been free to sell that secured debt, typically by selling the promissory note signed by the homeowner. [The DTA] recognizes that the beneficiary of a deed of trust at any one time might not be the original lender. The act gives subsequent holders of the debt the benefit of the act by defining "beneficiary" broadly . . . .

*Blair v. Nw. Tr. Servs., Inc.*, 372 P.3d 127, 134 (Wash. Ct. App. 2016) (citing *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 36 (Wash. 2012)).

Washington's Uniform Commercial Code ("UCC") "guides the interpretation of what constitutes a holder under the RCW 51.24.005(2) definition of 'beneficiary.'" *Id.* Under the UCC, a "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Wash. Rev. Code § 62A 1-201(a)(21). The beneficiary "must either actually possess the promissory note or be the payee." *Blair*, 372 P.3d at 134 (quoting *Bain*, 285 P.3d at 44). Thus, ownership is not required to enforce

---

[6] In 2018 Washington specifically changed the wording in the statute from "ownership" to "holder," to make clear that proof of ownership was not required. *See* Washington HB 2057, 2018, Residential Real Property—Abandonment and Foreclosure, at 2, available at https://lawfilesext.leg.wa.gov/biennium/2017-18/Pdf/Bills/Session%20Laws/House/2057-S.SL.pdf?q=20221227130939 (last visited December 27, 2022).

MOTION TO DISMISS - 11
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

a note. *Brown v. Washington State Dep't of Com.*, 359 P.3d 771, 778 (Wash. 2015) ("[A] person need not own a note to be entitled to enforce the note.").

Therefore, a note holder seeking to bring a non-judicial foreclosure does not need to prove ownership of the note (as Plaintiff erroneously alleges) but need only possess the note.[7] *Saepoff v. HSBC Bank USA as Tr. for Ace Sec. Corp. Home Equity Loan Tr. 2007-WM2*, No. 20-36031, 2022 WL 1500799, at *2 (9th Cir. May 12, 2022) ("It is not necessary for the holder to establish that it is also the owner of the note secured by the deed of trust.'" (quoting *Deutsche Bank Nat. Tr. Co. v. Slotke*, 367 P.3d 600, 604 (Wash. Ct. App. 2016)). The reason the holder, or person possessing the note, is entitled to enforce a note is to "protect the borrower from being sued fraudulently or by multiple parties on the same note." *Brown*, 359 P.3d at 779; *see also Rodgers v. Seattle-First Nat. Bank*, 697 P.2d 1009, 1011–12 (Wash. Ct. App. 1985) (stating long-settled law that "one paying a note, either negotiable or nonnegotiable, should demand production of it upon payment or risk having to pay again to the assignee").

And to prove the beneficiary is the holder, the beneficiary need only provide "[a] declaration made under the penalty of perjury stating that the beneficiary is the holder of [the] promissory note or other obligation secured by the deed of trust . . . ." Wash. Rev. Code § 61.24.03(7)(a). There is no need for the beneficiary to further prove that it has physical possession of the note. *Hunter v. Bank of Am., N.A.*, No. 2:16-CV-01718-RAJ, 2021 WL 928176, at *13 (W.D. Wash. Mar. 11, 2021), *reconsideration denied,* No. 2:16-CV-01718-RAJ, 2022 WL 59683 (W.D. Wash. Jan. 6, 2022) (citing *Mikhay v. Bank of Am., N.A.*, No. 2:10-CV-01464 RAJ, 2011 WL 167064, at *2 (W.D. Wash. Jan. 12, 2011)); *Petheram*, 2013 WL 4761049, at *3 (W.D. Wash. Sept. 3, 2013) (reasoning that demands to show an original signed promissory note have been widely rejected by federal courts in the Western District of Washington).

---

[7] Indeed, proof of "outright ownership" of an instrument requires proving the elements in UCC Article 9 whether or not the note is negotiable. *See Brown*, 359 P.3d at 779–80 (explaining how Article 9 ownership applies to negotiable instruments); Wash. Rev. Code § 62A.9A-203(b). The DTA, however, specifically does not require proof of Article 9 ownership to bring a non-judicial foreclosure.

MOTION TO DISMISS - 12
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

Here, RRA provided a declaration to the trustee confirming RRA is the holder of the note. *See* Ex. 2. There is no allegation that RRA Defendants did not comply with the requirements of the DTA. Instead, the Complaint argues that "'holding' the HELOC Agreement alone" is insufficient to enforce it. Compl. ¶ 83. This legal conclusion, however, is at odds with Washington law (as explained above). Put simply, the DTA specifically allows an instrument *holder* to enforce a note and bring a non-judicial foreclosure action without any requirement that it prove ownership. The Complaint's legal conclusions to the contrary are incorrect and should be disregarded. *Clegg*, 18 F.3d at 754–55. Therefore, to the extent Plaintiff's FDCPA claim is predicated on the incorrect conclusion that RRA Defendants lacked standing to bring a non-judicial foreclosure action, the claim fails as a matter of law.

The Complaint next fashions a novel duty for the RRA Defendants to prove ownership under Article 9 before they can bring a non-judicial foreclosure based on the conclusion that the note is not a negotiable instrument governed by Article 3. Compl. ¶¶ 83–86, 100. No enhanced duty to prove ownership for holders of non-negotiable notes appears in the DTA.  Additionally, the Complaint's legal conclusions must be rejected because no Washington Court has found an 80/20 HELOC non-negotiable, and, even if the Note were non-negotiable and not subject to Article 3, under the common law, a person possessing the original Note is the holder of the non-negotiable note with the right to enforce it. Plaintiff's FDCPA claim predicated on this novel (and erroneous) duty fails.

### 3. The Note is negotiable.

Washington defines a "negotiable instrument" as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order." Wash. Rev. Code § 62A.3-104. Here, the Note's specific purpose was to provide 20% of the Property's purchase price. Compl. ¶ 22; *See* Ex.1-3 at 278–92. The 20% purchase price was the Note's initial draw, maximum credit limit, and the only amount ever issued under the

MOTION TO DISMISS - 13
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

Note. *See* Ex. 1-1 at 47; Ex. 1-4 at 433–37, 451. Under these circumstances, the Note contained an unconditional promise to pay a fixed amount of money and is a negotiable instrument under Article 3 of Washington's UCC. This conclusion is consistent with Washington case law that has treated HELOCs as negotiable instruments. *See Renfroe v. Quality Loan Serv. Corp. of Washington*, No. 2:17-CV-00194-SMJ, 2017 WL 6733968, at *3 (E.D. Wash. Dec. 29, 2017) (applying Wash. Rev. Code § 62A 1-201(a)(21) to revolving home equity loan), *vacated in part on other grounds Renfroe v. Citibank, NA as trustee of NRZ Pass-Through Tr. VI*, 776 F. App'x 415 (9th Cir. 2019). Regardless, even if the Note is non-negotiable under Article 3, the holder in possession of the original note is still entitled to enforce it.

    **4.    Even if the Note is not negotiable, the RRA Defendants have the right to bring a non-judicial foreclosure action because the holder of an original non-negotiable note and deed of trust is entitled to enforce it.**

The UCC establishes that the person entitled to enforce a negotiable promissory note ("PETE") may be different from the owner of the note. *Brown*, 359 P.3d at 780. The PETE is generally the holder of the note. *Id.* at 778. The PETE may modify, discharge, and enforce the note, even though it is not the owner of the note. *Id.* at 779. Possession of the note is operative to PETE status. *See Id.* at 780. Upon purchase, if the note is delivered to the purchaser, the purchaser becomes the owner of the note and the PETE. *Id.* However, if the seller does not deliver possession of the note and instead "authenticates an agreement that describes the note," the purchaser owns the note but is not the PETE. *Id.* Thus, under UCC article 3, possession of an original note transfers the right to enforce the note.

Article 9 acknowledges that instruments beyond Article 3 negotiable instruments may be transferred by possession. *See* Wash. Rev. Code § 62A.9A.102(a)(47) (stating that an Article 9 instrument includes any "writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type in ordinary course of business is transferred by delivery with any necessary indorsement or assignment."). Further, the comments

MOTION TO DISMISS - 14
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

to UCC Article 3 expressly contemplate that a non-negotiable instrument may be similar to a negotiable instrument in many respects:

> Although such a writing cannot be made a negotiable instrument within Article 3 by contract or conduct of its parties, nothing in Section 3-104 or in Section 3-102 is intended to mean that in a particular case involving such a writing a court could not arrive at a result similar to the result that would follow if the writing were a negotiable instrument. For example, a court might find that the obligor with respect to a promise that does not fall within Section 3-104(a) is precluded from asserting a defense against a bona fide purchaser. . . . [I]t may be appropriate, consistent with the principles stated in Section 1-102(2), for a court to apply one or more provisions of Article 3 to the writing by analogy, taking into account the expectations of the parties and the differences between the writing and an instrument governed by Article 3. Whether such application is appropriate depends upon the facts of each case.

UCC Section 3-104 (i.e. Wash. Rev. Code § 62A.3-104) cmt. 2.

The right to enforce a non-negotiable instrument is determined by the common law. *See* Permanent Editorial Bd. for UCC, Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes (2011), at 4, n. 14, available at https://www.ali.org/media/filer_public/1a/10/1a103e01-5bbe-4d2e-a65c-c766b7b2b054/peb_report_-_november_2011.pdf ("Law other than Article 3, including contract law, governs this determination for non-negotiable mortgage notes") (cited favorably by *Brown*, 359 Wash.2d at 778); Dale A. Whitman, *Transferring Nonnegotiable Mortgage Notes*, 11 Fla. A&M U.L. Rev. 63, 96–97, available at: http://commons.law.famu.edu/famulawreview/vol11/iss1/8 ("If the common law rules for transferring the right to enforcement of nonnegotiable notes are different than the Article 9 rules for transferring their ownership, then ownership and the right of enforcement are bifurcated, whether anyone says so overtly or not.").

Under the common law: "[i]n the regular course of business certain writings are treated as adequately evidencing that a person in possession of the writing is entitled to receive performance and to dispose of the right and its proceeds." Restatement (Second) of Contracts, §

MOTION TO DISMISS - 15
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

332, cmt. c (Am. L. Inst. 1981). The real estate industry's regular course of business is to not distinguish between negotiable and non-negotiable reconveyances of deeds of trusts securing promissory notes. *In re Columbia Pac. Mortg., Inc.*, 22 B.R. 753, 755 (Bankr. W.D. Wash. 1982) (citing 3 Restatement of Contracts (Second) § 338(4) (Am. L. Inst. 1981)) (finding that non-negotiable notes ("instruments") constitute symbolic writings, which evidence the right to payment). Moreover, "instruments . . . such as promissory notes have long been treated as the complete embodiment of the underlying right." *Id.* at 756 (stating that "mere possession of the instrument preserves the right to payment") (citing J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 935 (2nd Ed. 1980)).

Therefore, under Washington law, possession of an original non-negotiable real-estate note evidences the right to enforcement as the holder of the note. *See*, *e.g.*, *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1086 (W.D. Wash. 2013) (holding that the foreclosing party had to have physical possession of the note to initiate non-judicial foreclosure); *OneWest Bank, FSB v. Erickson*, 367 P.3d 1063, 1078 (Wash. 2016) (finding that holder of reverse mortgage promissory note (*i.e.*, revolving line of credit that would be considered non-negotiated instrument) has the right to foreclose); *Rodgers*, 697 P.2d at 1011–12 (stating long-settled law that "one paying a note, either negotiable or nonnegotiable, should demand production of it upon payment or risk having to pay again to the assignee"); *In re Columbia Pac. Mortg., Inc.*, 22 B.R. at 756 ("instruments . . . such as promissory notes have long been treated as the complete embodiment of the underlying right"); *Kalk v. Sec. Pac. Bank Wash. N.A.*, 866 P.2d 1276, 1280 (Wash. Ct. App. 1994), *rev'd on other grounds sub nom. Kalk v. Sec. Pac. Bank Wash. NA*, 894 P.2d 559 (1995) (non-negotiable CD "is transferred in the ordinary course of business by delivery with an endorsement"); *Kucher v. Scott*, 165 P. 82, 84 (Wash. 1917) (whether instrument was negotiable or nonnegotiable was not material in case involving indorsement and delivery of note); *Wylde v. Schoening*, 164 P. 752, 754 (Wash. 1917)

MOTION TO DISMISS - 16
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

(discussing legal significance of possession and control of physical nonnegotiable note in 'actual' conversion of note analysis); *Edward L. Eyre & Co. v. Hirsch*, 218 P.2d 888, 896 (Wash. 1950) (recognizing custom that the sale of property represented by nonnegotiable warehouse receipts "could be made by a delivery of the receipt accompanied with an intention to make a transfer."); *Virginia Lee Homes, Inc. v. Schneider & Felix Const. Co.*, 395 P.2d 99, 101 (Wash. 1964) ("According to the overwhelming weight of authority, a person other than the payee or transferee of a nonnegotiable promissory note who endorses it in blank before delivery is thereby rendered liable to the payee or holder."); *Maryland Cas. Co. v. Grays Harbor Cnty.*, 293 P. 441, 446 (Wash. 1930) (stating non-negotiable warrant could pass by endorsement or assignment); *see also Deutsche Bank Nat'l Tr. Co. v. Harris*, No. 82622-1-I (Wash. Ct. App. Apr. 25, 2022) (allowing summary judgment on judicial foreclosure of HELOC loan from 2005).

And Washington is not alone in concluding that possession of a non-negotiable instrument transfers the right to enforce the note as a majority of states have reached the same conclusion. *See, e.g.*, First *Nat'l Bank of San Diego v. Falkenhan*, 29 P. 866, 866–67 (Cal. 1892) (payee becomes liable in same manner as an indorser of a negotiable note); *Dollar v. Int'l Banking Corp.*, 109 P. 499, 502 (Cal. Ct. App. 1910) (regarding a deposit receipt); *Birmingham Trust & Sav. Co. v. Jackson Cnty. Mill Co.*, 27 So. 43, 43 (Fla. 1899) (nonnegotiable note; under Florida statute, transfer may be by indorsement or by assignment); *Krieg v. Palmer Nat'l Bank*, 111 N.E. 31, 34–36 (1916) ("The nonnegotiability of the instrument under the law merchant does not affect its assignability or defeat the transfer of the legal title by indorsement and delivery thereof, though certain defenses are available against such instrument that are not available against the holder of an instrument which is negotiable by the law merchant.); *Gidden Motor Co. v. Johnston*, 124 So. 367, 368 (Miss. 1929) (certificate of claim on bank issued by state banking department; "[n]onnegotiable instruments which partake of the nature of commercial paper are assignable by indorsement and delivery; and such an indorsement on paper of the general

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

character aforesaid and thereupon its delivery has the legal effect to transfer, and to transfer absolutely, all the right, title, and interest of the indorser therein, although, of course, it does not as to the payer or maker of that paper operate to convert the same into a negotiable instrument"); *Sebring v. Fagin*, 141 P.2d 792, 793 (Okl. 1943) (state warrant; "state or municipal warrants, though negotiable in form, possess none of the attributes or qualities of commercial paper except that such can be transferred by delivery or assignment; that they are not negotiable instruments"); *Wood v. Sparks*, 42 S.W.2d 142, 144 (Tex. Civ. App. 1931), *rev'd on other grounds*, 59 S.W.2d 361 (Tex. Comm'n App. 1933) (note evidencing mechanics lien; "[t]he fact that it was made payable to W. P. Sparks or order, evidences the intention of the parties that title thereto should pass by indorsement and delivery of the instrument, and such was the effect thereof."); *Swedish-Am. Bank of Minneapolis v. Koebernick*, 117 N.W. 1020, 1021 (Wis. 1908) (nonnegotiable note; "An indorsement by the payee of his name on the back of a nonnegotiable promise to pay, accompanied by delivery of the instrument, constitutes prima facie a valid transfer of the chose in action and the debt represented by it, and the purchaser may maintain action thereon.").

Even if the Note were non-negotiable, it is a real estate promissory note endorsed in blank, and possession of the original note shows that RRA is the note holder with the right to enforce it. This is consistent with Washington law, the DTA, and the law in the majority of states. The note holder is authorized under the DTA to bring a non-judicial foreclosure without the need to prove ownership.[8] Therefore, the Complaint's legal conclusion that RRA Defendants lacked standing to non-judicially foreclose on the Property do not need to be considered and do not state a cause of action for violating the FDCPA.

---

[8] Even though RRA does not need to prove ownership to proceed with a non-judicial foreclosure, Plaintiff was provided a redacted copy of the bill of sale showing that the Note is owned by RRA. Ex. 1-1 at 66–68.

MOTION TO DISMISS - 18
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

**5. Plaintiff lacks standing to challenge the assignment of loan documents.**

It is "well established" that a borrower, like Plaintiff, "lack[s] standing to challenge the assignment of its documents unless the borrower shows that it is at a genuine risk of paying the same debt twice." *Andrews v. Countrywide Bank, NA*, 95 F. Supp. 3d 1298, 1301, 1301–1302 (W.D. Wash. 2015) (citing *Borowski v. BNC Mortgage, Inc.*, No. C12–5867 RJB, 2013 WL 4522253, at *5 (W.D. Wash. Aug. 27, 2013); *Brodie v. Nw. Trustee Servs., Inc.*, No. 12–CV–0469–TOR, 2012 WL 6192723, at *2–3 (E.D. Wash. Dec. 12, 2012)); *Hummel v. Nw. Tr. Servs., Inc.,* 180 F. Supp. 3d 798, 806 (W.D. Wash. 2016); *Lake v. MTC Fin., Inc.*, No. C16-1482JLR, 2017 WL 1378438, at *4 (W.D. Wash. Apr. 11, 2017) (granting motion to dismiss on an FDCPA claim based on standing to challenge the chain of assignment of a deed of trust). *But see Bavand v. OneWest Bank*, 385 P.3d 233, 244 (Wash. Ct. App. 2016), *as modified* (Dec. 15, 2016) (holding borrowers have standing under state law to sue for relief from non-judicial foreclosure).

The rationale for this rule is "that a borrower cannot be injured by the allegedly fraudulent conduct because the borrower is neither a party to nor an intended beneficiary of the challenged agreements." *Lake v. MTC Fin., Inc.*, No. C16-1482JLR, 2017 WL 3129624, at *5 (W.D. Wash. July 24, 2017), *aff'd sub nom. Lake v. Deutsche Bank Tr. Co. Americas as trustee for Certificate Holders of Dover Mortg. Cap. 2005-A corporation*, 740 F. App'x 609 (9th Cir. 2018); *Lodge v. Lewis*, 72 P. 1009, 1010 (Wash. 1903) (stating question of whether plaintiff in judicial foreclosure is holder and owner of note cannot be raised by the maker of the note because it is a question "more interesting to the assignor and the assignee").

Non-judicial foreclosure under the DTA extinguishes the debt and transfers title of the property by operation of law, whether the Note is a negotiable or non-negotiable instrument. *See CHD, Inc. v. Boyles*, 157 P.3d 415, 417 (Wash. Ct. App. 2007). Therefore, there is no risk that Plaintiff will have to pay the same debt twice after any foreclosure sale. Moreover, there is no allegation that Plaintiff will have to pay the same debt twice due to the alleged assignments.

MOTION TO DISMISS - 19
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

Additionally, because RRA physically possesses the note, there is no risk of having to pay the same debt to a challenger assignee. *See* Wash. Rev. Code § 62A.9A-330(d) (stating that a purchaser who takes possession of an instrument has perfected their interest in that instrument and takes priority over any non-possessing claimants); *Rodgers*, 697 P.2d at 1011–12. Therefore, even if there were issues with the Assignment to RRA Defendants, Plaintiff lacks standing to challenge the assignment.

**6.     Whether the Note was charged off is immaterial to a FDCPA claim.**

The Complaint asserts (as a legal conclusion) that no additional fees or interest can be charged on a HELOC after it is deemed uncollectable or is charged off, relying on 12 C.F.R. § 1026.5(b)(2)(i) and 1026.7. This legal conclusion is wrong. Plaintiff's reliance on 12 C.F.R. § 1026.5(b)(2)(i) is misplaced because it relates to disclosure requirements, stating:

> The creditor shall mail or deliver a periodic statement as required by § 1026.7 for each billing cycle at the end of which an account has a debit or credit balance of more than $1 or on which a finance charge has been imposed. A periodic statement need not be sent for an account if the creditor deems it uncollectible, if delinquency collection proceedings have been instituted, if the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account, or if furnishing the statement would violate Federal law.

This section explains the circumstances where a lender need not send a periodic statement but it does not "bar creditors from charging any additional fees or interest on a HELOC after deeming it uncollectable." Compl. § 93. Plaintiff's reliance on 12 C.F.R. §1026.7 is also misplaced because that section only contains additional periodic statement requirements. These sections do not relate to a claim under the FDCPA and do not support the legal conclusions in paragraph 93 of the Complaint.[9]

Whether the Note was ever charged off is immaterial to the FDCPA claim.

**7.     Many of the Complaint's FDCPA claims have expired.**

---

[9] The RTR Letter also contradicts Plaintiff's allegation that the Note was charged off. *See* Ex. 1-1 at 1 ("RTR's records do not indicate that the Account was 'Charged-Off.'").

MOTION TO DISMISS - 20
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

The FDCPA has a one-year statute of limitations. 15 U.S.C. § 1692k(d)). The initial complaint was filed on October 11, 2022. If there were any alleged FDCPA violations before October 11, 2021, the limitations period on those claims has expired.

Plaintiff alleges RTR sent monthly statements "from March 2017 through January 2021" that violated the FDCPA. Compl. ¶ 101. Any FDCPA claim predicated on these monthly statements is time barred.

****

Plaintiff's FDCPA claim should be dismissed because: (1) the statute of limitations on the Note has not expired; (2) RRA holds the Note through its attorney in fact, RTR, and is entitled to enforce the Note (even if the Note is non-negotiable); (3) Plaintiff lacks standing to challenge the assignment of the Deed of Trust and Note; and (4) the statute of limitations for any communications before October 11, 2021 has expired.

**C. The Complaint fails to state a claim for violation of the CPA and for injunctive and declaratory relief because RRA Defendants did not seek to collect time-barred debts.**

For the same reasons that the Complaint fails to state a cause of action under the FDCPA, save the limitations argument, the Complaint fails to state a cause of action under the CPA and for declaratory or injunctive relief.

Additionally, to the extent the Complaint alleges that RRA violated the CPA because it was not licensed as a collection agency at the time that it purchased the Note, the limitations period on that claim has expired. The statute of limitations on a CCPA claim is four years. Wash. Rev. Code § 19.86.120. Even if RRA had to be licensed as a collection agency in Washington in order to purchase the Note (and was not), RRA purchased the Note in 2016. Any action for that alleged violation expired in 2020. Therefore, to the extent such a claim is made, it should be dismissed because the statute of limitations has expired.

MOTION TO DISMISS - 21
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

## V. Conclusion.

The Complaint is littered with erroneous legal conclusions that are contrary to Washington law and should be dismissed. The statute of limitations for an installment note runs from the time each payment is delinquent, not from the time the last payment is made. Moreover, the DTA allows non-judicial foreclosure without requiring a holder to prove up each assignment under Article 9 of the UCC. Requiring a note holder to prove up ownership would transform the quick efficiency of a non-judicial foreclosure into a quasi-judicial foreclosure by allowing a viable court challenge whenever a note has been sold. And even if the Note is non-negotiable, holders of an original note have the right to demand payment and enforce the note. RRA possesses the original note and has the right to enforce it. Finally, Plaintiff lacks standing to challenge any assignments to RRA, and the statute of limitations has expired on many of the alleged FDCPA and CPA violations. RRA Defendants have the right to bring a non-judicial foreclosure to collect unpaid sums on the Note, and the Complaint should be dismissed.

In accordance with the Standing Order for All Civil Cases (Dkt. # 17), RRA Defendants certify that the parties previously conferred regarding the need for this dispositive motion, by phone and by email, and reached an impasse as to resolution of the issues highlighted herein.

MOTION TO DISMISS - 22
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040

Dated: December 29, 2022

KUTAK ROCK LLP

By: s/ Geana M. Van Dessel
Geana M. Van Dessel, WSBA #35969

Kutak Rock LLP
510 W. Riverside Ave., Suite 800
Spokane, WA 99201
Telephone: (509) 747-4040
Fax: (509) 747-4545
Geana.VanDessel@KutakRock.com
SpokaneLitigationFilings@KutakRock.com

*Attorneys for Real Time Resolutions, Inc. and RRA*
*CP Opportunity Trust 1*

MOTION TO DISMISS - 23
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington  99201-0506
(509) 747-4040

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 29, 2022, she caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those enrolled in electronic service for the above captioned case.

V. Omar Barraza
Barraza Law, PLLC
10728 16th Ave SW
Seattle, WA 98146
omar@barrazalaw.com

Scott D. Crawford
Tom B. Pierce
Zieve Brodnax & Steele LLP
11335 NE 122nd, Suite 105
Kirkland, WA 98034
scrawford@ZBSlaw.com
tpierce@ZBSlaw.com

By: s/ Geana M. Van Dessel
Geana M. Van Dessel, WSBA #35969

MOTION TO DISMISS - 24
2:22-CV-01440-TLF

KUTAK ROCK LLP
Attorneys at Law
Cutter Tower
510 West Riverside Avenue, Suite 800
Spokane, Washington 99201-0506
(509) 747-4040