# Exhibit 1-4

Exhibit 1-4  361

**Bank of America**

**Home Loans**

ONEFAXWESTn4    11/12/2021 3:15:16 PM  PAGE  5/007  888-294-5658

Exhibit 1-4  362

334

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/21/2008 | MISC. POSTING | 545.23 | 03/2008 | 545.23<br>59,335.49 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/21/2008 | REGULAR PAYMENT | 480.27 | 04/2008 | .00<br>59,335.49 | 480.27 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/30/2008 | PAYMENT REVERSAL | -545.23 | 03/2008 | -545.23<br>59,880.72 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/30/2008 | REGULAR PAYMENT | 545.23 | 04/2008 | 545.23<br>59,335.49 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/01/2008 | REGULAR PAYMENT | 545.23 | 05/2008 | 119.67<br>59,215.82 | 425.56 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/01/2008 | PAYMENT REVERSAL | -545.23 | 04/2008 | -545.23<br>59,761.05 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/24/2008 | REGULAR PAYMENT | 430.25 | 06/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/30/2008 | REGULAR PAYMENT | 416.37 | 07/2008 | .00<br>59,761.05 | 416.37 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/22/2008 | REGULAR PAYMENT | 430.25 | 08/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/15/2008 | REGULAR PAYMENT | 430.25 | 09/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/23/2008 | REGULAR PAYMENT | 416.37 | 10/2008 | .00<br>59,761.05 | 416.37 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/24/2008 | REGULAR PAYMENT | 430.25 | 11/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/06/2009 | REGULAR PAYMENT | 367.38 | 12/2008 | .00<br>59,761.05 | 367.38 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/04/2009 | REGULAR PAYMENT | 379.63 | 01/2009 | .00<br>59,761.05 | 379.63 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/06/2009 | REGULAR PAYMENT | 342.60 | 02/2009 | .00<br>59,761.05 | 342.60 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/06/2009 | REGULAR PAYMENT | 309.45 | 03/2009 | .00<br>59,761.05 | 309.45 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/06/2009 | REGULAR PAYMENT | 342.60 | 04/2009 | .00<br>59,761.05 | 342.60 | .00<br>.00 | .00 | .00 | .00<br>33.16 | .00<br>.00 |
| 06/17/2009 | REGULAR PAYMENT | 364.71 | 06/2009 | .00<br>59,761.05 | 364.71 | .00<br>.00 | .00 | .00 | .00<br>101.68 | .00<br>.00 |

**Bank of America**

**Home Loans**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/23/2009 | REGULAR PAYMENT | 350.00 | 07/2009 | .00 59,761.05 | 350.00 | .00 .00 | .00 | .00 | .00 100.58 | .00 .00 |
| 08/19/2009 | REGULAR PAYMENT | 391.57 | 08/2009 | .00 59,761.05 | 391.57 | .00 .00 | .00 | .00 | .00 134.84 | .00 .00 |
| 09/29/2009 | REGULAR PAYMENT | 753.72 | 09/2009 | .00 59,761.05 | 584.62 | .00 .00 | .00 | .00 | 169.10 .00 | .00 .00 |
| 11/03/2009 | REGULAR PAYMENT | 331.55 | 10/2009 | .00 59,761.05 | 331.55 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/30/2009 | REGULAR PAYMENT | 674.15 | 12/2009 | .00 59,761.05 | 674.15 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 02/05/2010 | REGULAR PAYMENT | 342.60 | 01/2010 | .00 59,761.05 | 342.60 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 04/15/2010 | REGULAR PAYMENT | 683.00 | 04/2010 | .00 59,761.05 | 683.00 | .00 .00 | .00 | .00 | .00 65.21 | .00 .00 |
| 06/11/2010 | REGULAR PAYMENT | 350.00 | 05/2010 | .00 59,761.05 | 350.00 | .00 .00 | .00 | .00 | .00 132.63 | .00 .00 |
| 08/04/2010 | REGULAR PAYMENT | 400.00 | 06/2010 | .00 59,761.05 | 400.00 | .00 .00 | .00 | .00 | .00 165.79 | .00 .00 |
| 10/15/2010 | REGULAR PAYMENT | 400.00 | 07/2010 | .00 59,761.05 | 400.00 | .00 .00 | .00 | .00 | .00 267.47 | .00 .00 |
| 12/22/2010 | REGULAR PAYMENT | 331.55 | 08/2010 | .00 59,761.05 | 331.55 | .00 .00 | .00 | .00 | .00 334.89 | .00 .00 |
| 02/18/2011 | REGULAR PAYMENT | 342.60 | 09/2010 | .00 59,761.05 | 342.60 | .00 .00 | .00 | .00 | .00 403.41 | .00 .00 |

## Fee Transaction Activity (01/2000 - 11/2021)

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 12/20/2007 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 12/20/2007 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 12/26/2007 | Mortgage Pay Fee-Phone - Reversal | .00 | -9.00 |
| 12/26/2007 | Mortgage Pay Fee-Phone - Adjustment | -9.00 | .00 |

ONEFAXWESTn4   11/12/2021  3:15:16 PM   PAGE   6/007   888-294-5658

Exhibit 1-4 363

**Bank of America**

**Home Loans**

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 01/22/2008 | Mortgage Pay Fee-Phone | 8.00 | .00 |
| 01/22/2008 | Mortgage Pay Fee-Phone | .00 | 8.00 |
| 02/21/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 02/21/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 03/20/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 03/20/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 03/21/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 03/21/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 04/21/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 04/21/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 06/24/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 06/24/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 08/22/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 08/22/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 10/23/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 10/23/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 01/06/2009 | Mortgage Pay Fee-Phone | 8.00 | .00 |
| 01/06/2009 | Mortgage Pay Fee-Phone | .00 | 8.00 |
| 02/04/2009 | Mortgage Pay Fee-Phone | 14.00 | .00 |
| 02/04/2009 | Mortgage Pay Fee-Phone | .00 | 14.00 |
| 05/06/2009 | Mortgage Pay Fee-Phone | 5.00 | .00 |
| 05/06/2009 | Mortgage Pay Fee-Phone | .00 | 5.00 |
| 05/15/2009 | Mortgage Pay Fee-Phone - Reversal | .00 | -5.00 |
| 05/15/2009 | Mortgage Pay Fee-Phone - Adjustment | -5.00 | .00 |
| 06/17/2009 | Mortgage Pay Fee-Phone | 8.00 | .00 |
| 06/17/2009 | Mortgage Pay Fee-Phone | .00 | 8.00 |

ONEFAXWESTn4  11/12/2021 3:15:16 PM  PAGE  7/007  888-294-5658

Exhibit 1-4  364

336

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE:  12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:  ████0162
PROPERTY ADDRESS: 4611 S 164TH ST
              TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

### HOME EQUITY CREDIT LINE AGREEMENT AND
### DISCLOSURE STATEMENT

Date: DECEMBER 07, 2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 16.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions **unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number.** I also agree to comply with any agreement between me and the Card Issuer:

A. Account Access. In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand

  

*G M V*

**337**

Exhibit 1-4  365

that in order to use my Card at an ATM, I must call 1-800-669-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS -- I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

G. Limitation of Liability. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

H. Termination/Suspension of Account. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

338

Exhibit 1-4  366

I. Cancellation/Expiration of Cards. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. Lost or Stolen Cards. I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use. You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. Unauthorized Transactions. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. Special Rule for Card Purchases. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE:

**Special Rule for Card Purchases.**

If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)   I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b)   The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card issuer mailed me the advertisement for the property or services.

**4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, without penalty

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a Check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.

(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.

(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

(4) I may not use a Check to make a payment once the Draw Period ends; that is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my Account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 59,900.00 . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**6. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be N/A % and the initial **ANNUAL PERCENTAGE RATE** would be N/A %. These discounted rates will be in effect from the date of this Agreement until N/A . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is 0.02877 % and the initial **ANNUAL PERCENTAGE RATE** is 10.500 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is 3.500 percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and no other costs. The **ANNUAL PERCENTAGE RATE** will never increase above 18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**7. FINANCE CHARGE.** I agree to pay a periodic finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGES.**

(1) Points **FINANCE CHARGE.**

I agree to pay a Points **FINANCE CHARGE** of $ 0.00                  at the time I sign this Agreement.

                                                                $ _____
$ _____
$ _____
$ _____
$ _____

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A             at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

(3) Settlement Agent **FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement:

Closing Fee                                      $ _____ 0.00
Closing/Escrow                             $ _____ 217.60
$ _____
$ _____
$ _____
$ _____

(4) Miscellaneous **FINANCE CHARGES.**

I agree to pay the following Miscellaneous **FINANCE CHARGES** at the time I sign this Agreement:

$ _____
$ _____
$ _____
$ _____

(5) Annual Maintenance Fee **FINANCE CHARGE.**

[ ] I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 0.00        which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $             from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[X] I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

**8. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within fifteen (15)    days of the "Payment Due Date," I agree to pay a late fee of 10% of the late payment.

(2) I agree to pay a Return Item Fee of $15 for each check you receive In payment of my Account which is returned unpaid upon second presentment.

341

Exhibit 1-4 369

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Recording | $ 41.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 0.00 |
| Total Paid by Borrower | $ 258.60 |

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. I will not be charged an Account Termination Fee on this loan.

9. PROPERTY SECURITY. To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage" or "Deed of Trust") covering my dwelling located at
4611 S 164TH ST, TUKWILA, WA 98188-3216
(the "Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Property is damaged or destroyed and whether or not any insurance proceeds are available.

10. SECTION INTENTIONALLY OMITTED.

11. PROPERTY INSURANCE. I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6) the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7) the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

Exhibit 1-4  370

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

**13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

(a) A judgment is filed against me;

(b) I commit waste or otherwise destructively use or fail to maintain the Real Property;

(c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

(d) I move out of the Real Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

**343**

Exhibit 1-4  371

(4)  you may foreclose the Mortgage;

(5)  you may reduce my Credit Limit; and

(6)  you may take any other action permitted by this Agreement, by law or in equity.

**14. MY IMPORTANT OBLIGATIONS.** I agree that:

A.  I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B.  I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C.  From time to time, if requested, I will supply you with current financial information about me.

D.  I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E.  I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F.  I will not use or allow use of the Real Property for any illegal purpose.

G.  I will not move out of the Real Property.

H.  I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I.  I will not break any promise made in this Agreement or in the Mortgage such as:

(1)  my promise not to exceed my Credit Limit; and

(2)  my "Important Obligations" listed in the Mortgage.

**15. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**16. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A.  Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 16.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

B.  Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 16.A above.

C.  Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination.

**17. CHANGES TO AGREEMENT.**

A.  You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1)  If the original Index is no longer available, you may change the Index and Margin;

(2)  you may make any change I agree to in writing;

(3)  you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**18. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. I w aive my right to a jury trial.

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170

L. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

Exhibit 1-4  373

M. **Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 18.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 18.M.

N. **Riders/Addenda.** The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum ☐ _____ Rider
☐ _____ Addendum ☐ _____
☒ Billing Rights Statement

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

_Gabriel Marquez Vargas_                                       12-12-05
Borrower: GABRIEL MARQUEZ VARGAS                                Date

_____                        _____
Borrower:                                                       Date

_____                        _____
Borrower:                                                       Date

_____                        _____
Borrower:                                                       Date

PAY TO THE ORDER OF
_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC
BY _____
David A. Spector
Managing Director

346

Exhibit 1-4  374

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:      ▮▮0162
PROPERTY ADDRESS: 4611 S 164TH ST
                  TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

This notice of my billing rights is a Rider to and supplements my/our Home Equity Credit Line Agreement and Disclosure Statement.

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My name and account number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities
### After You Receive My Written Notice

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

HELOC - Billing Rights Notice
2C482-US (08/05)(d)

Initials: GMV      Initials: GMV

347

Exhibit 1-4  375



Countrywide
Po Box 10423
Van Nuys, CA 91410-0423

008000377    VARGAS    GM

610   123110162  D2  001   001

MS SV-79-18
P.O.Box 10423
Van Nuys, CA 91410-0423

20051215002817

CHICAGO TITLE  DT        37.00
PAGE001 OF 005
12/15/2005 15:16
KING COUNTY, WA

Assessor's Parcel or Account Number: 537980-2945
Abbreviated Legal Description:
A PORTION OF LOT 9, BLOCK 14, MCMICKEN HEIGHT #2 UNRECORDED

[Include lot, block and plat or section, township and range]
Full legal description located on page 2

ch. 1197783-4
⑤

Trustee:
LANDSAFE TITLE OF WASHINGTON

———————————————— [Space Above This Line For Recording Data] ————————————

50755-JM                          00012311016212005
[Escrow/Closing #]                      [Doc ID #]

CHICAGO TITLE INSURANCE COMPANY
has placed the document of
record as a customer courtesy
and accepts no liability for              **DEED OF TRUST**
the accuracy or validity of              (Line of Credit Trust Deed)
the document.

MIN 1001337-0001064406-3

THIS DEED OF TRUST, dated  DECEMBER 07, 2005    , is between
GABRIEL MARQUEZ VARGAS, AN UNMARRIED MAN

This document is second and
subordinate to Deed of Trust
recorded concurrently herewith.

residing at
4611 S 164TH ST, TUKWILA, WA 98188-3216
the person or persons signing as "Grantor(s)" below and hereinafter referred to as "we," "our," or "us" and
LANDSAFE TITLE OF WASHINGTON
as trustee and hereinafter referred to as the "Trustee," with an address at
2707 COLBY AVENUE SUITE 1118, EVERETT, WA 98201
for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware
corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **MERS is the**
**"Beneficiary" under this Deed of Trust** and is acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns, with an address of
4500 Park Granada, Calabasas, CA 91302-1613

PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to
the Trustee the premises located at:
4611 S 164TH ST, TUKWILA
[State, Municipality]
KING                         Washington 98188-3216   (the "Premises").
County                              ZIP

● MERS HELOC - Deed of Trust                                    Initials: GMV
2E034-WA (11/04)(d)                    Page 1 of 5





348

Exhibit 1-4  376

and further described as:

THE NORTHERLY 145.00 FEET OF THE EAST 60.00 FEET OF THE FOLLOWING DESCRIBED TRACT: THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 27, TOWNSHIP 23 NORTH, RANGE 4 EAST, W.M., IN KING COUNTY, WASHINGTON, DESCRIBES AS FOLLOWS: COMMENCING AT A POINT ON THE NORTHERLY LINE OF SAID SECTION 27 A DISTANCE NORTH 89 59'10" WEST 1256.10 FEET FROM THE NORTHEAST CORNER THEREOF; THENCE SOUTH 00 15'50" EAST 1251.60 FEET TO THE TRUE POINT OF BEGINNING OF THEN TRACT HEREIN DESCRIBED; THENCE CONTINUING SOUTH 00 15'50" EAST 290.40 FEET; THENCE NORTH 89 59'10" WEST 150.00 FEET; THENCE NORTH 00 15'50" WEST 290.40 FEET; THENCE SOUTH 89 59'10" EAST 150.00 FEET TO THE TRUE POINT OF BEGINNING; (ALSO KNOWN AS A PORTION OF LOT 9 IN BLOCK 14 OF MCNICKEN HEIGHTS DIVISION NO. 2 UNRECORDED.)

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto. The Premises are not used principally for agricultural or farming purposes.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TERM: The maximum term of the Note is 25 years, including any renewals or extensions thereof.

LOAN: This Deed of Trust will secure your loan to us in the principal amount of $ 59,900.00      or so much thereof as may be advanced and readvanced from time to time to
GABRIEL MARQUEZ VARGAS

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated DECEMBER 07, 2005    , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Deed of Trust will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Deed of Trust, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Deed of Trust entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage, grant and convey the Premises to the Trustee.

BORROWER'S IMPORTANT OBLIGATIONS:

(a) PAYMENT AND PERFORMANCE: We will pay to you all amounts secured by this Deed of Trust as they become due, and shall strictly perform our obligations.

(b) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(c) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not conduct or permit any nuisance or waste on or to the Premises. We will not use the Premises illegally. If this Deed of Trust is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(d) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Deed of Trust, before we do. The insurance policies must also provide that you be given

● MERS HELOC - Deed of Trust
2E034-WA (11/04)                          Page 2 of 6                          Initials: GMV

Exhibit 1-4  377

not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(e) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Deed of Trust.

(f) GOVERNMENTAL REQUIREMENTS: We will comply with all laws, ordinances and regulations applicable to the use or occupancy of the Premises.

(g) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

(h) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Deed of Trust, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Deed of Trust secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Deed of Trust. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Deeds of Trust.

(i) PRIOR DEED OF TRUST: If the provisions of this paragraph are completed, this Deed of Trust is subject and subordinate to a prior deed of trust dated   DECEMBER 05, 2005   and given by us for the benefit of
COUNTRYWIDE HOME LOANS
as beneficiary, in the original amount of $ 0.00                (the "Prior Deed of Trust"). We shall not increase, amend or modify the Prior Deed of Trust without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Deed of Trust promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Deed of Trust as and when required under the Prior Deed of Trust.

(j) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(k) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(l) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Deed of Trust may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Deed of Trust without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, the Trustee may foreclose upon this Deed of Trust by notice and sale or may foreclose judicially, in either case in accordance with and to the extent provided by law. You may bid at any public sale on all or any portion of the

● MERS HELOC - Deed of Trust
2E034-WA (11/04)                              Page 3 of 5

Initials: *GHU*

Exhibit 1-4  378

Property. In addition, you or the Trustee may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure or public sale. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure or to public sale, including, but not limited to, trustee's fees, reasonable attorneys fees (whether or not there is a judicial proceeding) and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Deed of Trust and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Deed of Trust. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Deed of Trust will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Deed of Trust is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Deed of Trust, and provided any obligation to make further advances under the Note has terminated, this Deed of Trust and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
4500 Park Granada, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Deed of Trust shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Deed of Trust and provided your obligation to make further advances under the Note has terminated, the Trustee shall discharge this Deed of Trust without charge to us, except that we shall pay any fees for recording of a reconveyance of this Deed of Trust.

SEVERABILITY: If any provision in this Deed of Trust is held invalid or unenforceable, the remaining provisions shall continue in full force and effect.

GENERAL: You or the Trustee can waive or delay enforcing any of your rights under this Deed of Trust without losing them. Any waiver by you of any provisions of this Deed of Trust will not be a waiver of that or any other provision on any other occasion.

SUBSTITUTE TRUSTEE: Lender may, from time to time, appoint a successor trustee by an instrument executed and acknowledged by Lender and recorded in the county in which this Deed of Trust is recorded, and upon such recordation the successor trustee shall become vested with the same powers, rights, duties and authority of the Trustee with the same effect as if originally made Trustee hereunder.

MERGER: There shall be no merger of the interest or estate created by this Deed of Trust with any other estate or interest in the Premises at any time held by you or for your benefit without your written consent.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

● MERS HELOC - Deed of Trust
2E034-WA (11/04)                          Page 4 of 5                          Initials: _GMV_

351

Exhibit 1-4  379

THIS DEED OF TRUST has been signed by each of us under seal on the date first above written.

*Gubrial Marquez Vargas* _____ (SEAL)
Grantor: GABRIEL MARQUEZ VARGAS

_____ (SEAL)
Grantor:

_____ (SEAL)
Grantor:

_____ (SEAL)
Grantor:

STATE OF WASHINGTON } ss:
County of King

On this day personally appeared before me Gabriel Marquez Vargas
to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that _____ signed the same as _____ free and voluntary act and deed, for the uses and purposes therein mentioned.
GIVEN under my hand and official seal this 12th day of December, 2005.

Notary Public in and for the State of Washington, residing at Bellevue

My Appointment Expires on _____

MERS HELOC - Deed of Trust
2E034-WA (11/04)                    Page 5 of 5

352

Exhibit 1-4  380

**Electronically Recorded**

**20120702000394**

INGEO SYSTEMS INC          ADT                    15.00
Page 001 of  002
07/02/2012 11:18
King County, WA

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

This space for Recorder's use

| | |
|---|---|
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ <br> DocID#   19012311016217005 <br><br> Tax ID:      537980-2945 <br><br> Property Address: <br> 4611 S 164th St <br> Tukwila, WA 98188-3216 <br> WA0-ADT 18988023  E 6/25/2012 | Recording Requested By: <br> **Bank of America** <br> Prepared By: <br> **Danilo Cuenca** <br> **800-444-4302** <br> **1800 Tapo Canyon Road** <br> **Simi Valley, CA 93063** |

MIN #:  1001337-0001064406-3          MERS Phone #:  888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:        COUNTRYWIDE HOME LOANS, INC.
Made By:               GABRIEL MARQUEZ VARGAS, AN UNMARRIED MAN
Original Trustee:       LANDSAFE.TITLE OF WASHINGTON
Date of Deed of Trust:  12/7/2005
Original Loan Amount:   $59,900.00

Recorded in King County, WA on: 12/15/2005, book N/A, page N/A and instrument number 20051215002817

Property Legal Description:
THE NORTHERLY 145.00 FEET OF THE EAST 60.00 FEET OF THE FOLLOWING DESCRIBED TRACT: THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 27, TOWNSHIP 23 NORTH, RANGE 4 EAST, W.M., IN KING COUNTY, WASHINGTON, DESCRIBES AS FOLLOWS: COMMENCING AT A POINT ON THE NORTHERLY LINE OF SAID SECTION 27 A DISTANCE NORTH 89°59'10" WEST 1256.10 FEET FROM THE NORTHEAST CORNER THEREOF; THENCE SOUTH 00 15'50" EAST 1251.60 FEET TO THE TRUE POINT OF BEGINNING OF THEN TRACT HEREIN DESCRIBED; THENCE CONTINUING SOUTH 00 15'50" EAST 290.40 FEET; THENCE NORTH 89 59'10" WEST 150.00 FEET; THENCE NORTH 00 15'50" WEST 290.40 FEET; THENCE SOUTH 89 59'10" EAST 150.00 FEET TO THE TRUE POINT OF BEGINNING; (ALSO KNOWN AS A PORTION OF LOT 9 IN BLOCK 14 OF MCMICKEN HEIGHTS DIVISION NO. 2 UNRECORDED.)

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
JUN 2 7 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Rene Rosales Assistant Secretary

**008000377      VARGAS     GM**
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
610   123110162   D8   002   001

353

Exhibit 1-4  381

State of California
County of Ventura

On **JUN 27 2012** before me, Roudabeh Beygzadeh-Elias , Notary Public, personally appeared Rene Rosales , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Roudabeh Beygzadeh-Elias
My Commission Expires: June 4, 2015 (Seal)

> ROUDABEH BEYGZADEH-ELIAS
> Commission # 1939621
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jun 4, 2015

DocID#     19012311016217005

354

Exhibit 1-4  382

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

This space for Recorder's use

DocID# 19012311016217005

Tax ID: 537980-2945

Property Address:
4611 S 164th St
Tukwila, WA 98188-3216
WAO-ADT 18980023 E 6/25/2012

Recording Requested By:
**Bank of America**
Prepared By:
**Danilo Cuenca**
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063

MIN #: 1001337-0001064406-3    MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:        COUNTRYWIDE HOME LOANS, INC.
Made By:                GABRIEL MARQUEZ VARGAS, AN UNMARRIED MAN
Original Trustee:       LANDSAFE TITLE OF WASHINGTON
Date of Deed of Trust:  12/7/2005
Original Loan Amount:   $59,900.00

Recorded in King County, WA on: 12/15/2005, book N/A, page N/A and instrument number 20051215002817

Property Legal Description:
THE NORTHERLY 145.00 FEET OF THE EAST 60.00 FEET OF THE FOLLOWING DESCRIBED TRACT: THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 27, TOWNSHIP 23 NORTH, RANGE 4 EAST, W.M., IN KING COUNTY, WASHINGTON, DESCRIBES AS FOLLOWS: COMMENCING AT A POINT ON THE NORTHERLY LINE OF SAID SECTION 27 A DISTANCE NORTH 89 59'10" WEST 1256.10 FEET FROM THE NORTHEAST CORNER THEREOF; THENCE SOUTH 00 15'50" EAST 1251.60 FEET TO THE TRUE POINT OF BEGINNING OF THEN TRACT HEREIN DESCRIBED; THENCE CONTINUING SOUTH 00 15'50" EAST 290.40 FEET; THENCE NORTH 89 59'10" WEST 150.00 FEET; THENCE NORTH 00 15'50" WEST 290.40 FEET; THENCE SOUTH 89 59'10" EAST 150.00 FEET TO THE TRUE POINT OF BEGINNING; (ALSO KNOWN AS A PORTION OF LOT 9 IN BLOCK 14 OF MCMICKEN HEIGHTS DIVISION NO. 2 UNRECORDED.)

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
——— JUN 2 7 2012

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:
Rene Rosales Assistant Secretary

355

Exhibit 1-4 383

State of California
County of Ventura

On **JUN 27 2012** before me, Roudabeh Beygzadeh-Elias , Notary Public, personally appeared ~~Rene Rosales~~, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: ~~Roudabeh Beygzadeh-Elias~~
My Commission Expires: ~~June 4, 2015~~ (Seal)

ROUDABEH BEYGZADEH-ELIAS
Commission # 1939621
Notary Public - California
Los Angeles County
My Comm. Expires Jun 4, 2015

DocID#        19012311016217005

356

Exhibit 1-4  384

When Recorded Return To:
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**Electronically Recorded**
**20170601000370**
SIMPLIFILE          ADT          15.00
Page 001 of 001
06/01/2017 11:15
King County, WA

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Doc ID: 48712311016229315

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK SUCCESSOR INDENTURE TRUSTEE TO JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I, WHOSE ADDRESS IS C/O BANK OF AMERICA, N.A., 4909 SAVARESE CIRCLE, TAMPA, FL 33634, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to RRA CP OPPORTUNITY TRUST 1, WHOSE ADDRESS IS 712 5TH AVENUE, 5TH FLOOR, NEW YORK, NY 10019, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)

Said Deed of Trust is dated 12/07/2005, and executed by GABRIEL MARQUEZ VARGAS, there and with LANDSAFE TITLE OF WASHINGTON as Original Trustee, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS, and recorded 12/15/2005, in Auditor File # 20051215002817, in the office of the Recorder of KING County, WA.
A PORTION OF LOT 9, BLOCK 14, MCMICKEN HEIGHT #2 UNRECORDED KING COUNTY WA

Parcel ID #: 537980-2945

IN WITNESS WHEREOF, this Assignment is executed on ____MAY 2 3 2017____ (MM/DD/YYYY).
THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK SUCCESSOR INDENTURE TRUSTEE TO JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I, by BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING LP, its Attorney-in-Fact

By:

Dana M. Burton
ASSISTANT VICE PRESIDENT

STATE OF FLORIDA     COUNTY OF HILLSBOROUGH
The foregoing instrument was acknowledged before me on ____MAY 2 3 2017____ (MM/DD/YYYY), by Dana M. Burton as ASSISTANT VICE PRESIDENT of BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING LP as Attorney-in-Fact for THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK SUCCESSOR INDENTURE TRUSTEE TO JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I, who, as such ASSISTANT VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Michael Bourke
Notary Public - State of FLORIDA
Commission expires: NOV 0 2 2020

> MICHAEL BOURKE
> Notary Public, State of Florida
> Commission# GG 44318
> My comm. expires Nov 2, 2020

Document Prepared By: Julio Estrada, Bank of America, N.A. 4909 Savarese Circle, Tampa, FL 33634
(800) 444-4302
BOA01 398840794 MARTR17  MIN  MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 T191705-11:02:42 [C-1] FRMWA1

\*D0023248642\*

008000377      VARGAS      GM

610  123110162  D4  001  002

EXCEPTIONS

357

Exhibit 1-4  385



**REAL TIME**
R E S O L U T I O N S®

11/12/2021

GABRIEL MARQUEZ VARGAS
4611 S 164TH ST
SEATTLE, WA 98188-3216

Regarding RTR File Number:           ▓▓▓▓ 0162
Account Number Ending In:          0162

**Dear GABRIEL MARQUEZ VARGAS:**

We have received your inquiry and are currently researching your account. Please be advised that this account's current creditor is RRA CP OPPORTUNITY TRUST 1. This account's original creditor is Countrywide Financial Corp. If you have any questions, you may contact us at **1-888-895-0221.** We are available Monday - Friday 7:00am - 6:00pm Central.

Sincerely,
Real Time Resolutions, Inc.
*Research Department*

---

If you have additional information that you believe may be helpful, please send it today. Please remember to put your account number on all documentation.

 **Regular Mail**           **E-Mail**           **Fax**

ATTN: Research Dept.            rs@rtresolutions.com            1-214-452-0532
P.O. Box 36655
Dallas TX 75235-1655

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. Account Information as of: 11-12-2021, Principal Balance: $59,429.04, Accrued Interest: $27,029.16, Other Fees: $245.36, Late Fees: $4,217.42, Payoff: $90,920.98. This account's current creditor is RRA CP OPPORTUNITY TRUST 1. This account's original creditor is Countrywide Financial Corp.

---

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30am - 5:30pm Central
www.payrtr.com

RR5

Page 1 of 1

358
Exhibit 1-4  386



Real Time Resolutions, Inc
P.O. BOX 36655
Dallas, TX 75235-1655
**REAL TIME** ELECTRONIC SERVICE REQUESTED
*RESOLUTIONS.*

09/17/2021

**Account Number Ending In:** 0162
**Balance Due:** $52,559.16

GABRIEL MARQUEZ VARGAS
4611 S 164TH ST
SEATTLE WA 98188-3216
Ildaləlmılllələlalmlluıldmlldhmıllmlllılıll

Regarding RTR File Number: ███████ 0162
In Reference to Property: 4611 S 164TH ST
TUKWILA, WA 98188

Dear GABRIEL MARQUEZ VARGAS,

This is a legally required notice. Please read this letter carefully. Real Time Resolutions, Inc. ("RTR") is servicing a delinquent mortgage with respect to the above-referenced property. However, if you have received a discharge of your personal obligation in bankruptcy, please note that you have no personal obligation to make payments toward this delinquency, although a lien on the property may still exist. RTR's documentation shows that a lien associated with this account remains on the property. If you have reason to believe that this is not true, please contact RTR so that we can update our records.

RTR wants to notify you of possible ways to avoid losing your home. We may have a right to invoke foreclosure based on the terms of the security instrument encumbering your property. The following options may be available to you (most are subject to approval by the owner or servicer of the debt secured by the lien).

Possible Account Repayment Options:
- *Payment Plan* - Bring account secured by the lien current
- *Lien Release Option* - Resolve the lien for less than the amount it secures
- *Short Sale* - Sell your home and use the proceeds to resolve the account secured by the lien

Call us today at 1-888-895-0221 to learn more about these options and for instructions on how to apply. We are available Monday - Friday 7:00am - 6:00pm Central. Please note that, for some of the above options, you may be required to send in financial information.

This account's current creditor is RRA CP OPPORTUNITY TRUST 1.

| **PLEASE SEE THE BACK OF THIS PAGE FOR ADDITIONAL INFORMATION REGARDING YOUR ACCOUNT.** |
| --- |

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

1349 Empire Central Dr. Suite 150 Dallas TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central
www.payrtr.com

1 of 2

359 121057-EINT-27

Exhibit 1-4 387

**THE FOLLOWING NOTICES APPLY TO THE RESIDENTS OF THE FOLLOWING STATES, AS NOTED. THIS LIST IS NOT A COMPLETE LIST OF RIGHTS CONSUMERS MAY HAVE UNDER STATE AND FEDERAL LAW.**

**CALIFORNIA RESIDENTS:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act requires that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**COLORADO RESIDENTS:** A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. Real Time Resolutions, Inc. Colorado office location: 8690 Wolff Court, Suite 110, Westminster, CO 80031; Phone (303)920-4763. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE: WWW.COAG.GOV/CAR

**MAINE RESIDENTS:** Corporate Hours of Operation: Monday - Friday 8:30 a.m. - 5:30 p.m. Central. Our toll free telephone number is 1-888-895-0221.

**MASSACHUSETTS RESIDENTS:** You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the debt collector.

**MINNESOTA RESIDENTS:** This collection agency is licensed by the Minnesota Department of Commerce.

**NORTH CAROLINA RESIDENTS:** North Carolina Department of Insurance, permit number 3545. North Carolina Commissioner of Banks, license number S-146288. You may file a complaint by contacting the NCCOB at: 316 W. Edenton St., Raleigh, NC 27603, (919) 733-3016, or by visiting http://www.nccob.org.

**OREGON RESIDENTS:** Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (888) 877-4894 or visit http://dfr.oregon.gov.

**TENNESSEE RESIDENTS:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243

**TEXAS RESIDENTS:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by the telephone at its toll-free consumer hotline listed above or by email at smlinfo@sml.texas.gov.

**WASHINGTON RESIDENTS:**
Account Information as of: 09/17/2021
Principal Balance: $59,429.04
Accrued Interest: $26,413.72
Other Fees: $85.00
Late Fees: $4,084.18
Payoff: $90,011.94

**WISCONSIN RESIDENTS:** This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

**ALL U.S. RESIDENTS:**
If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov.

- **This account's current creditor is RRA CP OPPORTUNITY TRUST 1.**
- **This account's original creditor is Countrywide Financial Corp.**



**REAL TIME**
**R E S O L U T I O N S.**

09/17/2021
RTR File Number: ████████ 0162

RTR's Contact Information:
- Dedicated Phone Number: 1-888-895-0221
- Address: P.O. Box 36655, Dallas, TX 75235-1655
- Fax Number: 1-214-452-0532
- Email Address: rs@rtresolutions.com
- Website: www.payrtr.com

For help exploring your options, the federal government provides contact information for housing counselors, which you can access by contacting the Department of Housing and Urban Development at 800-569-4287 or by visiting http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Thank you,

Real Time Resolutions, Inc.
P.O. Box 36655
Dallas, TX 75235-1655
Toll Free: 1-888-895-0221

1349 Empire Central Dr. Suite 150 Dallas TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central
www.payrtr.com

2 of 2

**361**121057-EINT-28

Exhibit 1-4  389



**REAL TIME**
RESOLUTIONS®

02/02/2022

GABRIEL MARQUEZ VARGAS
4611S 164TH ST
SEATTLE, WA 98188-3216

RTR File Number:                     0162
Account Number Ending in:       0162
In Reference to Property:          4611S 164TH ST
                                   TUKWILA  WA  98188

Dear Customer:

Real Time Resolutions, Inc. ("RTR") has reviewed your recent Loss Mitigation Application and is pleased to let you know that your account has qualified for three (3) repayment options:

| **TPA** | **Resolution** | **Short Sale** |
|---|---|---|
| A **Temporary Payment Arrangement** changes the terms of your loan for a one (1)-year period, allowing you to bring your account current and make payments you can afford. Your interest rate will be 0 % during this time. | A **resolution** allows you to pay less than you owe, often in one lump sum payment. After receiving your resolution funds, RTR will agree not to pursue the remaining balance. | A **short sale** is the best option for you if you do not want to keep your home. This allows you to sell your home for less than the balance of your debt associated with the property. |

- **These options expire on 03/04/2022.**
- You must choose – or appeal – an option before the expiration date for these offers to remain valid.
- See the next page for payment details and instructions.

If you have questions about the information in this letter, please call our Customer Solutions Department at 1-888-895-0221. Our dedicated professionals are available to assist you Monday - Friday 7:00am - 6:00pm Central. If you are unable to afford the repayment options offered to you in this letter, we may have alternative plans available to discuss with you.

Sincerely,

Real Time Resolutions, Inc.

---

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. Account information as of: 02-02-2022, Principal Balance: $59,429.04, Accrued Interest: $27,930.34, Other Fees: $330.36, Late Fees: $4,350.40, Payoff: $92,040.14. This account's current creditor is RRA CP OPPORTUNITY TRUST 1.  This account's original creditor is Countrywide Financial Corp.

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Monday - Friday 7:00am - 6:00pm Central
www.payrtr.com

D32

Page 1 of 2
362

Exhibit 1-4  390

**Instructions: How to Review and Select a Repayment Option**

1) Review the values RTR used to assess your repayment options in Section 1 below.
2) If you <u>disagree</u> with these values, check the appeal box in Section 1. If you do choose to appeal, ensure that you provide RTR with the supporting documentation outlined in Section 1.
3) If you <u>agree</u> with these values, move to Section 2 and initial next to the repayment option(s) that interests you. You may select more than one option. After receipt of your response, RTR will contact you with the next steps needed for your chosen option(s).
4) Return this completed letter along with any supporting documentation using one of the following methods:

    *Email: rs@rtresolutions.com*        *Fax: 1-214-452-0532*        *Mail: P.O. Box 36655, Dallas TX 75235-1655*

| **Section 1** | **Review the values we used to assess your repayment options.** |
|---|---|

RTR reviewed your Loss Mitigation Application along with other resources (which may include credit reports, county records, Broker Price Opinions, and home valuation websites) to determine your available options.

If you disagree with one or more of these values, you may appeal. To do this, (a) check the Appeal box that corresponds with the value(s) that you believe are incorrect below, (b) initial in the space provided, and (c) send the specified documentation that proves why the information is incorrect. RTR will then review your appeal and determine if this changes the values of any repayment options provided in Section 2.

| **1. Property Value:** | $535,000.00 | ☐ Appeal* | **Initial Here:** |
|---|---|---|---|

*\*An appeal of the Property Value requires that you send RTR one of the following: (a) A Broker Price Opinion, (b) Property appraisal, or (c) Comparative Market Analysis by a licensed real estate agent.*

| **2. Primary Mortgage Balance(s):** | $264,515.00 | ☐ Appeal* | **Initial Here:** |
|---|---|---|---|

*\*An appeal of the Primary Mortgage Balance(s) requires that you send RTR one of the following: (a) A payoff statement issued by the servicer of this mortgage, or (b) A billing statement issued by the servicer of this mortgage.*

| **Section 2** | **Initial next to the repayment option(s) that interest you.** |
|---|---|

The key elements of each repayment option are outlined below. Note you may initial next to more than one repayment option. After receipt of your response, RTR will contact you with the next steps needed for your chosen option(s).

**1. Temporary Payment Arrangement ("TPA")**                                    **Initial Here:**

- Qualifying Payment $5,975.77. This will be the first payment as a part of this arrangement.
- Monthly Payment Amount $335.44 at 0% interest. This will be your new regular monthly payment due at the same time every month for one (1) year.
- When the TPA expires after one (1) year, the payment terms you had before this arrangement will resume in effect.
- Upon receipt of this selection, RTR will send you the TPA Agreement for your review.

**2. Resolution**                                    **Initial Here:**

- Resolution Amount $91,119.74. This must be paid in one lump sum.
- This is a reduction of 1.00% from the payoff balance.
- After receiving your resolution funds, RTR will agree to not pursue the remaining balance. If after deposit the funds are rejected, rescinded, or otherwise invalidated, this resolution offer will automatically be voided and the file's entire outstanding balance will remain due.
- Upon receipt of this selection, RTR will send you the Resolution Agreement for your review.

**3. Short Sale**                                    **Initial Here:**

- This is the best repayment option if you do not want to keep your property.
- Note that while you are approved to short sell your home, RTR cannot provide you with an approval amount within this letter. This is because it must first verify that the property has been listed for sale.
- To learn more about this process, you can also visit RTR online at www.realtimeresolutions.com/realtors/.

As a reminder, these options will expire if RTR has not received this initialed letter or your written appeal with documentation - by 03/04/2022.

Please note that entering into this agreement may or may not result in tax consequences to you. If you are uncertain of the legal or tax consequences, we encourage you to consult a lawyer and/or tax advisor.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Monday – Friday 7:00am – 6:00pm Central
D32                                    www.payrtr.com                                    Page 2 of 2

Exhibit 1-4  391



**REAL TIME**
**R E S O L U T I O N S®**

01/14/2022

GABRIEL MARQUEZ VARGAS
4611 S 164TH ST
SEATTLE, WA 98188-3216

RTR File Number:     ████████0162
Account Number Ending In:     0162
In Reference to Property:     4611 S 164TH ST
TUKWILA WA 98188

Dear Customer,

This letter acknowledges that you have submitted a Loss Mitigation Application on 01/11/2022. If you have any other mortgages on this property, you should contact the other loan servicers for their Loss Mitigation Application. Our records currently indicate that the status of your application process is complete. Real Time Resolutions, Inc. ("RTR") will notify you of your options by 02/10/2022. You may be entitled to additional protections under State or Federal law.

RTR may request additional information if needed to adequately review your account for Loss Mitigation Options. If this occurs, the review process may take longer and the foreclosure protections, if applicable, could end if the requested information is not submitted by the posted deadline.

If you have any questions or need additional guidance please call us at 1-888-895-0221,
Monday - Friday 7:00am - 6:00pm Central

Thank you,

Real Time Resolutions, Inc.

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30am - 5:30pm Central
www.payrtr.com

M26

Page 1 of 2

**364**
Exhibit 1-4  392



**REAL TIME**
R E S O L U T I O N S.

01/14/2022

The following notices are required by the Consumer Financial Protection Bureau ("CFPB"), and are primarily applicable to customers who are not in, or have not been discharged in, a bankruptcy:

The borrower is entitled to certain foreclosure protections because the servicer has received the complete application, and, as applicable, either: (1) If RTR has not made the first notice of filing required by applicable law for any judicial of non-judicial foreclosure process, that the servicer cannot make the first notice or filing required to commence or initiate the foreclosure process under applicable law before evaluating the borrower's complete application; or (2) If the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, that the servicer has begun the foreclosure process, and that the servicer cannot conduct a foreclosure sale before evaluating the borrower's complete application.

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. Account Information as of: 01-14-2022, Principal Balance: $59,429.04, Accrued Interest: $27,721.53, Other Fees: $330.36, Late Fees: $4,350.40, Payoff: $91,831.33. This account's current creditor is RRA CP OPPORTUNITY TRUST 1. This account's original creditor is Countrywide Financial Corp.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30am - 5:30pm Central
www.payrtr.com

M26

Page 2 of 2

365
Exhibit 1-4  393



# PRIVACY NOTICE

06/17/2022
GABRIEL MARQUEZ VARGAS
RTR File Number: ▮▮▮▮ 0162

Revised Sept 2019

| FACTS | WHAT DOES REAL TIME RESOLUTIONS, INC.("RTR") DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security Number<br>• Account balances, account activity, and payment history<br>• Credit history and credit score<br>When you are *no longer* our customer, we continue to protect and/or share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the next section, we list the reasons financial companies can share their customers' personal information, the reasons Real Time Resolutions, Inc. chooses to share, and whether you can limit this sharing. |

| Reasons we can share your personal information | Does RTR share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes – to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes – information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes – information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

| To limit our sharing | • Call us at 1-888-895-0221 to let us know you received your Privacy Statement and *want to limit your sharing*<br>• Visit us at www.realtimeresolutions.com/customer-contact/. Fill out this web form to let us know you received your Privacy Statement and *want to limit your sharing*<br>• Mail the **form** on the next page<br>Please note: If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. We continue to share and/or protect your information (as described in this notice) even when you are *no longer* our customer.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|

1349 Empire Central Dr. Suite 150 Dallas, TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central www.payrtr.com



Real Time Resolutions, Inc
P.O. BOX 36655
Dallas, TX 75235-1655
ELECTRONIC SERVICE REQUESTED

GABRIEL MARQUEZ VARGAS
C/O Omar Barraza
10728 16TH AVE SW
SEATTLE WA 98146-2001
||.|.|..|...||.|.|.||...|.|||..||....||..||.||.|.|.||.|

1 of 1

366 132091-70024-1222

Exhibit 1-4 394



**REAL TIME RESOLUTIONS.**

06/17/2022

| Questions? | Call 1-888-895-0221 or go to www.realtimeresolutions.com/privacy-policy/ |
|---|---|
| **Who we are** | |
| Who is providing this notice? | Real Time Resolutions, Inc. |
| **What we do** | |
| How does Real Time Resolutions, Inc. protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| How does Real Time Resolutions, Inc. collect my personal information? | We collect your personal information, for example, when you:<br>• Have your account transferred to Real Time Resolutions, Inc.<br>• Pay your bills<br>• Give us your contact information<br>• Provide employment information<br>• Discuss your account with us<br>We also collect your personal information from others, such as credit bureaus or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to only limit:<br>• Sharing for affiliates' everyday business purposes – information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account – unless you tell us otherwise. |
| **Definitions** | |
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• Our affiliates can include financial institutions and consumer services companies. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• Nonaffiliates we share with can include consumer lenders, mortgage companies, mortgage originators, and debt settlement companies. |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• Real Time Resolutions, Inc. reserves the right to jointly market with financial services companies. |
| **Other important information** | |

**Vermont Residents:** This notice is required by Vermont state law. If you exercise your right to opt out, we will not share information we collect about you with nonaffiliated third parties, except as permitted by Vermont law, such as to process your transactions or to maintain your account. In addition, we will not share information about your creditworthiness with our affiliates except with your authorization.

**California Residents:** This notice is required by California state law. If you exercise your right to opt out, we will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account.

✂----------------------------------------------------------------

| Mail-in Form | |
|---|---|
| ❑ Do not share my personal information. | |
| **Name** | |
| **Address** | **Mail to:**<br>Real Time Resolutions, Inc.<br>P.O. Box 36655<br>Dallas, TX 75235-1655 |
| **City, State, Zip** | |
| **[Account #]** | |

1349 Empire Central Dr. Suite 150 Dallas, TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central www.payrtr.com

**367**
Exhibit 1-4  395



Real Time Resolutions, Inc
P.O. BOX 36655
Dallas, TX 75235-1655
ELECTRONIC SERVICE REQUESTED

03/16/2022

**Account Number Ending In:** 0162
**Balance Due:** $57,207.70

GABRIEL MARQUEZ VARGAS
C/O Omar Barraza
10728 16TH AVE SW
SEATTLE WA 98146-2001

Regarding RTR File Number:  [REDACTED] 0162
In Reference to Property:    4611 S 164TH ST
                             TUKWILA, WA 98188

Dear GABRIEL MARQUEZ VARGAS,

This is a legally required notice. Please read this letter carefully. Real Time Resolutions, Inc. ("RTR") is servicing a delinquent mortgage with respect to the above-referenced property. However, if you have received a discharge of your personal obligation in bankruptcy, please note that you have no personal obligation to make payments toward this delinquency, although a lien on the property may still exist. RTR's documentation shows that a lien associated with this account remains on the property. If you have reason to believe that this is not true, please contact RTR so that we can update our records.

RTR wants to notify you of possible ways to avoid losing your home. We may have a right to invoke foreclosure based on the terms of the security instrument encumbering your property. The following options may be available to you (most are subject to approval by the owner or servicer of the debt secured by the lien).

Possible Account Repayment Options:
- *Payment Plan* - Bring account secured by the lien current
- *Lien Release Option* - Resolve the lien for less than the amount it secures
- *Short Sale* - Sell your home and use the proceeds to resolve the account secured by the lien

Call us today at 1-888-895-0221 to learn more about these options and for instructions on how to apply. We are available Monday - Friday 7:00am - 6:00pm Central.  Please note that, for some of the above options, you may be required to send in financial information.

This account's current creditor is RRA CP OPPORTUNITY TRUST 1.

| **PLEASE SEE THE BACK OF THIS PAGE FOR ADDITIONAL INFORMATION REGARDING YOUR ACCOUNT.** |
| --- |

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

1349 Empire Central Dr. Suite 150 Dallas TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central
www.payrtr.com

368
121057-EINT-27

Exhibit 1-4  396

**THE FOLLOWING NOTICES APPLY TO THE RESIDENTS OF THE FOLLOWING STATES, AS NOTED. THIS LIST IS NOT A COMPLETE LIST OF RIGHTS CONSUMERS MAY HAVE UNDER STATE AND FEDERAL LAW.**

**CALIFORNIA RESIDENTS:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act requires that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**COLORADO RESIDENTS:** A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. Real Time Resolutions, Inc. Colorado office location: 8690 Wolff Court, Suite 110, Westminster, CO 80031; Phone (303)920-4763. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE: WWW.COAG.GOV/CAR

**MAINE RESIDENTS:** Corporate Hours of Operation: Monday - Friday 8:30 a.m. - 5:30 p.m. Central. Our toll free telephone number is 1-888-895-0221.

**MASSACHUSETTS RESIDENTS:** You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the debt collector.

**MINNESOTA RESIDENTS:** This collection agency is licensed by the Minnesota Department of Commerce.

**NORTH CAROLINA RESIDENTS:** North Carolina Department of Insurance, permit number 3545. North Carolina Commissioner of Banks, license number S-146288. You may file a complaint by contacting the NCCOB at: 316 W. Edenton St., Raleigh, NC 27603, (919) 733-3016, or by visiting http://www.nccob.org.

**OREGON RESIDENTS:** Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (888) 877-4894 or visit http://dfr.oregon.gov.

**TENNESSEE RESIDENTS:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. State Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243

**TEXAS RESIDENTS:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by the telephone at its toll-free consumer hotline listed above or by email at smlinfo@sml.texas.gov.

**WASHINGTON RESIDENTS:**
Account Information as of: 03/16/2022
Principal Balance: $59,429.04
Accrued Interest: $28,391.92
Other Fees: $330.36
Late Fees: $4,484.48
Payoff: $92,635.80

**WISCONSIN RESIDENTS:** This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

**ALL U.S. RESIDENTS:**
If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov.

- **This account's current creditor is RRA CP OPPORTUNITY TRUST 1.**
- **This account's original creditor is Countrywide Financial Corp.**



03/16/2022
RTR File Number: ████ 0162

RTR's Contact Information:
- Dedicated Phone Number: 1-888-895-0221
- Address: P.O. Box 36655, Dallas, TX 75235-1655
- Fax Number: 1-214-452-0532
- Email Address: rs@rtresolutions.com
- Website: www.payrtr.com

For help exploring your options, the federal government provides contact information for housing counselors, which you can access by contacting the Department of Housing and Urban Development at 800-569-4287 or by visiting http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Thank you,

Real Time Resolutions, Inc.
P.O. Box 36655
Dallas, TX 75235-1655
Toll Free: 1-888-895-0221

1349 Empire Central Dr. Suite 150 Dallas TX 75247-4029
Toll Free Customer Service 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central
www.payrtr.com

2 of 2

370 127057-EINT-28

Exhibit 1-4  398



**REAL TIME**
**R E S O L U T I O N S**®

08/25/2022

GABRIEL MARQUEZ VARGAS
C/O BARRAZA LAW PLLC
10728 16TH AVE SW
SEATTLE, WA 98146-2001

RTR File Number: <span>REDACTED</span>0162
Account Number Ending In: 0162

Dear Representative of GABRIEL MARQUEZ VARGAS:

This letter is in response to correspondence received from Gabriel Marquez Vargas regarding the above-referenced account. Please note Real Time Resolutions, Inc. ("RTR") is sending this response to your office as our records indicate you are the representative of Gabriel Marquez Vargas. We appreciate your patience while awaiting our response.

**<u>Summary of Inquiry</u>:**

Your client requested documentation for the above-referenced account.

**<u>Response</u>:**

Please be advised RTR is currently servicing a second mortgage on behalf of RRA CP Opportunity Trust 1 for the property commonly known as 4611 S 164th St, Tukwila, WA 98188. For your records we have enclosed the following documents:

- A copy of RTR's prior response, dated 11/15/2021; and
- A recent copy of RTR's Loan History Summary, detailing your client's payment activity on this account while under our service.

RTR is committed to customer service and hopes this correspondence addresses your concerns. Should you have any further questions, please contact us at **1-888-895-0221**.

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. Account Information as of: 08-25-2022, Principal Balance: $58,101.00, Accrued Interest: $28,960.80, Other Fees: $2,767.09, Late Fees: $4,819.59, Payoff: $94,648.48. This account's current creditor is RRA CP OPPORTUNITY TRUST 1. This account's original creditor is Countrywide Financial Corp.

1349 Empire Central Dr. Suite 150, Dallas,TX 75247-4029    Page 1 of 1
Toll Free Customer Service: 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30am - 5:30pm Central    **371**
www.payrtr.com

Exhibit 1-4 399



**REAL TIME**
R E S O L U T I O N S ®

11/15/2021

GABRIEL MARQUEZ VARGAS
4611 S 164TH ST
SEATTLE WA   98188-3216

RTR File Number: ▓▓▓▓ 162
Account Number Ending In: 0162

Dear GABRIEL MARQUEZ VARGAS:

This letter is in response to your previous inquiry regarding the above-referenced account. We would like to thank you for taking the time to contact Real Time Resolutions, Inc. ("RTR"), and we appreciate your patience while awaiting our response.

**Summary of Inquiry:**

You requested documentation for the above-referenced account.

**Response:**

A copy of the requested documentation is enclosed.

- Loan History Summary, detailing your payment activity on this account while under our service;
- A copy of the transaction history, detailing your account activity prior to our service;
- A copy of the signed Home Equity Credit Line Agreement and Disclosure Statement, bearing your signature and detailing your promise to pay a specific sum under explicit terms;
- A copy of the signed Deed of Trust (Line of Credit Trust Deed), the instrument that secures the loan to the associated property;
- A copy of the Assignment of Deed of Trust; detailing the transfer of your mortgage from Countrywide Home Loans to The Bank of New York Mellon;
- A copy of the Corporate Assignment of Deed of Trust; detailing the transfer of your mortgage from The Bank of New York Mellon to RRA CP Opportunity Trust 1.

RTR is committed to customer service and hopes this correspondence addresses your concerns.   Should you have any further questions, please contact us at **1-888-895-0221**.

Sincerely,
Real Time Resolutions, Inc.
Research Department

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. Account Information as of: 11-15-2021, Principal Balance: $59,429.04, Accrued Interest: $27,062.13, Other Fees: $245.36, Late Fees: $4,217.42, Payoff: $90,953.95. This account's current creditor is RRA CP OPPORTUNITY TRUST 1.   This account's original creditor is Countrywide Financial Corp.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Toll Free Customer Service: 1-888-895-0221
Corporate Office Hours: Monday - Friday 8:30am - 5:30pm Central
www.payrtr.com

Page 1 of 1

372

Exhibit 1-4  400

# Real Time Resolutions, Inc.
## Loan History Summary

| Loan ID | Borrower Name |
|---|---|
| ██████ 0162 | GABRIEL MARQUEZ VARGAS |

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/10/21 | 10/25/21 | Late Charge Assess | 0 / 0 | (66.02) | | 59,429.04 | | | | (66.02) | 4,217.42 | $ 0.00 |
| 11/09/21 | 01/25/16 | Atty-Foreclosure Fee Di | 0 / VE BROAD | (150.00) | | 59,429.04 | | | | | 4,151.40 | $ 0.00 |
| 11/09/21 | 01/25/16 | Atty-ForeclosureCost Di | 0 / VE BROAD | (10.36) | | 59,429.04 | | | | | 4,151.40 | $ 0.00 |
| 10/11/21 | 09/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,429.04 | | | | (67.22) | 4,151.40 | $ 0.00 |
| 09/14/21 | 01/25/16 | Late Charge Waive | 0 / | 2,183.35 | | 59,429.04 | | | | 2,183.35 | 4,084.18 | $ 0.00 |
| 09/14/21 | 09/25/10 | Principal Adjustment | 0 / | 332.01 | 332.01 | 59,429.04 | | | | | 6,267.53 | $ 0.00 |
| 09/10/21 | 08/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 6,267.53 | $ 0.00 |
| 08/10/21 | 07/25/21 | Late Charge Assess | 0 / 0 | (66.12) | | 59,761.05 | | | | (66.12) | 6,200.31 | $ 0.00 |
| 07/11/21 | 06/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 6,134.19 | $ 0.00 |
| 06/25/21 | 09/25/10 | Broker Price Opinion Di | 0 / 246USRES | (85.00) | | 59,761.05 | | | | | 6,066.97 | $ 0.00 |
| 06/10/21 | 05/25/21 | Late Charge Assess | 0 / 0 | (66.12) | | 59,761.05 | | | | (66.12) | 6,066.97 | $ 0.00 |
| 05/11/21 | 04/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 6,000.85 | $ 0.00 |
| 04/10/21 | 03/25/21 | Late Charge Assess | 0 / 0 | (63.91) | | 59,761.05 | | | | (63.91) | 5,933.63 | $ 0.00 |
| 03/13/21 | 02/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 5,869.72 | $ 0.00 |
| 02/10/21 | 01/25/21 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,802.50 | $ 0.00 |
| 01/10/21 | 12/25/20 | Late Charge Assess | 0 / 0 | (66.03) | | 59,761.05 | | | | (66.03) | 5,735.37 | $ 0.00 |
| 12/16/20 | 09/25/10 | Late Charge Waive | 0 / | 10.92 | | 59,761.05 | | | | 10.92 | 5,669.34 | $ 0.00 |
| 12/11/20 | 11/25/20 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,680.26 | $ 0.00 |
| 11/10/20 | 10/25/20 | Late Charge Assess | 0 / 0 | (66.03) | | 59,761.05 | | | | (66.03) | 5,613.13 | $ 0.00 |
| 10/11/20 | 09/25/20 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,547.10 | $ 0.00 |
| 09/10/20 | 08/25/20 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,479.97 | $ 0.00 |
| 08/10/20 | 07/25/20 | Late Charge Assess | 0 / 0 | (66.03) | | 59,761.05 | | | | (66.03) | 5,412.84 | $ 0.00 |
| 07/11/20 | 06/25/20 | Late Charge Assess | 0 / 0 | (72.18) | | 59,761.05 | | | | (72.18) | 5,346.81 | $ 0.00 |
| 06/10/20 | 05/25/20 | Late Charge Assess | 0 / 0 | (70.92) | | 59,761.05 | | | | (70.92) | 5,274.63 | $ 0.00 |
| 05/11/20 | 04/25/20 | Late Charge Assess | 0 / 0 | (74.23) | | 59,761.05 | | | | (74.23) | 5,203.71 | $ 0.00 |
| 04/10/20 | 03/25/20 | Late Charge Assess | 0 / 0 | (72.03) | | 59,761.05 | | | | (72.03) | 5,129.48 | $ 0.00 |
| 03/12/20 | 02/25/20 | Late Charge Assess | 0 / 0 | (74.73) | | 59,761.05 | | | | (74.73) | 5,057.45 | $ 0.00 |
| 02/10/20 | 01/25/20 | Late Charge Assess | 0 / 0 | (74.85) | | 59,761.05 | | | | (74.85) | 4,982.72 | $ 0.00 |
| 01/10/20 | 12/25/19 | Late Charge Assess | 0 / 0 | (74.52) | | 59,761.05 | | | | (74.52) | 4,907.87 | $ 0.00 |
| 12/11/19 | 11/25/19 | Late Charge Assess | 0 / 0 | (76.12) | | 59,761.05 | | | | (76.12) | 4,833.35 | $ 0.00 |

Exhibit 1-4 401

373

| Loan ID | Borrower Name |
|---|---|
| ▓▓▓▓ 162 | GABRIEL MARQUEZ VARGAS |

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/10/19 | 10/25/19 | Late Charge Assess | 0 / 0 | (75.75) | | 59,761.05 | | | | (75.75) | 4,757.23 | $ 0.00 |
| 10/11/19 | 09/25/19 | Late Charge Assess | 0 / 0 | (78.42) | | 59,761.05 | | | | (78.42) | 4,681.48 | $ 0.00 |
| 09/10/19 | 08/25/19 | Late Charge Assess | 0 / 0 | (78.66) | | 59,761.05 | | | | (78.66) | 4,603.06 | $ 0.00 |
| 08/10/19 | 07/25/19 | Late Charge Assess | 0 / 0 | (77.19) | | 59,761.05 | | | | (77.19) | 4,524.40 | $ 0.00 |
| 07/11/19 | 06/25/19 | Late Charge Assess | 0 / 0 | (78.66) | | 59,761.05 | | | | (78.66) | 4,447.21 | $ 0.00 |
| 06/10/19 | 05/25/19 | Late Charge Assess | 0 / 0 | (77.19) | | 59,761.05 | | | | (77.19) | 4,368.55 | $ 0.00 |
| 05/11/19 | 04/25/19 | Late Charge Assess | 0 / 0 | (78.66) | | 59,761.05 | | | | (78.66) | 4,291.36 | $ 0.00 |
| 04/10/19 | 03/25/19 | Late Charge Assess | 0 / 0 | (72.77) | | 59,761.05 | | | | (72.77) | 4,212.70 | $ 0.00 |
| 03/13/19 | 02/25/19 | Late Charge Assess | 0 / 0 | (78.90) | | 59,761.05 | | | | (78.90) | 4,139.93 | $ 0.00 |
| 02/10/19 | 01/25/19 | Late Charge Assess | 0 / 0 | (77.91) | | 59,761.05 | | | | (77.91) | 4,061.03 | $ 0.00 |
| 01/10/19 | 12/25/18 | Late Charge Assess | 0 / 0 | (76.19) | | 59,761.05 | | | | (76.19) | 3,983.12 | $ 0.00 |
| 12/11/18 | 11/25/18 | Late Charge Assess | 0 / 0 | (76.64) | | 59,761.05 | | | | (76.64) | 3,906.93 | $ 0.00 |
| 11/10/18 | 10/25/18 | Late Charge Assess | 0 / 0 | (74.96) | | 59,761.05 | | | | (74.96) | 3,830.29 | $ 0.00 |
| 10/11/18 | 09/25/18 | Late Charge Assess | 0 / 0 | (76.35) | | 59,761.05 | | | | (76.35) | 3,755.33 | $ 0.00 |
| 09/10/18 | 08/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,678.98 | $ 0.00 |
| 08/10/18 | 07/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,668.98 | $ 0.00 |
| 07/11/18 | 06/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,658.98 | $ 0.00 |
| 06/10/18 | 05/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,648.98 | $ 0.00 |
| 05/11/18 | 04/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,638.98 | $ 0.00 |
| 04/10/18 | 03/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,628.98 | $ 0.00 |
| 03/13/18 | 02/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,618.98 | $ 0.00 |
| 02/12/18 | 01/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,608.98 | $ 0.00 |
| 01/10/18 | 12/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,598.98 | $ 0.00 |
| 12/11/17 | 11/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,588.98 | $ 0.00 |
| 11/10/17 | 10/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,578.98 | $ 0.00 |
| 10/11/17 | 09/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,568.98 | $ 0.00 |
| 09/10/17 | 08/25/17 | Late Charge Assess | 0 / 0 | (72.54) | | 59,761.05 | | | | (72.54) | 3,558.98 | $ 0.00 |
| 08/10/17 | 07/25/17 | Late Charge Assess | 0 / 0 | (70.29) | | 59,761.05 | | | | (70.29) | 3,486.44 | $ 0.00 |
| 07/11/17 | 06/25/17 | Late Charge Assess | 0 / 0 | (71.27) | | 59,761.05 | | | | (71.27) | 3,416.15 | $ 0.00 |
| 06/10/17 | 05/25/17 | Late Charge Assess | 0 / 0 | (70.04) | | 59,761.05 | | | | (70.04) | 3,344.88 | $ 0.00 |
| 05/11/17 | 04/25/17 | Late Charge Assess | 0 / 0 | (70.29) | | 59,761.05 | | | | (70.29) | 3,274.84 | $ 0.00 |

Exhibit 1-4 402

| Loan ID | Borrower Name |
|---|---|
| ▓▓▓▓ 0162 | GABRIEL MARQUEZ VARGAS |

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/10/17 | 03/25/17 | Late Charge Assess | 0 / 0 | (66.44) | | 59,761.05 | | | | (66.44) | 3,204.55 | $ 0.00 |
| 03/13/17 | 02/25/17 | Late Charge Assess | 0 / 0 | (70.00) | | 59,761.05 | | | | (70.00) | 3,138.11 | $ 0.00 |
| 02/10/17 | 01/25/17 | Late Charge Assess | 0 / 0 | (68.92) | | 59,761.05 | | | | (68.92) | 3,068.11 | $ 0.00 |
| 01/10/17 | 12/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,999.19 | $ 0.00 |
| 12/11/16 | 11/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,931.70 | $ 0.00 |
| 11/10/16 | 10/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,863.07 | $ 0.00 |
| 10/11/16 | 09/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,795.58 | $ 0.00 |
| 09/10/16 | 08/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,726.95 | $ 0.00 |
| 08/10/16 | 07/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,658.32 | $ 0.00 |
| 07/11/16 | 06/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,590.83 | $ 0.00 |
| 07/05/16 | 09/25/10 | Inv Loan Purchase | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |
| 07/05/16 | 09/25/10 | Investor Loan Sale | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |
| 07/01/16 | 09/25/10 | Inv Loan Purchase | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |
| 07/01/16 | 09/25/10 | Investor Loan Sale | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |
| 06/10/16 | 05/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,522.20 | $ 0.00 |
| 05/11/16 | 04/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,454.71 | $ 0.00 |
| 04/10/16 | 03/25/16 | Late Charge Assess | 0 / 0 | (66.35) | | 59,761.05 | | | | (66.35) | 2,386.08 | $ 0.00 |
| 03/12/16 | 02/25/16 | Late Charge Assess | 0 / 0 | (68.64) | | 59,761.05 | | | | (68.64) | 2,319.73 | $ 0.00 |
| 02/10/16 | 01/25/16 | Late Charge Assess | 0 / 0 | (67.74) | | 59,761.05 | | | | (67.74) | 2,251.09 | $ 0.00 |
| 01/10/16 | 12/25/15 | Late Charge Assess | 0 / 0 | (66.35) | | 59,761.05 | | | | (66.35) | 2,183.35 | $ 0.00 |
| 12/11/15 | 11/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 2,117.00 | $ 0.00 |
| 11/10/15 | 10/25/15 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 2,082.74 | $ 0.00 |
| 10/11/15 | 09/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 2,049.59 | $ 0.00 |
| 09/10/15 | 08/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 2,015.33 | $ 0.00 |
| 08/10/15 | 07/25/15 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,981.07 | $ 0.00 |
| 07/11/15 | 06/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,947.92 | $ 0.00 |
| 06/10/15 | 05/25/15 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,913.66 | $ 0.00 |
| 05/11/15 | 04/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,880.51 | $ 0.00 |
| 04/10/15 | 03/25/15 | Late Charge Assess | 0 / 0 | (30.94) | | 59,761.05 | | | | (30.94) | 1,846.25 | $ 0.00 |
| 03/13/15 | 02/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,815.31 | $ 0.00 |
| 02/10/15 | 01/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,781.05 | $ 0.00 |

Exhibit 1-4 403

375

Loan ID | Borrower Name
--- | ---
0162 | GABRIEL MARQUEZ VARGAS

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/10/15 | 12/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,746.79 | $ 0.00 |
| 12/11/14 | 11/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,713.64 | $ 0.00 |
| 11/10/14 | 10/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,679.38 | $ 0.00 |
| 10/11/14 | 09/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,646.23 | $ 0.00 |
| 09/10/14 | 08/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,611.97 | $ 0.00 |
| 08/10/14 | 07/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,577.71 | $ 0.00 |
| 07/11/14 | 06/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,544.56 | $ 0.00 |
| 06/10/14 | 05/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,510.30 | $ 0.00 |
| 05/11/14 | 04/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,477.15 | $ 0.00 |
| 04/10/14 | 03/25/14 | Late Charge Assess | 0 / 0 | (30.94) | | 59,761.05 | | | | (30.94) | 1,442.89 | $ 0.00 |
| 03/13/14 | 02/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,411.95 | $ 0.00 |
| 02/10/14 | 01/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,377.69 | $ 0.00 |
| 01/10/14 | 12/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,343.43 | $ 0.00 |
| 12/11/13 | 11/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,310.28 | $ 0.00 |
| 11/10/13 | 10/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,276.02 | $ 0.00 |
| 10/11/13 | 09/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,242.87 | $ 0.00 |
| 09/10/13 | 08/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,208.61 | $ 0.00 |
| 08/10/13 | 07/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,174.35 | $ 0.00 |
| 07/11/13 | 06/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,141.20 | $ 0.00 |
| 06/10/13 | 05/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,106.94 | $ 0.00 |
| 05/11/13 | 04/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,073.79 | $ 0.00 |
| 04/10/13 | 03/25/13 | Late Charge Assess | 0 / 0 | (30.94) | | 59,761.05 | | | | (30.94) | 1,039.53 | $ 0.00 |
| 03/13/13 | 02/25/13 | Late Charge Assess | 0 / 0 | (34.25) | | 59,761.05 | | | | (34.25) | 1,008.59 | $ 0.00 |
| 02/10/13 | 01/25/13 | Late Charge Assess | 0 / 0 | (34.16) | | 59,761.05 | | | | (34.16) | 974.34 | $ 0.00 |
| 01/10/13 | 12/25/12 | Late Charge Assess | 0 / 0 | (33.06) | | 59,761.05 | | | | (33.06) | 940.18 | $ 0.00 |
| 01/05/13 | 11/25/12 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 907.12 | $ 0.00 |
| 11/06/12 | 09/25/10 | New Loan | 0 / | 0.00 | | 59,761.05 | | | | | 872.86 | $ 0.00 |
| | | | | $ 332.01 | | | $ 0.00 | $ 0.00 | | | | |

Exhibit 1-4  404

## FACSIMILE COVER SHEET

**From:**       Name:          Customer Service
                Fax Number:
                Voice Phone:   (800)669-6607

**To:**         Name:          GABRIEL MARQUEZ VARGAS
                Company:
                Fax Number:    (213) 457 2655
                Voice Phone:

**Fax Notes:**

---

Bank of America, N.A.

---

Date and time of transmission:             11/12/21 15:13
Number of pages including this cover page:  7

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND DESTROY THIS DOCUMENT. THANK YOU.

**377**

Exhibit 1-4  405

C3_1631_LNHISTF 20531  04/25/2017

**Bank of America**

*Customer Service Department*
*PO Box 31785*
*Tampa, FL  33631-3785*

Date: 11/12/2021

Loan No: ▮▮▮▮0162

Property Address:

4611 S 164TH ST
TUKWILA, WA  98188

GABRIEL MARQUEZ VARGAS
4611 S 164TH ST
TUKWILA, WA  98188

# We've enclosed your home loan history statement with transaction details.

As you requested, enclosed is your statement that provides the following:
- Payments we received from you
- Servicing expenses we paid to third parties
- Tax and insurance payments we paid on your behalf
- Late charges assessed and paid

## Questions?

We appreciate the opportunity to serve your home loan needs. For general account information, you can visit us online at bankofamerica.com.

**378**

Exhibit 1-4  406

**Bank of America**

Home Loans

Loan Number: ████0162
Statement Period: 01/2000 - 11/2021
Date Prepared: 11/12/2021

Property Address:
4611 S 164TH ST
TUKWILA, WA 98188

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | .00 | | .00 | | | | .00 |
| 12/15/2005 | ORIGINATION FEE | 217.60 | 12/2005 | -217.60 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 217.60 | | .00 | | | .00 | .00 |
| 12/15/2005 | CLOSING COST FEE | 41.00 | 12/2005 | -41.00 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 258.60 | | .00 | | | .00 | .00 |
| 12/15/2005 | INITIAL DRAW | 59,641.40 | 12/2005 | -59,641.40 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 02/10/2006 | BILLING ADJUSTMNT | 29.29 | 12/2005 | .00 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 02/14/2006 | REGULAR PAYMENT | 1,017.32 | 02/2006 | 177.48 | 839.84 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,722.52 | | .00 | | | .00 | .00 |
| 03/03/2006 | PAYMENT REVERSAL | -1,017.32 | 02/2006 | -177.48 | -839.84 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 03/03/2006 | REGULAR PAYMENT | 839.84 | 02/2006 | .00 | 839.84 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 03/07/2006 | REGULAR PAYMENT | 504.60 | 03/2006 | .00 | 504.60 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 04/14/2006 | REGULAR PAYMENT | 559.61 | 04/2006 | .00 | 559.61 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 05/15/2006 | REGULAR PAYMENT | 553.87 | 05/2006 | .00 | 553.87 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 06/16/2006 | REGULAR PAYMENT | 572.33 | 06/2006 | .00 | 572.33 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 07/14/2006 | REGULAR PAYMENT | 566.18 | 07/2006 | .00 | 566.18 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 08/15/2006 | REGULAR PAYMENT | 597.77 | 08/2006 | .00 | 597.77 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 09/15/2006 | REGULAR PAYMENT | 597.77 | 09/2006 | .00 | 597.77 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 10/18/2006 | REGULAR PAYMENT | 578.49 | 10/2006 | .00 | 578.49 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |
| 11/16/2006 | REGULAR PAYMENT | 597.77 | 11/2006 | .00 | 597.77 | .00 | .00 | .00 | .00 | .00 |
| | | | | 59,900.00 | | .00 | | | .00 | .00 |

Exhibit 1-4  407

ONEFAXWESTn4

11/12/2021  3:15:16 PM  PAGE  3/007  888-294-5658

**Bank of America**
**Home Loans**

ONEFAXWESTn4    11/12/2021 3:15:16 PM PAGE 4/007    888-294-5658

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/15/2006 | REGULAR PAYMENT | 578.49 | 12/2006 | .00 59,900.00 | 578.49 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/23/2007 | REGULAR PAYMENT | 597.77 | 01/2007 | .00 59,900.00 | 597.77 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 02/16/2007 | REGULAR PAYMENT | 597.77 | 02/2007 | .00 59,900.00 | 597.77 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 03/19/2007 | REGULAR PAYMENT | 539.92 | 03/2007 | .00 59,900.00 | 539.92 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 04/17/2007 | REGULAR PAYMENT | 597.77 | 04/2007 | .00 59,900.00 | 597.77 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 05/24/2007 | REGULAR PAYMENT | 578.49 | 05/2007 | .00 59,900.00 | 578.49 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 06/22/2007 | REGULAR PAYMENT | 597.77 | 06/2007 | .00 59,900.00 | 597.77 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 07/24/2007 | REGULAR PAYMENT | 578.49 | 07/2007 | .00 59,900.00 | 578.49 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 07/24/2007 | MISC. POSTING | 19.28 | 07/2007 | 19.28 59,880.72 | .00 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 08/16/2007 | REGULAR PAYMENT | 597.72 | 08/2007 | .00 59,880.72 | 597.72 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 09/20/2007 | REGULAR PAYMENT | 597.58 | 09/2007 | .00 59,880.72 | 597.58 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 10/22/2007 | REGULAR PAYMENT | 578.30 | 10/2007 | .00 59,880.72 | 578.30 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 11/23/2007 | REGULAR PAYMENT | 572.15 | 11/2007 | .00 59,880.72 | 572.15 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/20/2007 | REGULAR PAYMENT | 541.39 | 12/2007 | .00 59,880.72 | 541.39 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 12/26/2007 | PAYMENT REVERSAL | -541.39 | 12/2007 | .00 59,880.72 | -541.39 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 01/22/2008 | REGULAR PAYMENT | 1,156.76 | 01/2008 | .00 59,880.72 | 1,100.82 | .00 .00 | .00 | .00 | 55.94 .00 | .00 .00 |
| 02/21/2008 | REGULAR PAYMENT | 545.23 | 02/2008 | .00 59,880.72 | 545.23 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |
| 03/20/2008 | REGULAR PAYMENT | 450.74 | 03/2008 | .00 59,880.72 | 450.74 | .00 .00 | .00 | .00 | .00 .00 | .00 .00 |

Exhibit 1-4  408

**Bank of America**
**Home Loans**

ONEFAXWESTn4

11/12/2021 3:15:16 PM PAGE 5/007 888-294-5658

Exhibit 1-4 409

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/21/2008 | MISC. POSTING | 545.23 | 03/2008 | 545.23<br>59,335.49 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/21/2008 | REGULAR PAYMENT | 480.27 | 04/2008 | .00<br>59,335.49 | 480.27 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/30/2008 | PAYMENT REVERSAL | -545.23 | 03/2008 | -545.23<br>59,880.72 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/30/2008 | REGULAR PAYMENT | 545.23 | 04/2008 | 545.23<br>59,335.49 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/01/2008 | REGULAR PAYMENT | 545.23 | 05/2008 | 119.67<br>59,215.82 | 425.56 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/01/2008 | PAYMENT REVERSAL | -545.23 | 04/2008 | -545.23<br>59,761.05 | .00 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/24/2008 | REGULAR PAYMENT | 430.25 | 06/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/30/2008 | REGULAR PAYMENT | 416.37 | 07/2008 | .00<br>59,761.05 | 416.37 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/22/2008 | REGULAR PAYMENT | 430.25 | 08/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/15/2008 | REGULAR PAYMENT | 430.25 | 09/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/23/2008 | REGULAR PAYMENT | 416.37 | 10/2008 | .00<br>59,761.05 | 416.37 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/24/2008 | REGULAR PAYMENT | 430.25 | 11/2008 | .00<br>59,761.05 | 430.25 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/06/2009 | REGULAR PAYMENT | 367.38 | 12/2008 | .00<br>59,761.05 | 367.38 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/04/2009 | REGULAR PAYMENT | 379.63 | 01/2009 | .00<br>59,761.05 | 379.63 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/06/2009 | REGULAR PAYMENT | 342.60 | 02/2009 | .00<br>59,761.05 | 342.60 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/06/2009 | REGULAR PAYMENT | 309.45 | 03/2009 | .00<br>59,761.05 | 309.45 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/06/2009 | REGULAR PAYMENT | 342.60 | 04/2009 | .00<br>59,761.05 | 342.60 | .00<br>.00 | .00 | .00 | .00<br>33.16 | .00<br>.00 |
| 06/17/2009 | REGULAR PAYMENT | 364.71 | 06/2009 | .00<br>59,761.05 | 364.71 | .00<br>.00 | .00 | .00 | .00<br>101.68 | .00<br>.00 |

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/23/2009 | REGULAR PAYMENT | 350.00 | 07/2009 | .00<br>59,761.05 | 350.00 | .00<br>.00 | .00 | .00 | .00<br>100.58 | .00<br>.00 |
| 08/19/2009 | REGULAR PAYMENT | 391.57 | 08/2009 | .00<br>59,761.05 | 391.57 | .00<br>.00 | .00 | .00 | .00<br>134.84 | .00<br>.00 |
| 09/29/2009 | REGULAR PAYMENT | 753.72 | 09/2009 | .00<br>59,761.05 | 584.62 | .00<br>.00 | .00 | .00 | 169.10<br>.00 | .00<br>.00 |
| 11/03/2009 | REGULAR PAYMENT | 331.55 | 10/2009 | .00<br>59,761.05 | 331.55 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/30/2009 | REGULAR PAYMENT | 674.15 | 12/2009 | .00<br>59,761.05 | 674.15 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/05/2010 | REGULAR PAYMENT | 342.60 | 01/2010 | .00<br>59,761.05 | 342.60 | .00<br>.00 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/15/2010 | REGULAR PAYMENT | 683.00 | 04/2010 | .00<br>59,761.05 | 683.00 | .00<br>.00 | .00 | .00 | .00<br>65.21 | .00<br>.00 |
| 06/11/2010 | REGULAR PAYMENT | 350.00 | 05/2010 | .00<br>59,761.05 | 350.00 | .00<br>.00 | .00 | .00 | .00<br>132.63 | .00<br>.00 |
| 08/04/2010 | REGULAR PAYMENT | 400.00 | 06/2010 | .00<br>59,761.05 | 400.00 | .00<br>.00 | .00 | .00 | .00<br>165.79 | .00<br>.00 |
| 10/15/2010 | REGULAR PAYMENT | 400.00 | 07/2010 | .00<br>59,761.05 | 400.00 | .00<br>.00 | .00 | .00 | .00<br>267.47 | .00<br>.00 |
| 12/22/2010 | REGULAR PAYMENT | 331.55 | 08/2010 | .00<br>59,761.05 | 331.55 | .00<br>.00 | .00 | .00 | .00<br>334.89 | .00<br>.00 |
| 02/18/2011 | REGULAR PAYMENT | 342.60 | 09/2010 | .00<br>59,761.05 | 342.60 | .00<br>.00 | .00 | .00 | .00<br>403.41 | .00<br>.00 |

## Fee Transaction Activity (01/2000 - 11/2021)

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 12/20/2007 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 12/20/2007 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 12/26/2007 | Mortgage Pay Fee-Phone - Reversal | .00 | -9.00 |
| 12/26/2007 | Mortgage Pay Fee-Phone - Adjustment | -9.00 | .00 |

Exhibit 1-4   410

382

**Bank of America**

Home Loans

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 01/22/2008 | Mortgage Pay Fee-Phone | 8.00 | .00 |
| 01/22/2008 | Mortgage Pay Fee-Phone | .00 | 8.00 |
| 02/21/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 02/21/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 03/20/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 03/20/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 03/21/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 03/21/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 04/21/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 04/21/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 06/24/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 06/24/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 08/22/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 08/22/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 10/23/2008 | Mortgage Pay Fee-Phone | 9.00 | .00 |
| 10/23/2008 | Mortgage Pay Fee-Phone | .00 | 9.00 |
| 01/06/2009 | Mortgage Pay Fee-Phone | 8.00 | .00 |
| 01/06/2009 | Mortgage Pay Fee-Phone | .00 | 8.00 |
| 02/04/2009 | Mortgage Pay Fee-Phone | 14.00 | .00 |
| 02/04/2009 | Mortgage Pay Fee-Phone | .00 | 14.00 |
| 05/06/2009 | Mortgage Pay Fee-Phone | 5.00 | .00 |
| 05/06/2009 | Mortgage Pay Fee-Phone | .00 | 5.00 |
| 05/15/2009 | Mortgage Pay Fee-Phone - Reversal | .00 | -5.00 |
| 05/15/2009 | Mortgage Pay Fee-Phone - Adjustment | -5.00 | .00 |
| 06/17/2009 | Mortgage Pay Fee-Phone | 8.00 | .00 |
| 06/17/2009 | Mortgage Pay Fee-Phone | .00 | 8.00 |

ONEFAXWESTn4    11/12/2021 3:15:16 PM   PAGE   7/007   888-294-5658

Exhibit 1-4   411

383

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #: ▨▨▨0162
PROPERTY ADDRESS: 4611 S 164TH ST
TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

## HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT

Date: DECEMBER 07, 2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 16.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number. I also agree to comply with any agreement between me and the Card Issuer:

A. Account Access. In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand

 G M V



Exhibit 1-4 412

that in order to use my Card at an ATM, I must call 1-800-669-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

G. Limitation of Liability. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

H. Termination/Suspension of Account. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

**385**

Exhibit 1-4  413

I. Cancellation/Expiration of Cards. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. Lost or Stolen Cards. I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use. You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. Unauthorized Transactions. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. Special Rule for Card Purchases. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE:

**Special Rule for Card Purchases.**
If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b) The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card Issuer mailed me the advertisement for the property or services.

**4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, without penalty

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a Check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My Check will not be honored if I do not have sufficient availability on my Account.

(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.

(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

(4) I may not use a Check to make a payment once the Draw Period ends; that is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my Account.

Exhibit 1-4  414

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 59,900.00 . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**6. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be N/A % and the initial **ANNUAL PERCENTAGE RATE** would be N/A %. These discounted rates will be in effect from the date of this Agreement until N/A . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is 0.02877 % and the initial **ANNUAL PERCENTAGE RATE** is 10.500 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of <u>The Wall Street Journal</u> as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is 3.500 percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and no other costs. The **ANNUAL PERCENTAGE RATE** will never increase above 18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**7. FINANCE CHARGE.** I agree to pay a periodic finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

LOAN #: ███████0162

B. Other FINANCE CHARGES.

    (1) Points FINANCE CHARGE.

I agree to pay a Points FINANCE CHARGE of $ 0.00        at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

    (2) Broker Fee FINANCE CHARGES.

I agree to pay Broker Fee FINANCE CHARGES of $ N/A       at the time I sign this Agreement.

$ _____
$ _____
$ _____
$ _____
$ _____

    (3) Settlement Agent FINANCE CHARGES.

I agree to pay the following Settlement Agent FINANCE CHARGES at the time I sign this Agreement:

Closing Fee                                     $ _____ 0.00
Closing/Escrow                            $ _____ 217.60
$ _____
$ _____
$ _____
$ _____

    (4) Miscellaneous FINANCE CHARGES.

I agree to pay the following Miscellaneous FINANCE CHARGES at the time I sign this Agreement:

$ _____
$ _____
$ _____
$ _____

    (5) Annual Maintenance Fee FINANCE CHARGE.

☐ I agree to pay an annual maintenance fee FINANCE CHARGE of $ 0.00      which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $             from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

☒ I will not be charged an annual maintenance fee FINANCE CHARGE on this loan.

8. OTHER CHARGES.

    A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

        (1) If I fail to make my "Minimum Payment Due" within fifteen (15)    days of the "Payment Due Date," I agree to pay a late fee of 10% of the late payment.

        (2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

388

Exhibit 1-4  416

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| Recording | $ | 41.00 |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| LESS Amounts Paid by Lender | $ | 0.00 |
| Total Paid by Borrower | $ | 258.60 |

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. I will not be charged an Account Termination Fee on this loan.

**9. PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage" or "Deed of Trust") covering my dwelling located at
4611 S 164TH ST, TUKWILA, WA 98188-3216
(the "Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Property is damaged or destroyed and whether or not any insurance proceeds are available.

**10. SECTION INTENTIONALLY OMITTED.**

**11. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

(6) the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7) the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

Exhibit 1-4  417

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

**13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1)  I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2)  I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3)  I sell or transfer title to the Real Property without first obtaining your written permission;

(4)  I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5)  I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6)  I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7)  All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8)  A prior lienholder on the Real Property begins foreclosure under its security document;

(9)  The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10)  I fail to pay taxes on the Real Property; or

(11)  My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

(a)  A judgment is filed against me;

(b)  I commit waste or otherwise destructively use or fail to maintain the Real Property;

(c)  I die and I am survived by another person obligated as a Borrower under this Agreement; or

(d)  I move out of the Real Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1)  you may terminate any of my rights under my Account;

(2)  you may temporarily or permanently refuse to make any additional loans;

(3)  you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4)  you may foreclose the Mortgage;

(5)  you may reduce my Credit Limit; and

(6)  you may take any other action permitted by this Agreement, by law or in equity.

**14. MY IMPORTANT OBLIGATIONS.** I agree that:

A.  I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B.  I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C.  From time to time, if requested, I will supply you with current financial information about me.

D.  I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E.  I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F.  I will not use or allow use of the Real Property for any illegal purpose.

G.  I will not move out of the Real Property.

H.  I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I.  I will not break any promise made in this Agreement or in the Mortgage such as:

(1)  my promise not to exceed my Credit Limit; and

(2)  my "Important Obligations" listed in the Mortgage.

**15. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**16. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A.  Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 16.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

B.  Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 16.A above.

C.  Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination.

**17. CHANGES TO AGREEMENT.**

A.  You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1)  if the original Index is no longer available, you may change the Index and Margin;

(2)  you may make any change I agree to in writing;

(3)  you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

## 18. OTHER PROVISIONS.

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. I w aive my right to a jury trial.

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment In Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to** COUNTRYWIDE HOME LOANS, INC. P.O. Box 5170, Simi Valley, CA 93062-5170

L. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

392

Exhibit 1-4  420

M. Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 18.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 18.M.

N. Riders/Addenda. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum                                    ☐ _____ Rider
☐ _____ Addendum                            ☐ _____
☒ Billing Rights Statement

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

_Gabriel Marquez Vargas_      12-12-05
Borrower: GABRIEL MARQUEZ VARGAS      Date

_____
Borrower:      Date

_____
Borrower:      Date

_____
Borrower:      Date

PAY TO THE ORDER OF
_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC
BY _____
David A. Spector
Managing Director

● HELOC - WA Agreement & Disclosure Statement
2C518-WA (05/05)      Page 10 of 10

393

Exhibit 1-4 421

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #: ▮▮▮▮▮0162
PROPERTY ADDRESS: 4611 S 164TH ST
                       TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

This notice of my billing rights is a Rider to and supplements my/our Home Equity Credit Line Agreement and Disclosure Statement.

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My name and account number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities After You Receive My Written Notice

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

HELOC - Billing Rights Notice
2C482-US (08/05)(d)

Initials: GXV       Initials: GV

394

Exhibit 1-4  422

*Countrywide*
*Po Box 10423*
*Van Nuys, CA 91410-0423*



008000377    VARGAS    GM

610   123110162  D2  001   001

MS sv-

P.O.Box 10423
Van Nuys, CA 91410-0423

Assessor's Parcel or Account Number: 537980-2945
Abbreviated Legal Description:
A PORTION OF LOT 9, BLOCK 14, MCMICKEN HEIGHT #2 UNRECORDED

[Include lot, block and plat or section, township and range]
Full legal description located on page 2

cti.1197783-4

Ⓣ

Trustee:
LANDSAFE TITLE OF WASHINGTON

———————————— [Space Above This Line For Recording Data] ————————————

50755-JM                          00012311016212005
[Escrow/Closing #]                      [Doc ID #]

CHICAGO TITLE INSURANCE COMPANY
has placed the document of
record as a customer courtesy
and accepts no liability for
the accuracy or validity of
the document.

**DEED OF TRUST**
(Line of Credit Trust Deed)

MIN 1001337-0001064406-3

THIS DEED OF TRUST, dated  DECEMBER 07, 2005    , is between
GABRIEL MARQUEZ VARGAS, AN UNMARRIED MAN

> This document is second and
> subordinate to Deed of Trust
> recorded concurrently herewith.

residing at
4611 S 164TH ST, TUKWILA, WA 98188-3216
the person or persons signing as "Grantor(s)" below and hereinafter referred to as "we," "our," or "us" and
LANDSAFE TITLE OF WASHINGTON
as trustee and hereinafter referred to as the "Trustee," with an address at
2707 COLBY AVENUE SUITE 1118, EVERETT, WA 98201
for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware
corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS is the
"Beneficiary" under this Deed of Trust and is acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns, with an address of
4500 Park Granada, Calabasas, CA 91302-1613

PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to
the Trustee the premises located at:
4611 S 164TH ST, TUKWILA
[State, Municipality]
KING                    Washington 98188-3216   (the "Premises"),
County                         ZIP

Initials: GMV

★ MERS HELOC - Deed of Trust
2E034-WA (11/04)(d)                Page 1 of 5



* 2 3 9 9 1 *



* 1 2 3 1 1 0 1 6 2 0 0 0 0 0 2 E 0 3 4 *

395

Exhibit 1-4  423

and further described as:
THE NORTHERLY 145.00 FEET OF THE EAST 60.00 FEET OF THE FOLLOWING DESCRIBED
TRACT: THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 27, TOWNSHIP 23
NORTH, RANGE 4 EAST, W.M., IN KING COUNTY, WASHINGTON, DESCRIBES AS
FOLLOWS: COMMENCING AT A POINT ON THE NORTHERLY LINE OF SAID SECTION 27 A
DISTANCE NORTH 89 59'10" WEST 1256.10 FEET FROM THE NORTHEAST CORNER
THEREOF; THENCE SOUTH 00 15'50" EAST 1251.60 FEET TO THE TRUE POINT OF
BEGINNING OF THEN TRACT HEREIN DESCRIBED; THENCE CONTINUING SOUTH 00 15'50"
EAST 290.40 FEET; THENCE NORTH 89 59'10" WEST 150.00 FEET; THENCE NORTH 00
15'50" WEST 290.40 FEET; THENCE SOUTH 89 59'10" EAST 150.00 FEET TO THE
TRUE POINT OF BEGINNING; (ALSO KNOWN AS A PORTION OF LOT 9 IN BLOCK 14 OF
MCMICKEN HEIGHTS DIVISION NO. 2 UNRECORDED.)

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights
and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.
The Premises are not used principally for agricultural or farming purposes.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender
and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Deed of
Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to
foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing
or canceling this Deed of Trust.

TERM: The maximum term of the Note is 25 years, including any renewals or extensions thereof.

LOAN: This Deed of Trust will secure your loan to us in the principal amount of $ 59,900.00        or so
much thereof as may be advanced and readvanced from time to time to
GABRIEL MARQUEZ VARGAS

the Borrower(s) under the Home Equity Credit Line Agreement And Disclosure Statement (the "Note") dated
DECEMBER 07, 2005     , plus interest and costs, late charges and all other charges related to the loan, all
of which sums are repayable according to the Note. This Deed of Trust will also secure the performance of all
of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises
and agreements in this Deed of Trust, any extensions, renewals, amendments, supplements and other
modifications of the Note, and any amounts advanced by you under the terms of the section of this Deed of
Trust entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to
time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage, grant and convey
the Premises to the Trustee.

BORROWER'S IMPORTANT OBLIGATIONS:

(a) PAYMENT AND PERFORMANCE: We will pay to you all amounts secured by this Deed of Trust as
they become due, and shall strictly perform our obligations.

(b) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the
Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the
Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(c) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not
make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s)
on the Premises without first getting your consent. We will not conduct or permit any nuisance or waste on or to
the Premises. We will not use the Premises illegally. If this Deed of Trust is on a unit in a condominium or a
planned unit development, we shall perform all of our obligations under the declaration or covenants creating or
governing the condominium or planned unit development, the by-laws and regulations of the condominium or
planned unit development and constituent documents.

(d) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire,
flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject
to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify.
We will deliver to you upon your request the policies or other proof of the insurance. The policies must name
you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of
your interest under this Deed of Trust, before we do. The insurance policies must also provide that you be given

Initials: GMV

not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(e) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Deed of Trust.

(f) GOVERNMENTAL REQUIREMENTS: We will comply with all laws, ordinances and regulations applicable to the use or occupancy of the Premises.

(g) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

(h) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Deed of Trust, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Deed of Trust secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Deed of Trust. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Deeds of Trust.

(i) PRIOR DEED OF TRUST: If the provisions of this paragraph are completed, this Deed of Trust is subject and subordinate to a prior deed of trust dated DECEMBER 05, 2005 and given by us for the benefit of
COUNTRYWIDE HOME LOANS
as beneficiary, in the original amount of $ 0.00 (the "Prior Deed of Trust"). We shall not increase, amend or modify the Prior Deed of Trust without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Deed of Trust promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Deed of Trust as and when required under the Prior Deed of Trust.

(j) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(k) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(l) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Deed of Trust may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Deed of Trust without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, the Trustee may foreclose upon this Deed of Trust by notice and sale or may foreclose judicially, in either case in accordance with and to the extent provided by law. You may bid at any public sale on all or any portion of the

● MERS HELOC - Deed of Trust
2E034-WA (11/04)                                    Page 3 of 5

Initials: *G.H.U.*

Exhibit 1-4 425

Property. In addition, you or the Trustee may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure or public sale. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure or to public sale, including, but not limited to, trustee's fees, reasonable attorneys fees (whether or not there is a judicial proceeding) and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Deed of Trust and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Deed of Trust. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Deed of Trust will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Deed of Trust is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Deed of Trust, and provided any obligation to make further advances under the Note has terminated, this Deed of Trust and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
4500 Park Granada, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Deed of Trust shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Deed of Trust and provided your obligation to make further advances under the Note has terminated, the Trustee shall discharge this Deed of Trust without charge to us, except that we shall pay any fees for recording of a reconveyance of this Deed of Trust.

SEVERABILITY: If any provision in this Deed of Trust is held invalid or unenforceable, the remaining provisions shall continue in full force and effect.

GENERAL: You or the Trustee can waive or delay enforcing any of your rights under this Deed of Trust without losing them. Any waiver by you of any provisions of this Deed of Trust will not be a waiver of that or any other provision on any other occasion.

SUBSTITUTE TRUSTEE: Lender may, from time to time, appoint a successor trustee by an instrument executed and acknowledged by Lender and recorded in the county in which this Deed of Trust is recorded, and upon such recordation the successor trustee shall become vested with the same powers, rights, duties and authority of the Trustee with the same effect as if originally made Trustee hereunder.

MERGER: There shall be no merger of the interest or estate created by this Deed of Trust with any other estate or interest in the Premises at any time held by you or for your benefit without your written consent.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

● MERS HELOC - Deed of Trust
2E034-WA (11/04)                                        Page 4 of 5

Initials: _GMV_

398

Exhibit 1-4  426

THIS DEED OF TRUST has been signed by each of us under seal on the date first above written.

_Gubrial Marquez Vargas_ (SEAL)
Grantor: GABRIEL MARQUEZ VARGAS

_____ (SEAL)
Grantor:

_____ (SEAL)
Grantor:

_____ (SEAL)
Grantor:

STATE OF WASHINGTON }
County of King } ss:
On this day personally appeared before me Gabriel Marquez Vargas
to me known to be the individual _____ described in and who executed the within and foregoing instrument, and acknowledged that _____ signed the same as _____ free and voluntary act and deed, for the uses and purposes therein mentioned.
GIVEN under my hand and official seal this 12th day of December, 2005.

Notary Public in and for the State of Washington, residing at
Bellevue

My Appointment Expires on 9/1/08

● MERS HELOC - Deed of Trust
2E034-WA (11/04)                 Page 5 of 5

399

Exhibit 1-4  427

**Electronically Recorded**
**20120702000394**
INGEO SYSTEMS INC ADT 15.00
Page 001 of 002
07/02/2012 11:18
King County, WA

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

This space for Recorder's use

DocID# 19012311016217005

Tax ID: 537980-2945

Property Address:
4611 S 164th St
Tukwila, WA 98188-3216
WA0-ADT 18986023 E 6/25/2012

Recording Requested By:
**Bank of America**
Prepared By:
**Danilo Cuenca**
800-444-4302
1860 Tapo Canyon Road
Simi Valley, CA 93063

MIN #: 1001337-0001064406-3    MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender: COUNTRYWIDE HOME LOANS, INC.
Made By: GABRIEL MARQUEZ VARGAS, AN UNMARRIED MAN
Original Trustee: LANDSAFE.TITLE OF WASHINGTON
Date of Deed of Trust: 12/7/2005
Original Loan Amount: $59,900.00

Recorded in King County, WA on: 12/15/2005, book N/A, page N/A and instrument number 20051215002817

Property Legal Description:
THE NORTHERLY 145.00 FEET OF THE EAST 60.00 FEET OF THE FOLLOWING DESCRIBED TRACT: THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 27, TOWNSHIP 23 NORTH, RANGE 4 EAST, W.M., IN KING COUNTY, WASHINGTON, DESCRIBES AS FOLLOWS: COMMENCING AT A POINT ON THE NORTHERLY LINE OF SAID SECTION 27 A DISTANCE NORTH 89°59'10" WEST 1256.10 FEET FROM THE NORTHEAST CORNER THEREOF; THENCE SOUTH 00 15'50" EAST 1251.60 FEET TO THE TRUE POINT OF BEGINNING OF THEN TRACT HEREIN DESCRIBED; THENCE CONTINUING SOUTH 00 15'50" EAST 290.40 FEET; THENCE NORTH 89 59'10" WEST 150.00 FEET; THENCE NORTH 00 15'50" WEST 290.40 FEET; THENCE SOUTH 89 59'10" EAST 150.00 FEET TO THE TRUE POINT OF BEGINNING; (ALSO KNOWN AS A PORTION OF LOT 9 IN BLOCK 14 OF MCMICKEN HEIGHTS DIVISION NO. 2 UNRECORDED.)

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on JUN 27 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Rene Rosales Assistant Secretary

008000377     VARGAS     GM

610   123110162   D8   002   001

400

Exhibit 1-4  428

State of California
County of Ventura

On **JUN 2 7 2012** before me, Roudabeh Beygzadeh-Elias , Notary Public, personally appeared Rene Rosales , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: RoudabelyBeygzadeh-Elias
My Commission Expires: June 4, 2015                                    (Seal)

ROUDABEH BEYGZADEH-ELIAS
Commission # 1939621
Notary Public - California
Los Angeles County
My Comm. Expires Jun 4, 2015

DocID#    19012311016217005

401

Exhibit 1-4  429

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

This space for Recorder's use

DocID# 19012311016217005

Tax ID: 537980-2945

Property Address:
4611 S 164th St
Tukwila, WA 98188-3216
WA0-ADT 18980025 E 6/25/2012

Recording Requested By:
**Bank of America**
Prepared By:
**Danilo Cuenca**
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063

MIN #: 1001337-0001064406-3     MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | COUNTRYWIDE HOME LOANS, INC. |
| Made By: | GABRIEL MARQUEZ VARGAS, AN UNMARRIED MAN |
| Original Trustee: | LANDSAFE TITLE OF WASHINGTON |
| Date of Deed of Trust: | 12/7/2005 |
| Original Loan Amount: | $59,900.00 |

Recorded in King County, WA on: 12/15/2005, book N/A, page N/A and instrument number 20051215002817

Property Legal Description:
THE NORTHERLY 145.00 FEET OF THE EAST 60.00 FEET OF THE FOLLOWING DESCRIBED TRACT: THAT PORTION OF THE NORTHEAST QUARTER OF SECTION 27, TOWNSHIP 23 NORTH, RANGE 4 EAST, W.M., IN KING COUNTY, WASHINGTON, DESCRIBES AS FOLLOWS: COMMENCING AT A POINT ON THE NORTHERLY LINE OF SAID SECTION 27 A DISTANCE NORTH 89 59'10" WEST 1256.10 FEET FROM THE NORTHEAST CORNER THEREOF; THENCE SOUTH 00 15'50" EAST 1251.60 FEET TO THE TRUE POINT OF BEGINNING OF THEN TRACT HEREIN DESCRIBED; THENCE CONTINUING SOUTH 00 15'50" EAST 290.40 FEET; THENCE NORTH 89 59'10" WEST 150.00 FEET; THENCE NORTH 00 15'50" WEST 290.40 FEET; THENCE SOUTH 89 59'10" EAST 150.00 FEET TO THE TRUE POINT OF BEGINNING; (ALSO KNOWN AS A PORTION OF LOT 9 IN BLOCK 14 OF MCMICKEN HEIGHTS DIVISION NO. 2 UNRECORDED.)

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
JUN 2 7 2012

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:
Rene Rosales Assistant Secretary

402

Exhibit 1-4  430

State of California
County of Ventura

On **JUN 2 7 2012** before me, Roudabeh Beygzadeh-Elias , Notary Public, personally appeared Rene Rosales , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Roudabeh Beygzadeh-Elias
My Commission Expires: June 4, 2015        (Seal)

ROUDABEH BEYGZADEH-ELIAS
Commission # 1939621
Notary Public - California
Los Angeles County
My Comm. Expires Jun 4, 2015

When Recorded Return To:
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**Electronically Recorded**
**20170601000370**
SIMPLIFILE                    ADT              15.00
Page 001 of 001
06/01/2017 11:15
King County, WA

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Doc ID: 48712311016229315

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK SUCCESSOR INDENTURE TRUSTEE TO JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I, WHOSE ADDRESS IS C/O BANK OF AMERICA, N.A., 4909 SAVARESE CIRCLE, TAMPA, FL 33634, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to RRA CP OPPORTUNITY TRUST 1, WHOSE ADDRESS IS 712 5TH AVENUE, 5TH FLOOR, NEW YORK, NY 10019, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)

Said Deed of Trust is dated 12/07/2005, and executed by GABRIEL MARQUEZ VARGAS, there and with LANDSAFE TITLE OF WASHINGTON as Original Trustee, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS DESIGNATED NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., BENEFICIARY OF THE SECURITY INSTRUMENT, ITS SUCCESSORS AND ASSIGNS, and recorded 12/15/2005, in Auditor File # 20051215002817, in the office of the Recorder of KING County, WA.

A PORTION OF LOT 9, BLOCK 14, MCMICKEN HEIGHT #2 UNRECORDED KING COUNTY WA

Parcel ID #: 537980-2945

IN WITNESS WHEREOF, this Assignment is executed on _____ MAY 2 3 2017 _____ (MM/DD/YYYY).
THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK SUCCESSOR INDENTURE TRUSTEE TO JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I, by BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING LP, its Attorney-in-Fact

By: Dana M. Burton

Dana M. Burton
ASSISTANT VICE PRESIDENT

STATE OF FLORIDA     COUNTY OF HILLSBOROUGH     MAY 2 3 2017
The foregoing instrument was acknowledged before me on _____ MAY 2 3 2017 _____ (MM/DD/YYYY), by Dana M. Burton as ASSISTANT VICE PRESIDENT of BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING LP as Attorney-in-Fact for THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK SUCCESSOR INDENTURE TRUSTEE TO JP MORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-1, who, as such ASSISTANT VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Michael Bourke
Notary Public - State of FLORIDA
Commission expires: NOV 0 2 2020

MICHAEL BOURKE
Notary Public, State of Florida
Commission# GG 44316
My comm. expires Nov 2, 2020

Document Prepared By: Julio Estrada, Bank of America, N.A. 4909 Savarese Circle, Tampa, FL 33634 (800) 444-4302
BOA01 398840794 MARTRL7  MIN  MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 T191705-11:02:42 [C-1] FRMWA1

*D0023248642*

008000377     VARGAS     GM

610   123110162   D4   001   002

EXCEPTIONS

404

Exhibit 1-4  432

**Loan ID** | **Borrower Name**
REDACTED 162 | GABRIEL MARQUEZ VARGAS

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/10/22 | 07/25/22 | Late Charge Assess | 0 / 0 | (69.38) | | 58,101.00 | | | | (69.38) | 4,819.59 | $ 0.00 |
| 07/27/22 | 05/25/16 | Broker Price Opinion Di | 0 / V-216072 | (85.00) | | 58,101.00 | | | | | 4,750.21 | $ 0.00 |
| 07/11/22 | 06/25/22 | Late Charge Assess | 0 / 0 | (67.98) | | 58,101.00 | | | | (67.98) | 4,750.21 | $ 0.00 |
| 06/15/22 | 05/25/16 | Atty-ForeclosureCost Di | 0 / VE BROAD | (160.92) | | 58,101.00 | | | | | 4,682.23 | $ 0.00 |
| 06/15/22 | 05/25/16 | Atty-Foreclosure Fee Di | 0 / VE BROAD | (1,613.31) | | 58,101.00 | | | | | 4,682.23 | $ 0.00 |
| 06/10/22 | 05/25/22 | Late Charge Assess | 0 / 0 | (66.73) | | 58,101.00 | | | | (66.73) | 4,682.23 | $ 0.00 |
| 05/11/22 | 04/25/22 | Late Charge Assess | 0 / 0 | (67.28) | | 58,101.00 | | | | (67.28) | 4,615.50 | $ 0.00 |
| 05/06/22 | 05/25/16 | Atty-Forclosure Fee Dis | 0 / EVE BROA | (450.00) | | 58,101.00 | | | | | 4,548.22 | $ 0.00 |
| 04/20/22 | 05/25/16 | Atty-Foreclosure Fee Di | 0 / VE BROAD | (577.50) | | 58,101.00 | | | | | 4,548.22 | $ 0.00 |
| 04/13/22 | 01/25/16 | Principal Adjustment | 0 / | 1,328.04 | 1,328.04 | 58,101.00 | | | | | 4,548.22 | $ 0.00 |
| 04/10/22 | 03/25/22 | Late Charge Assess | 0 / 0 | (63.74) | | 59,429.04 | | | | (63.74) | 4,548.22 | $ 0.00 |
| 04/01/22 | 01/25/16 | Atty-Forclosure Fee Dis | 0 / EVE BROA | (192.50) | | 59,429.04 | | | | | 4,484.48 | $ 0.00 |
| 03/13/22 | 02/25/22 | Late Charge Assess | 0 / 0 | (67.04) | | 59,429.04 | | | | (67.04) | 4,484.48 | $ 0.00 |
| 02/21/22 | 01/25/16 | Atty-Forclosure Fee Dis | 0 / EVE BROA | (632.50) | | 59,429.04 | | | | | 4,417.44 | $ 0.00 |
| 02/10/22 | 01/25/22 | Late Charge Assess | 0 / 0 | (67.04) | | 59,429.04 | | | | (67.04) | 4,417.44 | $ 0.00 |
| 01/11/22 | 01/25/16 | Atty-Forclosure Fee Dis | 0 / EVE BROA | (220.00) | | 59,429.04 | | | | | 4,350.40 | $ 0.00 |
| 01/10/22 | 12/25/21 | Late Charge Assess | 0 / 0 | (65.94) | | 59,429.04 | | | | (65.94) | 4,350.40 | $ 0.00 |
| 01/07/22 | 01/25/16 | Broker Price Opinion Di | 0 / V-205482 | (85.00) | | 59,429.04 | | | | | 4,284.46 | $ 0.00 |
| 01/06/22 | 01/25/16 | Atty-Forclosure Fee Dis | 0 / EVE BROA | (467.50) | | 59,429.04 | | | | | 4,284.46 | $ 0.00 |
| 12/11/21 | 11/25/21 | Late Charge Assess | 0 / 0 | (67.04) | | 59,429.04 | | | | (67.04) | 4,284.46 | $ 0.00 |
| 11/10/21 | 10/25/21 | Late Charge Assess | 0 / 0 | (66.02) | | 59,429.04 | | | | (66.02) | 4,217.42 | $ 0.00 |
| 11/09/21 | 01/25/16 | Atty-Foreclosure Fee Di | 0 / VE BROAD | (150.00) | | 59,429.04 | | | | | 4,151.40 | $ 0.00 |
| 11/09/21 | 01/25/16 | Atty-ForeclosureCost Di | 0 / VE BROAD | (10.36) | | 59,429.04 | | | | | 4,151.40 | $ 0.00 |
| 10/11/21 | 09/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,429.04 | | | | (67.22) | 4,151.40 | $ 0.00 |
| 09/14/21 | 01/25/16 | Late Charge Waive | 0 / | 2,183.35 | | 59,429.04 | | | | 2,183.35 | 4,084.18 | $ 0.00 |
| 09/14/21 | 09/25/10 | Principal Adjustment | 0 / | 332.01 | 332.01 | 59,429.04 | | | | | 6,267.53 | $ 0.00 |
| 09/10/21 | 08/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 6,267.53 | $ 0.00 |
| 08/10/21 | 07/25/21 | Late Charge Assess | 0 / 0 | (66.12) | | 59,761.05 | | | | (66.12) | 6,200.31 | $ 0.00 |
| 07/11/21 | 06/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 6,134.19 | $ 0.00 |
| 06/25/21 | 09/25/10 | Broker Price Opinion Di | 0 / 246USRES | (85.00) | | 59,761.05 | | | | | 6,066.97 | $ 0.00 |

405

Exhibit 1-4 433

| Loan ID | Borrower Name |
| --- | --- |
| 0162 | GABRIEL MARQUEZ VARGAS |

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 06/10/21 | 05/25/21 | Late Charge Assess | 0 / 0 | (66.12) | | 59,761.05 | | | | (66.12) | 6,066.97 | $ 0.00 |
| 05/11/21 | 04/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 6,000.85 | $ 0.00 |
| 04/10/21 | 03/25/21 | Late Charge Assess | 0 / 0 | (63.91) | | 59,761.05 | | | | (63.91) | 5,933.63 | $ 0.00 |
| 03/13/21 | 02/25/21 | Late Charge Assess | 0 / 0 | (67.22) | | 59,761.05 | | | | (67.22) | 5,869.72 | $ 0.00 |
| 02/10/21 | 01/25/21 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,802.50 | $ 0.00 |
| 01/10/21 | 12/25/20 | Late Charge Assess | 0 / 0 | (66.03) | | 59,761.05 | | | | (66.03) | 5,735.37 | $ 0.00 |
| 12/16/20 | 09/25/10 | Late Charge Waive | 0 / | 10.92 | | 59,761.05 | | | | 10.92 | 5,669.34 | $ 0.00 |
| 12/11/20 | 11/25/20 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,680.26 | $ 0.00 |
| 11/10/20 | 10/25/20 | Late Charge Assess | 0 / 0 | (66.03) | | 59,761.05 | | | | (66.03) | 5,613.13 | $ 0.00 |
| 10/11/20 | 09/25/20 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,547.10 | $ 0.00 |
| 09/10/20 | 08/25/20 | Late Charge Assess | 0 / 0 | (67.13) | | 59,761.05 | | | | (67.13) | 5,479.97 | $ 0.00 |
| 08/10/20 | 07/25/20 | Late Charge Assess | 0 / 0 | (66.03) | | 59,761.05 | | | | (66.03) | 5,412.84 | $ 0.00 |
| 07/11/20 | 06/25/20 | Late Charge Assess | 0 / 0 | (72.18) | | 59,761.05 | | | | (72.18) | 5,346.81 | $ 0.00 |
| 06/10/20 | 05/25/20 | Late Charge Assess | 0 / 0 | (70.92) | | 59,761.05 | | | | (70.92) | 5,274.63 | $ 0.00 |
| 05/11/20 | 04/25/20 | Late Charge Assess | 0 / 0 | (74.23) | | 59,761.05 | | | | (74.23) | 5,203.71 | $ 0.00 |
| 04/10/20 | 03/25/20 | Late Charge Assess | 0 / 0 | (72.03) | | 59,761.05 | | | | (72.03) | 5,129.48 | $ 0.00 |
| 03/12/20 | 02/25/20 | Late Charge Assess | 0 / 0 | (74.73) | | 59,761.05 | | | | (74.73) | 5,057.45 | $ 0.00 |
| 02/10/20 | 01/25/20 | Late Charge Assess | 0 / 0 | (74.85) | | 59,761.05 | | | | (74.85) | 4,982.72 | $ 0.00 |
| 01/10/20 | 12/25/19 | Late Charge Assess | 0 / 0 | (74.52) | | 59,761.05 | | | | (74.52) | 4,907.87 | $ 0.00 |
| 12/11/19 | 11/25/19 | Late Charge Assess | 0 / 0 | (76.12) | | 59,761.05 | | | | (76.12) | 4,833.35 | $ 0.00 |
| 11/10/19 | 10/25/19 | Late Charge Assess | 0 / 0 | (75.75) | | 59,761.05 | | | | (75.75) | 4,757.23 | $ 0.00 |
| 10/11/19 | 09/25/19 | Late Charge Assess | 0 / 0 | (78.42) | | 59,761.05 | | | | (78.42) | 4,681.48 | $ 0.00 |
| 09/10/19 | 08/25/19 | Late Charge Assess | 0 / 0 | (78.66) | | 59,761.05 | | | | (78.66) | 4,603.06 | $ 0.00 |
| 08/10/19 | 07/25/19 | Late Charge Assess | 0 / 0 | (77.19) | | 59,761.05 | | | | (77.19) | 4,524.40 | $ 0.00 |
| 07/11/19 | 06/25/19 | Late Charge Assess | 0 / 0 | (78.66) | | 59,761.05 | | | | (78.66) | 4,447.21 | $ 0.00 |
| 06/10/19 | 05/25/19 | Late Charge Assess | 0 / 0 | (77.19) | | 59,761.05 | | | | (77.19) | 4,368.55 | $ 0.00 |
| 05/11/19 | 04/25/19 | Late Charge Assess | 0 / 0 | (78.66) | | 59,761.05 | | | | (78.66) | 4,291.36 | $ 0.00 |
| 04/10/19 | 03/25/19 | Late Charge Assess | 0 / 0 | (72.77) | | 59,761.05 | | | | (72.77) | 4,212.70 | $ 0.00 |
| 03/13/19 | 02/25/19 | Late Charge Assess | 0 / 0 | (78.90) | | 59,761.05 | | | | (78.90) | 4,139.93 | $ 0.00 |
| 02/10/19 | 01/25/19 | Late Charge Assess | 0 / 0 | (77.91) | | 59,761.05 | | | | (77.91) | 4,061.03 | $ 0.00 |
| 01/10/19 | 12/25/18 | Late Charge Assess | 0 / 0 | (76.19) | | 59,761.05 | | | | (76.19) | 3,983.12 | $ 0.00 |

Exhibit 1-4   434

406

# Real Time Resolutions, Inc.
## Loan History Summary

| Loan ID | Borrower Name |
|---|---|
| [REDACTED]0162 | GABRIEL MARQUEZ VARGAS |

| Trans Date | Due Date | Trans Desc | Check# / Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/11/18 | 11/25/18 | Late Charge Assess | 0 / 0 | (76.64) | | 59,761.05 | | | | (76.64) | 3,906.93 | $ 0.00 |
| 11/10/18 | 10/25/18 | Late Charge Assess | 0 / 0 | (74.96) | | 59,761.05 | | | | (74.96) | 3,830.29 | $ 0.00 |
| 10/11/18 | 09/25/18 | Late Charge Assess | 0 / 0 | (76.35) | | 59,761.05 | | | | (76.35) | 3,755.33 | $ 0.00 |
| 09/10/18 | 08/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,678.98 | $ 0.00 |
| 08/10/18 | 07/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,668.98 | $ 0.00 |
| 07/11/18 | 06/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,658.98 | $ 0.00 |
| 06/10/18 | 05/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,648.98 | $ 0.00 |
| 05/11/18 | 04/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,638.98 | $ 0.00 |
| 04/10/18 | 03/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,628.98 | $ 0.00 |
| 03/13/18 | 02/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,618.98 | $ 0.00 |
| 02/12/18 | 01/25/18 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,608.98 | $ 0.00 |
| 01/10/18 | 12/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,598.98 | $ 0.00 |
| 12/11/17 | 11/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,588.98 | $ 0.00 |
| 11/10/17 | 10/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,578.98 | $ 0.00 |
| 10/11/17 | 09/25/17 | Late Charge Assess | 0 / 0 | (10.00) | | 59,761.05 | | | | (10.00) | 3,568.98 | $ 0.00 |
| 09/10/17 | 08/25/17 | Late Charge Assess | 0 / 0 | (72.54) | | 59,761.05 | | | | (72.54) | 3,558.98 | $ 0.00 |
| 08/10/17 | 07/25/17 | Late Charge Assess | 0 / 0 | (70.29) | | 59,761.05 | | | | (70.29) | 3,486.44 | $ 0.00 |
| 07/11/17 | 06/25/17 | Late Charge Assess | 0 / 0 | (71.27) | | 59,761.05 | | | | (71.27) | 3,416.15 | $ 0.00 |
| 06/10/17 | 05/25/17 | Late Charge Assess | 0 / 0 | (70.04) | | 59,761.05 | | | | (70.04) | 3,344.88 | $ 0.00 |
| 05/11/17 | 04/25/17 | Late Charge Assess | 0 / 0 | (70.29) | | 59,761.05 | | | | (70.29) | 3,274.84 | $ 0.00 |
| 04/10/17 | 03/25/17 | Late Charge Assess | 0 / 0 | (66.44) | | 59,761.05 | | | | (66.44) | 3,204.55 | $ 0.00 |
| 03/13/17 | 02/25/17 | Late Charge Assess | 0 / 0 | (70.00) | | 59,761.05 | | | | (70.00) | 3,138.11 | $ 0.00 |
| 02/10/17 | 01/25/17 | Late Charge Assess | 0 / 0 | (68.92) | | 59,761.05 | | | | (68.92) | 3,068.11 | $ 0.00 |
| 01/10/17 | 12/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,999.19 | $ 0.00 |
| 12/11/16 | 11/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,931.70 | $ 0.00 |
| 11/10/16 | 10/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,863.07 | $ 0.00 |
| 10/11/16 | 09/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,795.58 | $ 0.00 |
| 09/10/16 | 08/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,726.95 | $ 0.00 |
| 08/10/16 | 07/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,658.32 | $ 0.00 |
| 07/11/16 | 06/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,590.83 | $ 0.00 |
| 07/05/16 | 09/25/10 | Inv Loan Purchase | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |

Exhibit 1-4  435

407

# Real Time Resolutions, Inc.
## Loan History Summary

**Loan ID**    **Borrower Name**

REDACTED0162    **GABRIEL MARQUEZ VARGAS**

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/05/16 | 09/25/10 | Investor Loan Sale | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |
| 07/01/16 | 09/25/10 | Inv Loan Purchase | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |
| 07/01/16 | 09/25/10 | Investor Loan Sale | 0 / | 0.00 | | 59,761.05 | | | | | 2,522.20 | $ 0.00 |
| 06/10/16 | 05/25/16 | Late Charge Assess | 0 / 0 | (67.49) | | 59,761.05 | | | | (67.49) | 2,522.20 | $ 0.00 |
| 05/11/16 | 04/25/16 | Late Charge Assess | 0 / 0 | (68.63) | | 59,761.05 | | | | (68.63) | 2,454.71 | $ 0.00 |
| 04/10/16 | 03/25/16 | Late Charge Assess | 0 / 0 | (66.35) | | 59,761.05 | | | | (66.35) | 2,386.08 | $ 0.00 |
| 03/12/16 | 02/25/16 | Late Charge Assess | 0 / 0 | (68.64) | | 59,761.05 | | | | (68.64) | 2,319.73 | $ 0.00 |
| 02/10/16 | 01/25/16 | Late Charge Assess | 0 / 0 | (67.74) | | 59,761.05 | | | | (67.74) | 2,251.09 | $ 0.00 |
| 01/10/16 | 12/25/15 | Late Charge Assess | 0 / 0 | (66.35) | | 59,761.05 | | | | (66.35) | 2,183.35 | $ 0.00 |
| 12/11/15 | 11/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 2,117.00 | $ 0.00 |
| 11/10/15 | 10/25/15 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 2,082.74 | $ 0.00 |
| 10/11/15 | 09/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 2,049.59 | $ 0.00 |
| 09/10/15 | 08/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 2,015.33 | $ 0.00 |
| 08/10/15 | 07/25/15 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,981.07 | $ 0.00 |
| 07/11/15 | 06/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,947.92 | $ 0.00 |
| 06/10/15 | 05/25/15 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,913.66 | $ 0.00 |
| 05/11/15 | 04/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,880.51 | $ 0.00 |
| 04/10/15 | 03/25/15 | Late Charge Assess | 0 / 0 | (30.94) | | 59,761.05 | | | | (30.94) | 1,846.25 | $ 0.00 |
| 03/13/15 | 02/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,815.31 | $ 0.00 |
| 02/10/15 | 01/25/15 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,781.05 | $ 0.00 |
| 01/10/15 | 12/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,746.79 | $ 0.00 |
| 12/11/14 | 11/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,713.64 | $ 0.00 |
| 11/10/14 | 10/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,679.38 | $ 0.00 |
| 10/11/14 | 09/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,646.23 | $ 0.00 |
| 09/10/14 | 08/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,611.97 | $ 0.00 |
| 08/10/14 | 07/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,577.71 | $ 0.00 |
| 07/11/14 | 06/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,544.56 | $ 0.00 |
| 06/10/14 | 05/25/14 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,510.30 | $ 0.00 |
| 05/11/14 | 04/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,477.15 | $ 0.00 |
| 04/10/14 | 03/25/14 | Late Charge Assess | 0 / 0 | (30.94) | | 59,761.05 | | | | (30.94) | 1,442.89 | $ 0.00 |
| 03/13/14 | 02/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,411.95 | $ 0.00 |

Exhibit 1-4  436

# Real Time Resolutions, Inc.
## Loan History Summary

| Loan ID | Borrower Name |
|---------|---------------|
| 0162 | GABRIEL MARQUEZ VARGAS |

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/10/14 | 01/25/14 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,377.69 | $ 0.00 |
| 01/10/14 | 12/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,343.43 | $ 0.00 |
| 12/11/13 | 11/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,310.28 | $ 0.00 |
| 11/10/13 | 10/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,276.02 | $ 0.00 |
| 10/11/13 | 09/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,242.87 | $ 0.00 |
| 09/10/13 | 08/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,208.61 | $ 0.00 |
| 08/10/13 | 07/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,174.35 | $ 0.00 |
| 07/11/13 | 06/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,141.20 | $ 0.00 |
| 06/10/13 | 05/25/13 | Late Charge Assess | 0 / 0 | (33.15) | | 59,761.05 | | | | (33.15) | 1,106.94 | $ 0.00 |
| 05/11/13 | 04/25/13 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 1,073.79 | $ 0.00 |
| 04/10/13 | 03/25/13 | Late Charge Assess | 0 / 0 | (30.94) | | 59,761.05 | | | | (30.94) | 1,039.53 | $ 0.00 |
| 03/13/13 | 02/25/13 | Late Charge Assess | 0 / 0 | (34.25) | | 59,761.05 | | | | (34.25) | 1,008.59 | $ 0.00 |
| 02/10/13 | 01/25/13 | Late Charge Assess | 0 / 0 | (34.16) | | 59,761.05 | | | | (34.16) | 974.34 | $ 0.00 |
| 01/10/13 | 12/25/12 | Late Charge Assess | 0 / 0 | (33.06) | | 59,761.05 | | | | (33.06) | 940.18 | $ 0.00 |
| 01/05/13 | 11/25/12 | Late Charge Assess | 0 / 0 | (34.26) | | 59,761.05 | | | | (34.26) | 907.12 | $ 0.00 |
| 11/06/12 | 09/25/10 | New Loan | 0 / | 0.00 | | 59,761.05 | | | | | 872.86 | $ 0.00 |
| | | | | $ 1,660.05 | | | $ 0.00 | $ 0.00 | | | | |

Exhibit 1-4   437

## Countrywide®
HOME LOANS

# LOAN APPLICATION DISCLOSURE ACKNOWLEDGEMENTS

Loan No: **REDACTED** 0162

Borrower: Gabriel Vargas

Property: 4611 S 164th St, Tukwila, WA 98168

Branch Address: **COUNTRYWIDE HOME LOANS**
**32001 32 AVE SO. #110**
**FEDERAL WAY, WA 98001**

**Application Disclosure Handbook**
I/We acknowledge receipt of the Application Disclosure Handbook and further acknowledge the following:

**Affiliated Business Arrangement Disclosure Statement**
I/We have read the Affiliated Business Arrangement Disclosure Statement. I/We understand that the Lender is referring me/us to purchase settlement services from providers with which it is affiliated and may receive a financial or other benefit as a result of this referral.

**Servicing Transfer Disclosure**
I/We acknowledge receipt of the Servicing Transfer Disclosure and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgement is a required part of the mortgage loan application.

**Hazard Insurance Requirements**
I/We acknowledge receipt of the Hazard Insurance Requirements and understand that I/we may obtain property insurance from any insurance company that meets the Lender's requirements.

**Mortgage Insurance Requirements**
If I applied for a loan that requires mortgage insurance, I/we acknowledge receipt of the MI Requirements and understand that I/we have options on the type of MI available to me/us. Those types are listed below:
• Monthly Tax Advantage Mortgage Insurance ("TAMI")
• One-Time Tax Advantage Mortgage Insurance
• Traditional Borrower-Paid Mortgage Insurance ("BPMI")

**Notice to Applicant Regarding Title Company and Closing Agent**
I/We acknowledge receipt of the Title Company and Closing Agent Notice. I understand that if I do not make a selection and indicate it below, the Lender will do so for me.

Name _____
Address _____   City _____ State _____ Zip _____
Title Company _____

**Notice to IRS Disclosure**
I/We acknowledge receipt of the Notice IRS Disclosure and understand the information explained in the piece. I/We certify that the tax returns submitted to Countrywide are exact duplicates of those submitted to the IRS. I/We give my/our express consent to Countrywide to communicate with the IRS concerning any discrepancies and to give the IRS copies of the tax returns which I/we submitted to Countrywide.

**Consumer Handbook on Adjustable Rate Mortgages**
If I applied for an Adjustable Rate Mortgage, I/we acknowledge receipt of a copy of the booklet titled "Consumer Handbook on Adjustable Rate Mortgages" in my application package.

**HUD Booklet**
If I/we applied for a purchase loan, I/we have received a copy of the booklet titled "Buying Your Home: Settlement Costs and Helpful Information."

**Home Equity Loans**
If I applied for a Home Equity Line of Credit, I/we have received a copy of the brochure titled, "What You Should Know About Home Equity Lines of Credit" in my application package.

**Privacy Policy**
I/We acknowledge receipt of the Consumer Privacy Policy and understand its contents as evidenced by my/our signature(s) below. I/We understand that this acknowledgement is a required part of the mortgage loan application.

**Residents of Delaware, Illinois, Louisiana, Massachusetts, Minnesota, New York, Vermont and Wyoming -- Disclosures and Services Agreements** -- Countrywide Home Loans, Inc. is assisting you in obtaining this loan from its affiliate, Countrywide Bank, N.A. Laws in the states of Delaware, Illinois, Louisiana, Massachusetts, Minnesota, New York, Vermont and Wyoming require that Countrywide Home Loans enter into an agreement with you regarding the services it is providing and/or provide you certain disclosures. These Agreements and disclosures are contained in this Handbook. By signing below, you are entering into the applicable agreement with us and/or acknowledging that you have read the applicable disclosure. Please read these documents carefully before signing below.

**Consent to Joint Application**
We understand and agree that my/our application may be considered by either Countrywide Home Loans or Countrywide Bank, N.A.

Primary E-Mail Address _____ (Please Print)      ☐ I Do Not Have an E-Mail Address

Please Note:  All Applicants who are included on the Home Loan application are required to sign below.

| Gabriel Vargas Vargas | 12-12-05 | | |
|---|---|---|---|
| Applicant Signature | Date | Applicant Signature | Date |
| Applicant Signature | Date | Applicant Signature | Date |

**For branch use only**
I certify that the above items were:   ☐ Hand delivered   ☐ Mailed to the Applicant(s) on 12/23
Lender Representative: _____
Date: _____

2 - PART FILE COPY - SHOWS PROOF OF SHIP DATE

Exhibit 1-4  438

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE:           12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:         ████████0162
PROPERTY ADDRESS: 4611 S 164TH ST
                  TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

This notice of my billing rights is a Rider to and supplements my/our Home Equity Credit Line Agreement and Disclosure Statement.

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My name and account number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities
### After You Receive My Written Notice

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

HELOC - Billing Rights Notice
2C482-US (08/05)(d)

Initials: _G X / U_      Initials: _G H / U_

411

Exhibit 1-4  439

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE-#:
LOAN #: ████0162
PROPERTY ADDRESS: 4611 S 164TH ST
TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

This is to give you notice that
COUNTRYWIDE HOME LOANS, INC.

("the Lender") has a business relationship with the service providers listed below. The Lender and the providers listed below are under common control of the same corporate parent. Because of this relationship, this referral may provide the Lender a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. The Lender may require you to use the services of an affiliated credit reporting agency or real estate appraiser, as a condition of your loan on this property, to represent the Lender's interests in the transaction. However, you are NOT required to use the other listed providers as a condition for settlement of your loan on the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

For certain home equity products, Lender has negotiated a discounted title and settlement service called either the First American Title Insurance Company FACT product or the Chicago Title Insurance Company HELP product. Neither company is an affiliate of Lender. If you exercise your option not to accept a home equity packaged product you must notify Lender immediately and your loan will be converted to standard title and settlement services which may be more costly.

| Provider | Service | Estimated Charge or Range of Charges |
|---|---|---|
| Balboa Insurance Company<br>Meritplan Insurance Company<br>Newport Insurance Company | Hazard Insurance and Home Warranty | $150-$1600 per year for homeowners insurance; $360 per year for mechanical breakdown insurance (varies by state and amount and type of coverage obtained). Higher amounts may apply for large or high cost properties or optional coverage. |
| Directnet Insurance Agency, Inc.<br>Directnet Insurance Agency of Arizona, Inc.<br>Directnet Insurance Agency of Massachusetts;<br>Countrywide Insurance Services, Inc.<br>Countrywide Agency of Ohio, Inc.<br>Countrywide Insurance Agency of Ohio, Inc.<br>Countrywide General Agency of Texas, Inc.<br>Countrywide Insurance Services of Texas, Inc. | Hazard Insurance Agents | $150-$1600 per year for homeowners insurance; $360 per year for mechanical breakdown insurance (varies by state and amount and type of coverage obtained). Higher amounts may apply for large or high cost properties or optional coverage. |
| Countrywide Tax Services Corporation | Tax Service | $60-$120 (varies by state) |
| LandSafe Appraisal Services, Inc. | Real Estate Appraisal | $200-$450 (varies by state; may be higher for multi-unit properties) |
| LandSafe Credit, Inc. | Credit Reporting | $25-$55 for individual reports (varies by type of report; higher amounts may apply for business credit reports, multiple consumers or international credit histories) |





412

Exhibit 1-4  440

| LandSafe Flood Determination, Inc. | Flood Hazard Determination | $26 |
|---|---|---|

| LandSafe Title of Maryland, Inc.<br>LandSafe Title of Washington, Inc.<br>LandSafe Title Agency of Ohio, Inc.<br>LandSafe Title of Florida, Inc.<br>LandSafe Title of Texas, Inc.<br>LandSafe Title of California, Inc.<br>LandSafe Services, Inc. | Title Insurance and Closing Services | $150-$10,000 (varies by state, property value and loan amount). Higher amounts may apply for high cost properties, large loan amounts or optional coverage. |
|---|---|---|
| Countrywide Home Loans, Inc.<br><br>Countrywide Bank, N.A.<br>Countrywide Bank, a division of Treasury Bank, N.A. | Real Estate Loans | Lender origination fees vary depending on loan amount and loan program. |
| HomeSafe Termite Inspection, Inc. | Termite and Pest Inspection | $50-$250 (varies by property location and size and does not include the cost of treating any infestation found). Pest inspection normally offered only in conjunction with home inspection. |

I/we have read this disclosure form, as acknowledged by my/our signature below, and understand that the Lender is referring me/us to purchase the above-described settlement services and may receive a financial or other benefit as a result of this referral.

_Gabriel Marquez Vargas_ _____ (Seal)
GABRIEL MARQUEZ VARGAS                       - Borrower

_____ (Seal)
                                         - Borrower

_____ (Seal)
                                         - Borrower

_____ (Seal)
                                         - Borrower

413

Exhibit 1-4  441

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE:         12/07/2005
BORROWER:  GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:       ██████0162
PROPERTY ADDRESS:  4611 S 164TH ST
                   TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253) 835-5667
Br Fax No.: (253) 815-0701

## NOTICE OF RIGHT TO CANCEL
### Home Equity Line of Credit

**Your Right to Cancel:** We have agreed to establish an open-end credit account for you, and you have agreed to give us a security interest in your home as security for the account. If all or some portion of your account is used to finance the down payment for the purchase of the property identified above ("the Purchase Portion"), we are permitted to disburse the Purchase Portion of your account prior to the expiration date indicated below in the section entitled "How to Cancel."

You have a legal right under federal law to cancel the security interest applicable to the remainder of the funds available in your account ("the Nonpurchase Portion"), without cost, within three business days after the latest of the following events:

1. the opening date of your account which is **12/12/05** ; *GMV*
   or
2. the date you received your Truth-in-Lending disclosures;
   or
3. the date you received this notice of your right to cancel the account.

The Nonpurchase Portion of your line includes any funds from the Purchase Portion that you subsequently repay and then use again for some other purpose. If none of the account is being used to purchase the property identified above, then the Nonpurchase Portion is the entire amount of the account. If you cancel, your cancellation will apply only to the Nonpurchase Portion and to the security interest resulting from that portion. It will not affect the amount you owe for the Purchase Portion, and it will not affect the security interest we have in your home for the Purchase Portion but it will terminate your ability to take additional funds from your account. Within 20 days of receiving your notice, we must take the necessary steps to reflect the fact that the security interest in your home has been reduced by the amount of the Nonpurchase Portion or cancelled, if applicable. If we require you to sign any documents or take any actions in connection with reducing the security interest, you must do so. We must return to you any money or property you have given to us or to anyone else in connection with the Nonpurchase Portion.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address shown below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**How to Cancel:** If you decide to cancel the account, you may do so by notifying us, in writing, at:

COUNTRYWIDE HOME LOANS, INC.
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice no matter how you notify us because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of **12/15/05** *GMV* (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____     _____
Consumer's Signature                          Date

---

The undersigned each acknowledge receipt of two completely filled in copies of the above Notice of Right to Cancel.

Each of the undersigned has the right to cancel. The exercise of this right by one of the undersigned shall be effective as to all of the undersigned.

*Gabriel Marquez Vargas*                        12-12-05
Consumer's Signature  GABRIEL MARQUEZ VARGAS     Date

_____     _____
Consumer's Signature                          Date

● HELOC - Notice of Right to Cancel
2D216-US (10/05)(d)


*23991*


*█████0162000002D216*

414

Exhibit 1-4  442

## WARNING REGARDING NOTICE OF RIGHT TO CANCEL

THE NOTICE OF RIGHT TO CANCEL ("NORTC") IS SIGNATURE AND DATE SENSITIVE. YOU MUST MAKE SURE THE DATES ON THE "NORTC" ARE COMPLETED CORRECTLY, AND YOU MUST MAKE SURE THAT THE NOTICE IS PROPERLY SIGNED. If there are any mistakes on this document that are not corrected at closing, Federal Law will require new, redrawn documents to be signed. Such a redraw could cause the funding to be delayed.

**ATTENTION NOTARY:** If any dates on this form are incorrect, you must correct them by lining through the incorrect date and writing the correct date directly above or beside the correction. The change must be initialed by all persons who sign the NOTICE OF RIGHT TO CANCEL ("NORTC").

If there are multiple signers, who sign on different dates, provide each person, who has a right to cancel, with 2 copies of their own NORTC.

Each person who signs the NORTC must be given 2 copies with dates #1 and #3 filled in.

**Make certain that all dates are accurate and any corrections are initialed by all persons that sign the NORTC before leaving signing/closing.**

### EXPLANATION OF DATES

**(#1) Transaction Date**
Is the date on which the Note and Mortgage or Deed of Trust are signed.

**(#3) Rescission Midnight Expiration Date**
Is calculated by counting the next 3 business days after the later of the three events (#2). Include Saturdays in the calculation, but exclude Sundays and the federal holidays listed below:

| | |
|---|---|
| New Year's | Jan. 1st |
| King's Birthday | 3rd Mon. in Jan. |
| President's Day | 3rd Mon. in Feb. |
| Memorial Day | Last Mon. in May |
| Independence Day | July 4th |
| Labor Day | 1st Mon. in Sept. |
| Columbus Day | 2nd Mon. in Oct. |
| Veterans Day | Nov. 11th |
| Thanksgiving | 4th Thurs. in Nov. |
| Christmas | Dec. 25th |

**(#4) Signature Date**
must be signed by each person who has a right to cancel this loan, this includes non-borrower spouse, if required by the state. Each signature must be dated.

---

DATE:
BORROWER:
CASE #:
LOAN #:
PROPERTY ADDRESS:

#### NOTICE OF RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(#2) {
(1) The date of the transaction, which is _____ (#1) _____ ; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.
}

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled; and we must return to you any money or property you have given us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**
If you decide to cancel this transaction, you may do so by notifying us in writing at:

You may use any written statement that is signed and dated by you and states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (#3) _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____   _____
CONSUMER'S SIGNATURE                                          DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL one copy of the Federal Truth in Lending Disclosure statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each of the borrowers in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective as to all borrowers.

| Sample borrower | XX-XX-XXXX (#4) | | |
|---|---|---|---|
| BORROWER | DATE | BORROWER | DATE |
| | | | |
| BORROWER | DATE | BORROWER | DATE |

---

**HOW TO PERFORM CORRECTIONS:**
If any error is made when signing and completing the NORTC, each and every correction must be lined through, corrected above, and initialed by all persons that sign the NORTC.

**Example:**

*10/13/04 BR*
Date: ~~10.12.04~~

FHA/VA/CONV
• Warning Regarding Notice of Right to Cancel
2C346-US (04/05)(d)

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #: ███████0162
PROPERTY ADDRESS: 4611 S 164TH ST
TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

## NOTICE OF RIGHT TO CANCEL
### Home Equity Line of Credit

**Your Right to Cancel:** We have agreed to establish an open-end credit account for you, and you have agreed to give us a security interest in your home as security for the account. If all or some portion of your account is used to finance the down payment for the purchase of the property identified above ("the Purchase Portion"), we are permitted to disburse the Purchase Portion of your account prior to the expiration date indicated below in the section entitled "How to Cancel."

You have a legal right under federal law to cancel the security interest applicable to the remainder of the funds available in your account ("the Nonpurchase Portion"), without cost, within three business days after the latest of the following events:

1. the opening date of your account which is ___12/12/05___ *GMV*
   or
2. the date you received your Truth-in-Lending disclosures;
   or
3. the date you received this notice of your right to cancel the account.

The Nonpurchase Portion of your line includes any funds from the Purchase Portion that you subsequently repay and then use again for some other purpose. If none of the account is being used to purchase the property identified above, then the Nonpurchase Portion is the entire amount of the account. If you cancel, your cancellation will apply only to the Nonpurchase Portion and to the security interest resulting from that portion. It will not affect the amount you owe for the Purchase Portion, and it will not affect the security interest we have in your home for the Purchase Portion but it will terminate your ability to take additional funds from your account. Within 20 days of receiving your notice, we must take the necessary steps to reflect the fact that the security interest in your home has been reduced by the amount of the Nonpurchase Portion or cancelled, if applicable. If we require you to sign any documents or take any actions in connection with reducing the security interest, you must do so. We must return to you any money or property you have given to us or to anyone else in connection with the Nonpurchase Portion.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address shown below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**How to Cancel:** If you decide to cancel the account, you may do so by notifying us, in writing, at:

COUNTRYWIDE HOME LOANS, INC.
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice no matter how you notify us because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of ___12/15/05___ *GMV* (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
Consumer's Signature                Date

---

The undersigned each acknowledge receipt of two completely filled in copies of the above Notice of Right to Cancel.

Each of the undersigned has the right to cancel. The exercise of this right by one of the undersigned shall be effective as to all of the undersigned.

*Gabriel Marquez Vargas*                    *12-12-05*
Consumer's Signature  GABRIEL MARQUEZ VARGAS       Date

_____     _____
Consumer's Signature                Date

● HELOC – Notice of Right to Cancel
2D216-US (10/05)(d)





416

Exhibit 1-4  444

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #: ▨▨▨.0162
PROPERTY ADDRESS: 4611 S 164TH ST
TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253) 835-5667
Br Fax No.: (253) 815-0701

# IMPORTANT TERMS
# OF OUR
# HOME EQUITY LINE OF CREDIT

This disclosure contains important information about our home equity line of credit. You should read it carefully and keep a copy for your records.

**Availability of Terms:** All of the terms described below are subject to change.

If these terms change (other than the annual percentage rate) and you decide, solely as a result of such change, not to enter into an agreement with us, you are entitled to a refund of any fees you paid to us or anyone else in connection with your application.

**Security Interest:** We will take a mortgage on your home. You could lose your home if you do not meet the obligations in your agreement with us. YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR MORTGAGE.

**Possible Actions:** We can terminate your line and require you to pay us the entire outstanding balance in one payment if:

- You engage in fraud or material misrepresentation in connection with the line.
- You do not meet the repayment terms.
- Your action or inaction adversely affects the collateral or our rights in the collateral.

We can refuse to make additional extensions of credit or reduce your credit limit, or both, if:

- The value of the dwelling securing the line declines significantly below its appraised value for purposes of the line.
- We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
- You are in default of a material obligation in the agreement.
- Government action prevents us from imposing the annual percentage rate provided for or impairs the priority of our security interest such that the value of the interest is less than 120 percent of the credit line.
- The maximum annual percentage rate is reached.
- The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

The initial Agreement permits us to make changes to the terms of the Agreement at specified times or upon the occurrence of specified events.

**Minimum-Payment Requirements:** The period during which you can obtain advances of credit (the "draw period") is 5 years. Unless you receive written notice from the lender, such draw period will automatically renew for an additional 5 years. During the draw period, your payments will be due monthly, and your minimum monthly payment will equal the finance charges that accrued on the outstanding balance during the billing cycle. The minimum payment during the draw period will not reduce the principal that is outstanding on your line.

After the draw period ends, you will no longer be able to obtain credit advances and must repay the outstanding balance over a specified period of years (the "repayment period"). The repayment period is 15 years, and, during the 15-year repayment period, your payments will be due monthly and your minimum monthly payment will equal 1/180th of the principal balance that was outstanding at the end of the draw period plus finance charges that accrued on the outstanding balance during the billing cycle.

**Minimum-Payment Example:** If you made only the minimum payments and your outstanding balance was $10,000 and the **ANNUAL PERCENTAGE RATE** was 5.75 %, it would take 20 years to pay off the $10,000 balance. During that period, you would make 60 payments of $ 47.92 , followed by 180 payments varying between $ 55.56 and $ 103.47 .

HELOC - Important Terms (Multistate)
2C457-XX (06/05)(d)

Page 1 of 6

Initials: _GMV_





417

Exhibit 1-4  445

**Fees and Charges:** To open and maintain a line of credit, you may be required to pay us the following fees:
**Application Fee:** $ 0.00                    (due at application)
[This fee, which may be higher or lower than stated above in any given state; applies to all states except: AK, CO, DE, IA, IL, IN, LA, MD, MI, MN, MO, MT, NJ (2nd liens only), NC, TX, VT, VA, WA, WV. In Pennsylvania, this fee may be up to 2.91% of credit lines less than or equal to $50,000.]

**Points:**        0.000 % of credit limit (due when account opened)
[This fee, which may be higher or lower than stated above in any given state; applies to all states except: FL, IA, IN, LA, ME, MD, MI, MO, MT, NC, NY, PA, VT, WA. In VA, the fee is a maximum of 5% of the first draw.]

**Origination Fee:** $ 0.00                    (due when account opened)
[This fee, which may be higher or lower than stated above in any given state; applies to FL, HI, IN, LA, MD, MO, NC, NY, WA, WV]

**Loan Processing Fee:**                % of credit line  (due when account opened and applies only in IA and MI)

**Document Preparation Fee:** $ 0.00                    (due when account opened)
[This fee, which may be higher or lower than stated above in any given state; applies to: AZ, CA, CT, GA, ID, IN, HI, MA, ND, NE, NH, NM, NV, OR, SD, UT, VT (1st liens only), WV, WY]

**Annual Fee:** $ 0.00                    (due each year beginning on the first anniversary of opening the line, except that such fee shall be waived for the life of the loan if I meet both of the following conditions: (a) I maintain an average daily outstanding balance which does not fall below $20,000.00            from the date of the credit agreement through the first anniversary of the credit agreement and (b) I make each monthly payment due during that one-year period on or before the due date for each such payment) [This fee, which may be higher or lower than stated above in any given state, applies to all states except: IA, ME, MD, MO, MT, NC, NJ (1st liens only), TX, VT, VA, WV]

$75 annually: AK, AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, ID, IN, KY, LA, MA, MI, MS, NE, NV, NH, NM, NY, ND, OK, OR, SD, RI, UT, WA, WY
$50 annually: MN, NJ (2nd liens only), PA
$20 annually: IL

**Demand Statement Expedited Delivery Fee (due when account paid in full):** We will offer delivery via regular United States Mail one (see additional details for your state below) demand statement requested by you or your representative at no charge.

In certain states, we may deliver additional demand statements or expedite delivery of a demand statement via facsimile or electronically. In consideration of receiving an additional demand statement or expedited delivery, you will be required to pay a fee in the amount and under the circumstances outlined below.

In AL, AK, CA, FL, ID, MA, MI, MT, NE, NM, NV, OR, RI, SD, UT, a fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement.

The fee is not charged in the following states: AR, DE, HI, IA, IL, MD, MO, ND, NJ, NY, TX, WV

The fee, and the circumstances under which it is charged, varies in those states as shown below:

Arizona
A fee of $30.00 is charged if the original principal balance is greater than $10,000, and we deliver additional demand statements or expedited delivery of a demand statement.

Colorado
Not charged if the finance charge exceeds 12%. A fee of $30.00 is charged if the finance charge is less than or equal to 12%, and we deliver additional demand statements or expedited delivery of a demand statement.

Connecticut
No fee on the first statement per calendar year, unless the borrower or their representative requests expedited delivery and agrees to pay a $30.00 fee. A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement within the same calendar year.

District of Columbia
A fee of $30.00 is charged for expedited delivery of a demand statement.

Georgia
A fee of $10.00 is charged for expedited delivery of a demand statement.

Indiana-Loans in First Lien Position
A fee of $30.00 is charged for expedited delivery of a demand statement.

Indiana-Loans in Subordinate Lien Position
No fee is charged.

418

Exhibit 1-4  446

#### Kentucky
No fee for the initial statement. A fee of $30.00 is charged for subsequent statements if we deliver additional demand statements or expedited delivery of demand statements.

#### Louisiana
No fee on the first statement each year. A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of demand statements within that year.

#### Maine
A fee of $30.00 is charged for delivery of additional demand statements or expedited delivery of a demand statement for loans if the fee is included in the Finance Charge.

#### Minnesota
A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement if the loan is greater than or equal to $100,000; or, for loans of less than $100,000, and the fee is included in the Finance Charge.

#### Mississippi
A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement and the fee is included in the Finance Charge.

#### North Carolina
Not charged if the loan amount or the borrower's maximum credit limit is equal to or less than $300,000. For loans of more than $300,000, a fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement.

#### New Hampshire-Loans in First Lien Position
No fee is charged.

#### New Hampshire-Loans in Subordinate Lien Position
A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement.

#### Oklahoma
A fee of $30.00 is charged if the Annual Percentage Rate is less than or equal to 13%, and we deliver additional demand statements or expedited delivery of a demand statement. No fee is charged if the Annual Percentage Rate is greater than 13%.

#### Pennsylvania-Loans in First Lien Position
A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement and the loan is in excess of $50,000; or, if the loan amount is up to $50,000, and the fee is included in the Finance Charge.

#### Pennsylvania-Loans in Subordinate Lien Position
No fee is charged if the loan amount is $50,000 or less. A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement and the loan is in excess of $50,000.

#### Virginia-First Liens
No fee on the first statement within a (12) twelve month period. A fee of $15.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement within the same (12) twelve month period.

#### Virginia-Subordinate Liens
No fee is charged.

#### Vermont
A fee of $30.00 is charged for expedited delivery of a demand statement.

#### Washington-Loans in First Lien Position
A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement.

#### Washington-Loans in Subordinate Lien Position
No fee is charged.

#### Wyoming-Loans in First Lien Position
A fee of $30.00 is charged for delivery of additional demand statements or expedited delivery of a demand statement for loans with an Annual Percentage Rate of 18% or less; or, if the Annual Percentage Rate is greater than 18%, and the fee is included in the Finance Charge.

#### Wyoming-Loans in Subordinate Lien Position
A fee of $30.00 is charged if we deliver additional demand statements or expedited delivery of a demand statement and the fee is included in the Finance Charge.

419

Exhibit 1-4  447

**Account Termination Fee:** In AL, AZ, CA, DE, FL, KY, MA, ND, NE, NV, NH OR, SD, UT, an Account Termination Fee of $350 is charged if the account is paid off if full and terminated on or before the 5th annual anniversary. The fee is not charged in the following states: AK, CO, GA, HI, IA, IL, LA, MD, MN, MT, NC, NJ, NM, NY, OK, PA, TX, VA, VT, WA, WV and WY. The fee varies in some states as shown below.

Connecticut
The lesser of $350 or 5% of the principal prepaid if account is paid off in full and terminated on or before the 3rd annual anniversary.

District of Columbia
The lesser of $350 or two months' interest on the amount of the prepaid amount which exceeds one-third of the original amount of the credit line if account is paid off in full on or before the annual anniversary.

Idaho
The lesser of $350 or six months' interest on the amount prepaid if account is terminated on or before the 3rd annual anniversary.

Indiana
The lesser of $350 or 2% of the unpaid balance if account is paid off in full and terminated on or before the 3rd annual anniversary.

Massachusetts - Loans in Second Lien Position
An Account Termination Fee of $350 is charged if the account is terminated on or before the 5th annual anniversary.

Michigan
The lesser of $350 or 1% of the unpaid principal balance, if account is paid off in full on or before the 3rd annual anniversary.

Mississippi
The lesser of $350 or 1% of the unpaid principal balance, if account is paid off in full and terminated on or before the 5th annual anniversary.

Missouri
The lesser of $350 or 2% of the unpaid principal balance if account is paid off in full and terminated on or before the 5th annual anniversary.

Rhode Island
The lesser of $350 or 2% of the balance due if account is paid off in full and terminated on or before the 1st annual anniversary.

**Third Party Fees:** You may also be required to pay certain fees to third parties to open a line. These fees generally total between $ 0.00 and $ 2500.00 . If you ask, we will give you an itemization of the fees you will have to pay to third parties. In New York, the title insurance premium and mortgage recording tax will be based on the maximum amount of the credit line available to you, regardless of how much is advanced to you at any time. If you engage a broker to arrange a line of credit for you, you may be charged fees by the broker for his/her services.

**Refundability of Fees:** If you decide not to enter into this home equity line of credit within three days of receiving this disclosure and the Home Equity brochure, you are entitled to a refund of any fee you may have already paid.

**Property Insurance:** In addition to these fees and charges, you must carry insurance (including, without limitation, insurance to cover windstorm, hurricane and flood hazards if required by us) on the property that secures the line. You may select the insurance company or agent of your choice, provided the insurance company and coverage meet our requirements.

**Minimum Credit Line Requirement:**
The minimum credit line that you can receive is generally $7,500 except in Arizona, where it is $10,100; and in Kentucky, where it is $15,100.

**Minimum Initial Draw Requirements:** To open a home equity line of credit in Connecticut, the initial credit advance must exceed $5,000; in Kentucky, the initial credit advance must be at least $ 15,100.

**Minimum-Draw Requirement:** Unless otherwise limited, the minimum draw amount for checks is $250.00 and for access cards (where available) is $0.00. Access cards are not available in : AR, CT, DC, LA, MA, ME, MN, NY, PA, TX, WV.

**Tax Deductibility:** You should consult a tax advisor regarding the deductibility of interest and charges for the line.

**Variable-Rate Feature:** The line has a variable-rate feature, and the annual percentage rate (corresponding to the periodic rate) and the minimum monthly payment can change as a result.

The annual percentage rate includes only interest and not other costs.

420

Exhibit 1-4  448

The annual percentage rate is based on the value of an index. The index is the highest prime rate as published in the "Money Rates" table of the _Wall Street Journal_ as of the first business day of the calendar month. To determine the annual percentage rate that will apply to your line, we add a margin to the value of the index.

☐ A. The initial annual percentage rate is "discounted" -- it is not based on the index and margin used for later rate adjustments. The initial, discounted rate will be in effect during the first _____ billing periods (approximately _____ months) after your line is open.

☒ B. The initial annual percentage rate is not discounted.

Ask us for the current index value, margins, discount and annual percentage rates. Margins vary depending on combined loan to value ratios, underwriting criteria and certain account features. After you open a credit line, rate information will be provided on periodic statements that we send you.

**Rate Changes:** The annual percentage rate can change monthly. (If the initial rate is "discounted," the annual percentage rate can change monthly once the initial "discount" period expires.) The maximum ANNUAL PERCENTAGE RATE that can apply is 18.000 %. Apart from this rate "cap," there is no limit on the amount by which the rate can change during any one-year period.

**Maximum-Rate and Payment Examples:** If the ANNUAL PERCENTAGE RATE during the draw period equaled the 18.000 % maximum and you had an outstanding balance of $10,000, the minimum monthly payment would be $150.00 . If the initial rate is "discounted," this maximum ANNUAL PERCENTAGE RATE could be reached during the FIRST billing cycle (approximately the 1st month) of the draw period. If the initial rate is not "discounted," this maximum ANNUAL PERCENTAGE RATE could be reached during the first month of the draw period.

If you had an outstanding balance of $10,000 at the beginning of the repayment period, the minimum monthly payment at the maximum ANNUAL PERCENTAGE RATE of 18.000 % would be $ 205.56 . This annual percentage rate could be reached during the first month of the repayment period.

421

Exhibit 1-4  449

**Historical Example:** The following table shows how the **ANNUAL PERCENTAGE RATE** and the minimum monthly payments for a $10,000 outstanding balance would have changed based on changes in the index over the past 15 years. The index values are from the first business day of January of each year. While only one payment amount per year is shown, payments during the repayment period would have varied during each year.

The tables assume an outstanding balance of $10,000, that only the minimum monthly payments were made, and that the rate remained constant during each year. They do not necessarily indicate how the index or your payments will change in the future.

| | Year | Index (%) | Margin[1] (%) | ANNUAL PERCENTAGE RATE (%) | Monthly Minimum Payment ($) |
|---|---|---|---|---|---|
| Draw Period | 1991 | 9.50 | 0.50 | 6.010[2] | 50.08 |
| | 1992 | 6.50 | 0.50 | 7.00 | 58.33 |
| | 1993 | 6.00 | 0.50 | 6.50 | 54.17 |
| | 1994 | 6.00 | 0.50 | 6.50 | 54.17 |
| | 1995 | 8.50 | 0.50 | 9.00 | 75.00 |
| Repayment Period | 1996 | 8.50 | 0.50 | 9.00 | 130.56 |
| | 1997 | 8.25 | 0.50 | 8.75 | 123.61 |
| | 1998 | 8.50 | 0.50 | 9.00 | 120.56 |
| | 1999 | 7.75 | 0.50 | 8.25 | 110.56 |
| | 2000 | 8.50 | 0.50 | 9.00 | 110.56 |
| | 2002 | 9.50 | 0.50 | 10.00 | 111.11 |
| | 2001 | 4.75 | 0.50 | 5.25 | 81.81 |
| | 2003 | 4.25 | 0.50 | 4.75 | 76.67 |
| | 2004 | 4.00 | 0.50 | 4.50 | 73.06 |
| | 2005 | 5.25 | 0.50 | 5.75 | 74.72 |

[1] This is a margin we have used or made available recently on certain lines where the amount of the credit limit plus the amount of any security interest prior to our security interest equals 80% or less of the value of the property that secures the line. A higher margin apply if the LTV is higher.

[2] This rate reflects a 10.490% discounted introductory rate that we have recently used or made available for certain lines secured by owner occupied properties and processed on the basis of full or alternate documentation. The table assumes it applies for the entire year.

By signing below, you hereby acknowledge receipt of this "Important Terms of Our Home Equity Line of Credit" Disclosure and a copy of the Home Equity Brochure, "When Your Home is on the Line," on the date indicated next to your signature.

Borrower GABRIEL MARQUEZ VARGAS                     Date 12-12-05

Borrower                     Date

Borrower                     Date

Borrower                     Date

LOAN #: REDACTED 0162       CASE #:                    Prepared by: NECIA M. LUCE

Lender: Countrywide Home Loans, Inc., itself or as agent for
        Countrywide Bank, N.A.

# GOOD FAITH ESTIMATE

Sales Price: 299,500.00
Base Loan Amount: 59,900.00
Total Loan Amount: 59,900.00
Type of Loan: HELOC – EQUITY
Date Prepared: 11/22/2005

Address: 1199 North Fairfax St. Ste.500
         Alexandria, VA 22314

Applicant(s): GABRIEL MARQUEZ VARGAS

Property Address: 4611 S 164TH ST
                  TUKWILA, WA 98108

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Interest rate Start 10.500 % (0 mos), Prime + 3.500 %        Term of loan    25         Years

## 800  ITEMS PAYABLE IN CONNECTION WITH LOAN

| No. | Amount | Description |
|-----|--------|-------------|
| 801 | $ | Loan Origination Fee          0.000 % |
| 802 | $ 0.00 | Loan Discount          0.000 % |
| 803 | $ 0.00 | Appraisal |
| 804 | $ 0.00 | Credit Report |
| 805 | $ 0.00 | Lender's Inspection |
| 806 | $ 0.00 | Mortgage Insurance Application Fee |
| 807 | $ 0.00 | Assumption Fee |
| 808 | $ 0.00 | Warehouse Fee |
| 809 | $ 0.00 | Processing Fee |
| 810 | $ 0.00 | Tax Service |
| 811 | $ 0.00 | Flood Check Fee |
| 813 | $ 0.00 | Wire Transfer |
| 814 | $ 0.00 | Buydown Expense |
| 815 | $ | |
| 816 | $ | |
| 817 | $ | |
| 818 | $ | |
| 819 | $ | |
| 820 | $ | |
| 821 | $ | |
| 822 | $ | |
| 823 | $ | |

## 900  ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE

| No. | Amount | Description |
|-----|--------|-------------|
| 901 | $ 0.00 | 0        Days Interest @ $  0.00        /Day |
| 902 | $ 0.00 | Conventional PMI/FHA Up-front MIP/VA Funding Fee       Financed $ _____  Paid Cash $ _____ |
| 903 | $ 0.00 | Hazard Insurance Premium |
| 904 | $ 0.00 | |
| 905 | $ | |

## 1000  RESERVES DEPOSITED WITH LENDER

| No. | Amount | Description | Months | Rate |
|-----|--------|-------------|--------|------|
| 1001 | $ 0.00 | Hazard Insurance | 0 Months @ $ | 0.00 /month |
| 1002 | $ 0.00 | Mortgage Insurance | 0 Months @ $ | /month |
| 1003 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 /month |
| 1004 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 /month |
| 1005 | $ 0.00 | Taxes | 0 Months @ $ | 0.00 /month |
| 1006 | $ 0.00 | Flood Insurance | 0 Months @ $ | 0.00 /month |
| 1007 | $ 0.00 | Aggregate Analysis Adjustment | | |

## 1100  TITLE CHARGES

| No. | Amount | Description |
|-----|--------|-------------|
| 1101 | $ 326.00 | Closing or Escrow Fee |
| 1102 | $ 0.00 | Abstract or Title Search |
| 1103 | $ 0.00 | Title Examination |
| 1104 | $ 0.00 | Title Insurance Binder |
| 1105 | $ 0.00 | Document Preparation |
| 1106 | $ 0.00 | Notary |
| 1107 | $ 0.00 | Attorney/Settlement Agent |
| 1108 | $ 0.00 | Title Insurance |
| 1109 | $ | |
| 1110 | $ | |
| 1111 | $ | |

## 1200  GOVERNMENT RECORDING & TRANSFER CHARGES

| No. | Amount | Description |
|-----|--------|-------------|
| 1201 | $ 60.00 | Recording Fees |
| 1202 | $ 0.00 | City/County Tax/Stamps |
| 1203 | $ 0.00 | State Tax/Stamps |
| 1204 | $ 0.00 | |

## 1300  ADDITIONAL SETTLEMENT CHARGES

| No. | Amount | Description |
|-----|--------|-------------|
| 1301 | $ 0.00 | Survey |
| 1302 | $ 0.00 | Pest Inspection |
| 1303 | $ 0.00 | Well and Septic Tank Inspection Fee |
| 1304 | $ 0.00 | |

$ 386.00        TOTAL ESTIMATED BORROWER SETTLEMENT CHARGES
"S" next to an item designates a cost to be paid by Seller (Not included in the total).
"POC-L" next to an item designates a cost paid by the Lender (Not included in the total).
"POC-B" next to an item designates a cost paid by the Borrower (included in the total).

**Lender requires the use of a particular provider for this settlement service. See attached for additional information.

FHA/VA/CONV
● Good Faith Estimate
2C410-US (05/04)(d)                              Page 1 of 2                              Initials: _____



*23991*       REDACTED 0162 0000 423410*

Exhibit 1-4  451

**TOTAL ESTIMATED FUNDS NEEDED TO CLOSE:**

| | | |
|---|---|---|
| $ | N/A | Downpayment |
| $ | | Estimated Closing Costs |
| $ | | Estimated Prepaid Items/Reserves |
| $ | | Other |
| $ | | Financed PMI/MIP/VA Funding Fee |
| $ | | TOTAL |

**TOTAL ESTIMATED MONTHLY PAYMENT**

| | | |
|---|---|---|
| $ | N/A | Principal and Interest |
| $ | | Taxes |
| $ | | Hazard & Flood Insurance |
| $ | | Mortgage Insurance |
| $ | | TOTAL MONTHLY PAYMENT* |

These estimates of closing costs are provided pursuant to the Real Estate Settlement Procedures Act (RESPA). If your loan application is for a first lien residential mortgage and is made in a transaction to purchase a home, additional important information can be found in the HUD Special Information Booklet provided to you by your lender or mortgage broker.

**DISCLOSURES CONCERNING REQUIRED USE OF SETTLEMENT SERVICE PROVIDERS**

If an estimated charge shown on page 1 is identified with a double asterisk (**), the lender requires the use of a particular provider of that settlement service. The estimated charge shown is based on the charges of the designated provider. The relationship between the lender and the settlement service provider is that the lender has repeatedly used the provider's services in the past. The lender may decide to choose a different provider, the HUD-1 or HUD-1A statement given to you at settlement will disclose the provider used.

\* Does not include Optional Insurance.

| | | | |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| GABRIEL MARQUEZ VARGAS | | | |

| | | | |
|---|---|---|---|
| Applicant | Date | Applicant | Date |

FHA/VA/CONV
• Good Faith Estimate
2C410-US (05/04)

424

Exhibit 1-4  452

Prepared by: CONNIE TOLAN

| FEDERAL EMERGENCY MANAGEMENT AGENCY STANDARD-FLOOD HAZARD DETERMINATION | See The Attached Instructions | O.M.B. No. 3067-0264 Expires October 31, 2005 |
|---|---|---|

**SECTION I - LOAN INFORMATION**

| 1. LENDER NAME AND ADDRESS | 2. COLLATERAL (Building/Mobile Home/Personal Property) PROPERTY ADDRESS- (Legal Description may be attached) |
|---|---|
| COUNTRYWIDE HOME LOANS, INC.<br><br>32001 32ND AVENUE SOUTH #110<br>FEDERAL WAY, WA 98001<br><br>Branch #: 0000029<br>CONNIE TOLAN | 4611 S 164TH ST<br>TUKWILA, WA 98188-3216<br><br>Borrower:<br>GABRIEL MARQUEZ VARGAS |

| 3. LENDER ID. NO. | 4. LOAN IDENTIFIER | 5. AMOUNT OF FLOOD INSURANCE REQUIRED |
|---|---|---|
| | ▓▓▓▓.0162 | $ |

**SECTION II**

A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION.

| 1. NFIP Community Name | 2. County(ies) | 3. State | 4. NFIP Community Number |
|---|---|---|---|
| SEATAC, CTY | KING COUNTY | WA | 530320 |

B. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) DATA AFFECTING BUILDING/MOBILE HOME

| 1. NFIP Map Number or Community-Panel Number (Community name, if not the same as "A") | 2. NFIP Map Panel Effective/ Revised Date | 3. LOMA/LOMR | 4. Flood Zone | 5. No NFIP Map |
|---|---|---|---|---|
| 53033 0959 F | 05/16/1995 | ☐ Yes Date | X | |

C. FEDERAL FLOOD INSURANCE AVAILABILITY (Check all that apply)

1. [X] Federal Flood Insurance is available (community participates in NFIP). [X] Regular Program ☐ Emergency Program of NFIP
2. ☐ Federal Flood Insurance is not available because community is not participating in the NFIP.
3. ☐ Building/Mobile Home is in a Coastal Barrier Resources Area (CBRA) or Otherwise Protected Area (OPA), Federal Flood Insurance may not be available. CBRA/OPA designation date:

D. DETERMINATION

### IS BUILDING/MOBILE HOME IN SPECIAL FLOOD HAZARD AREA (ZONES CONTAINING THE LETTERS "A" OR "V")? ☐ YES [X] NO

If yes, flood Insurance is required by the Flood Disaster Protection Act of 1973.
If no, flood Insurance is not required by the Flood Disaster Protection Act of 1973.

E. COMMENTS (Optional):
THIS FLOOD DETERMINATION IS PROVIDED TO THE LENDER PURSUANT TO THE FLOOD DISASTER PROTECTION ACT. IT SHOULD NOT BE USED FOR ANY OTHER PURPOSE.

This determination is based on examining the NFIP map, any Federal Emergency Management Agency revisions to it, and any other information needed to locate the building/mobile home on the NFIP map.

F. PREPARER'S INFORMATION

| NAME, ADDRESS, TELEPHONE NUMBER (If other than Lender) | DATE OF DETERMINATION |
|---|---|
| LandSafe Flood Determination, Inc.<br>LandSafe FLOOD<br>7105 Corporate Drive, PTX-C177<br>Plano, TX 75024<br>Tel: 877-562-5673     Fax: 800-922-9035 | 11/22/2005<br><br>Cert#: 7132432<br>*** Life of Loan *** |

This form may be locally reproduced.

VMP -525 (0211).01    CHL (08/04)(d)          VMP Mortgage Solutions, Inc. - (800)521-7291          FEMA Form 81-93, OCT 02

*23991*

REDACTED 0 1 6 2 0 0 0 0 0 2 5 2 5 - *

425

Exhibit 1-4  453

## STANDARD FLOOD HAZARD DETERMINATION FORM INSTRUCTIONS

### PAPERWORK BURDEN DISCLOSURE NOTICE

Public reporting burden for this form is estimated to average 20 minutes per response. Burden means the time, effort and financial resources expended by persons to generate, maintain, retain, disclose, or to provide information to us. You may send comments regarding the burden estimate or any aspect of the form, including suggestions for reducing the burden to: Information Collections Management, Federal Emergency Management Agency, 500 C Street, SW, Washington, DC 20742; and to the Office of Management and Budget, Paperwork Reduction Project (30676-0264), Washington, DC 20503. You are not required to respond to this collection of information unless a valid OMB control number appears in the upper right corner of this form. Please do not send your completed form to the above address.

### SECTION 1

1. **LENDER NAME:** Enter lender name and address.

2. **COLLATERAL (Building/Mobile Home/Personal Property) PROPERTY ADDRESS:** Enter property address for the insurable collateral. In rural areas, a postal address may not be sufficient to locate the property. In these cases, legal property descriptions may be used and may be attached to the form if space provided is insufficient.

3. **LENDER ID. NO.:** The lender funding the loan should identify itself as follows: FDIC-insured lenders should indicate their FDIC Insurance Certificate Number; Federally-insured credit unions should indicate their charter/insurance number; Farm Credit institutions should indicate their UNINUM number. Other lenders who fund loans sold to or securitized by FNMA or FHLMC should enter the FNMA or FHLMC seller/servicer number.

4. **LOAN IDENTIFIER:** Optional. May be used by lenders to conform with their individual method of identifying loans.

5. **AMOUNT OF FLOOD INSURANCE REQUIRED:** Optional. The minimum federal requirement for this amount is the lesser of: the outstanding principal loan balance; the value of the improved property, mobile home and/or personal property used to secure the loan; or the maximum statutory limit of flood insurance coverage. Lenders may exceed the minimum federal requirements. National Flood Insurance Program (NFIP) policies do not provide coverage in excess of the value of the building/mobile home/personal property.

### SECTION 2

#### A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION

1. **NFIP Community Name.** Enter the complete name of the community (as indicated on the NFIP map) in which the building or mobile home is located. Under the NFIP, a community is the political unit that has authority to adopt and enforce floodplain management regulations for the areas within its jurisdiction. A community may be any State or area or political subdivision thereof, or any Indian tribe or authorized tribal organization, or Alaska Native village or authorized native organization. (Examples: Brewer, City of; Washington, Borough of; Worchester, Township of; Baldwin County; Jefferson Parish.) For a building or mobile home that may have been annexed by one community but is shown on another community's NFIP map, enter the Community Name for the community with land-use jurisdiction over the building or mobile home.

2. **County(ies).** Enter the name of the county or counties in which the community is located. For unincorporated areas of a county, enter "unincorporated areas." For independent cities, enter "independent city."

3. **State.** Enter the two-digit state abbreviation. (Examples: VA, TX, CA.)

4. **NFIP Community Number.** Enter the 6-digit NFIP community number. This number can be determined by consulting the NFIP Community Status Book or can be found on the NFIP map; copies of either can be obtained from FEMA's Website http://www.fema.gov or by calling 1-800-611-6125. If no NFIP Community Number exists for the community, enter "none."

#### B. NFIP DATA AFFECTING BUILDING/MOBILE HOME

The information in this section (excluding the LOMA/LOMR information) is obtained by reviewing the NFIP map on which the building/mobile home is located. The current NFIP map, and a pamphlet titled "Guide to Flood Maps," may be obtained from FEMA by calling 1-800-611-6125. Note that even when an NFIP map panel is not printed, it may be reflected on a community's NFIP map index with its proper number, date, and flood zone indicated; enter these data accordingly.

1. **NFIP Map Number or Community-Panel Number.** Enter the 11-digit number shown on the NFIP map that covers the building or mobile home. (Examples: 480214 0022C; 58103C0075 F.) Some older maps will have a 9-digit number (Example: 12345601A.) Note that the first six digits will not match the NFIP Community Number when the sixth digit is a "C" or when one community has annexed land from another but the NFIP map has not yet been updated to reflect this annexation. When the sixth digit is a "C" the NFIP map is in countywide format and shows the flood hazards for the geographic areas of the county on one map, including flood hazards for incorporated communities and for any unincorporated county contained within the county's geographic limits. Such countywide maps will list an NFIP Map Number. For maps not in such countywide format, the NFIP map will list a Community- Panel Number on each panel. If no NFIP map is in effect for the location of the building or mobile home, enter "none."

2. **NFIP Map Panel Effective/Revised Date.** Enter the map effective date or the map revised date shown on the NFIP map. (Example: 6/15/93.) This will be the latest of all dates shown on the map.

3. **LOMA/LOMR.** If a Letter of Map Amendment (LOMA) or Letter of Map Revision (LOMR) has been issued by FEMA since the current Map Panel Effective/Revised Date that revises the flood hazards affecting the building or mobile home, check "yes" and specify the date of the letter; otherwise, no entry is required. Information on LOMAs and LOMRs is available from the following sources:

* The community's official copy of its NFIP map should have a copy of all subsequently- issued LOMAs and LOMRs attached to it.

* For LOMAs and LOMRs issued on or after October 1, 1994, FEMA publishes a list of these letters twice a year as a compendium in the Federal Register. This information is also available on FEMA's website at http://www.fema.gov.

* A subscription service providing digitized copies of these letters on CD-ROM is also available by calling 1-800-358-9616.

4. **Flood Zone.** Enter the flood zone(s) covering the building or mobile home. (Examples: A, AE, A4, AR, AR/A, AR/AE, AR/AO, V, VE, V12, AH, AO, B, C, X, D.) If any part of the building or mobile home is within Special Flood Hazard Area (SFHA), the entire building or mobile home is considered to be in the SFHA. All flood zones beginning with the letter "A" or "V" are considered Special Flood Hazard Areas (SFHAs). Each flood zone is defined in the legend of the NFIP map on which it appears. If there is no NFIP map for the subject area, enter "none."

5. **No NFIP Map.** If no NFIP map covers the area where the building or mobile home is located, check this box.

#### C. FEDERAL FLOOD INSURANCE AVAILABILITY.

Check all boxes that apply; however, note that boxes 1 (Federal Flood Insurance is available...) and 2 (Federal Flood Insurance is not available...) are mutually exclusive. Federal Flood Insurance is available to all residents of a community that participates in the NFIP. Community participation status can be determined by consulting the NFIP Community Status Book, which is available from FEMA and at http://www.fema.gov. The NFIP Community Status Book will indicate whether or not the community is participating in the NFIP and whether participation is in the Emergency or Regular Program. If the community participates in the NFIP, check either Regular Program or Emergency Program. To obtain Federal Flood Insurance, a copy of this completed form may be provided to an insurance agent.

Federal Flood Insurance is prohibited in designated Coastal Barrier Resources Areas (CBRA) and Otherwise Protected Areas (OPAs) for buildings or mobile homes built or substantially improved after the date of the CBRA or OPA designation. An information sheet explaining the Coastal Barrier Resources System may be obtained from FEMA by calling 1-800-611-6125.

**D. DETERMINATION:** If any portion of the building/mobile home is in an identified Special Flood Hazard Area (SFHA), check yes (flood insurance is required). If no portion of the building/mobile home is in an identified SFHA, check no. If no NFIP map exists for the community, check no. If no NFIP map exists, Section B5 should also be checked.

**E. PREPARER'S INFORMATION:** If other than the lender, enter the name, address, and telephone number of the company or organization performing the flood hazard determination. An individual's name may be included, but is not required.

**Date of Determination.** Enter date on which flood hazard determination was completed.

#### OTHER INFORMATION

**MULTIPLE BUILDINGS:** If the loan collateral includes more than one building, a schedule for the additional building(s)/mobile home(s) indicating the determination for each may be attached. Otherwise, a separate form must be completed for each building or mobile home. Any attachment(s) should be noted in the comment section. A separate flood insurance policy is required for each building or mobile home.

**GUARANTEES REGARDING INFORMATION:** Determinations on this form made by persons other than the lender are acceptable only to the extent that the accuracy of the information is guaranteed.

**FORM AVAILABILITY:** Copies of this form are available from the FEMA fax-on-demand line by calling (202) 646-FEMA and requesting form #23103. Guidance on using the form in a printed, computerized, or electronic format is contained in form #23110. This information is also available on FEMA's website http://www.fema.gov.

**PURPOSE OF FORM:** In accordance with P.L. 103-325, sec. 1365, (b) (1), the form has been designed to facilitate compliance with the flood insurance purchase requirements for the National Flood Insurance Reform Act of 1994.

426

Exhibit 1-4  454

☝ OMB No. 2502-0265

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT<br>SETTLEMENT STATEMENT | B. | TYPE | OF | LOAN |
|---|---|---|---|---|
| | 1. ☐ FHA | 2. ☐ FHMA | 3. ☒ CONV. UNINS. | |
| | 4. ☐ VA | 5. ☐ CONV. INS. | | |

| 6. FILE NUMBER: 50755-JM | 7. LOAN NUMBER: ▓▓▓5446 |
|---|---|
| 8. MORTGAGE INS. CASE NO.: | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | | |
|---|---|---|
| D. NAME & ADDRESS OF BORROWER: | Gabriel Marquez Vargas<br>4611 South 164th Street, Tukwila, WA 98188 | |
| E. NAME & ADDRESS OF SELLER: | Gery M Wolde and Tatios Gebre Firke<br>2122 N 156th Place, Shoreline, WA 98188 | |
| F. NAME & ADDRESS OF LENDER: | Countrywide Home Loans<br>32001 32nd Avenue South Suite 110, Federal Way, WA 98001 | |
| G. PROPERTY LOCATION: | 4611 South 164th Street, Tukwila, WA 98188 | |
| H. SETTLEMENT AGENT: | Alta Escrow, Inc. | |
| PLACE OF SETTLEMENT: | 616 120th Avenue NE, Suite C-111, Bellevue, WA 98005 (425) 637-1745 | |
| I. SETTLEMENT DATE: | 12/15/2005  Final | DISBURSEMENT DATE: 12/15/2005 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract sales price | 299,500.00 | 401. Contract sales price | 299,500.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 1,219.15 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes             to | | 406. City/town taxes             to | |
| 107. County taxes  12/15/05  to  01/01/06 | 125.33 | 407. County taxes  12/15/05  to  01/01/06 | 125.33 |
| 108. Assessments             to | | 408. Assessments             to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower:** | 300,844.48 | **420. Gross Amount Due To Seller:** | 299,625.33 |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 239,600.00 | 502. Settlement charges to seller (line 1400) | 27,267.35 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Lender Credit | 310.00 | 504. Payoff 1st Mtg. Ln. Bank of America | 227,471.15 |
| 205. Amount Of 2nd loan | 59,900.00 | 505. Payoff 2nd Mtg. Ln. | |
| 206. Initial Deposit To Escrow | 34.48 | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes             to | | 510. City/town taxes             to | |
| 211. County taxes             to | | 511. County taxes             to | |
| 212. Assessments             to | | 512. Assessments             to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower:** | 300,844.48 | **520. Total Reductions In Amount Due Seller:** | 254,738.50 |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement From/To Seller:** | |
| 301. Gross amount due from borrower (line 120) | 300,844.48 | 601. Gross amount due to seller (line 420) | 299,625.33 |
| 302. Less amount paid by/for borrower (line 220) | 300,844.48 | 602. Less reductions in amount due seller (line 520) | 254,738.50 |
| **303. Cash (☐FROM) (☐TO) Borrower:** | 0.00 | **603. Cash (☒TO) (☐FROM) Seller:** | 44,886.83 |

Previous Edition Is Obsolete
Form No. 1581
1/86

Page 1 of 3

SB-4-3538-000-I
HUD-1 (3-86)
RESPA, HB 4305.2

427

Exhibit 1-4  455

| | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission: Based On Price $   299,500.00   @   5.00   % =   14,975.00 | | |
| Division of Commission (line 700) As Follows: | | |
| 701. $    5,990.00   to   RE/MAX Champions (7326) | | |
| 702. $    8,985.00   to   Skyline Properties (Bellevue) | | |
| 703. Commission paid at settlement | | 14,975.00 |
| 704. EM Deposit   $1,000.00   held by Skyline Properties (Bellevue) | | |
| 800. Items Payable In Connection With Loan: | | |
| 801. Loan Origination fee      % | | |
| 802. Loan Discount    1.1250    % Countrywide Home Loans | | 2,695.50 |
| 803. Appraisal fee to: Landsafe Appraisal | | 380.00 |
| 804. Credit report to: Landsafe Credit | | 35.00 |
| 805. Lender's inspection fee | | |
| 806. Mortgage insurance application fee to | | |
| 807. Assumption fee | | |
| 808. Processing Fee To: Countrywide Home Loans | | 310.00 |
| 809. Flood Determination To: Landsafe Flood | | 26.00 |
| 810. Tax Registration To: Countrywide Tax Service | | 60.00 |
| 811. Underwriting Fee To: Countrywide Home Loans | | 215.00 |
| 812. Escrow Fee To: Alta Escrow, Inc. POC    $217.60 pd by lender | | |
| 813. | | |
| 814. | | |
| 815. | | |
| 816. | | |
| 900. Items Required By Lender To Be Paid In Advance: | | |
| 901. Interest from   12/15/2005   to   1/01/2006    @$      38.5700 /day | | 655.69 |
| 902. Mortgage insurance premium for    mo. to | | |
| 903. Hazard insurance premium for    1 yrs. to    Countrywide Home Loans | | 480.00 |
| 904. Flood insurance premium for    yrs. to | | |
| 905. | | |
| 906. | | |
| 1000. Reserves Deposited With Lender: | | |
| 1001. Hazard insurance    0 months @ $    0.00 per month | | |
| 1002. Mortgage insurance    0 months @ $    0.00 per month | | |
| 1003. City property taxes    0 months @ $    0.00 per month | | |
| 1004. County property taxes    0 months @ $    0.00 per month | | |
| 1005. Annual assessments    0 months @ $    0.00 per month | | |
| 1006. Flood insurance    0 months @ $    0.00 per month | | |
| 1007.    0 months @ $    0.00 per month | | |
| 1008. Aggregate Adjustment | | |
| 1009. | | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee to Alta Escrow, Inc. | 706.11 | 706.11 |
| 1102. Escrow Fee: $1,298.00 Sales Tax:   $114.22 | | |
| 1103. Title examination to | | |
| 1104. Title insurance binder to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
|    (includes above item Numbers:       ) | | |
| 1108. Title insurance to Chicago Title (U-04) | | |
|    (includes above item Numbers:       ) | 424.04 | 972.95 |
| 1109. Lender's coverage $ 239,600.00 Premium: $521.00 Tax:   $45.85 | | |
| 1110. Owner's coverage $ 299,500.00 Premium: $763.00 Tax:   $67.14 | | |
| 1111. Reconveyance Fee to ACS Northwest | | 120.00 |
| 1112. Recording Fee 2nd DOT To: Stewart Title (King) POC    $41.00 pd by lender | | |
| 1113. | | |
| 1114. | | |
| 1200. Government Recording and Transfer Charges: | | |
| 1201. Recording fees: Deed $   35.00   ;Mortgage $   54.00   ;Releases $   0.00 | 89.00 | |
| 1202. City/county tax/stamps: Deed $   0.00   ;Mortgage $   0.00 | | |
| 1203. State tax/Stamps:   Deed $   0.00   ;Mortgage $   0.00 | | |
| 1204. Excise Tax to King County Treasurer | | 5,336.10 |
| 1205. | | |
| 1300. Additional Settlement Charges: | | |
| 1301. Survey to | | |
| 1302. Pest inspection to | | |
| 1303. Utility Holdback to Val Vue Sewer District | | 150.00 |
| 1304. Utility Holdback to Highline Water District | | 150.00 |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1400. Total Settlement Charge (Enter on line 103, Section J - and - line 502, Section K) | 1,219.15 | 27,267.35 |

SB-4-3538-000-1

428

Exhibit 1-4   456

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____   Date: _____
            Jessica Marshall, Alta Escrow, Inc.

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see:  Title 18 U.S. Code Section 1001 and Section 1010.

429

Exhibit 1-4  457

EXHIBIT A: (HUD Section 500)
Reductions In Amount Due To Seller: - Loan Payoff Breakdown:

Buyer Amount  Seller Amount

**Bank of America**
Principal Balance To: Bank of America

|  | Seller Amount |
|---|---|
| Principal Balance To: Bank of America | 227,471.15 |
| Total: | 227,471.15 |

430

Exhibit 1-4  458

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE:        12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:     ████████62
PROPERTY ADDRESS: 4611 S 164TH ST
                  TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253) 835-5667
Br Fax No.: (253) 815-0701

# SIGNATURE AND NAME CERTIFICATION

BORROWER:
GABRIEL MARQUEZ VARGAS

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Security Instrument.)

GABRIEL MARQUEZ VARGAS
(Print or Type Name)

*Gabriel Marquez Vargas*
Signature

(If applicable, complete the following.)

THIS IS TO CERTIFY THAT I AM ALSO KNOWN AS:

(Print or Type Name)

(Print or Type Name)

(Print or Type Name)

(Print or Type Name)

● Signature and Name Certification
1E340-US (03/05)(d)





431

Exhibit 1-4  459

Prepared by: CONNIE TOLAN

# Borrower's Certification & Authorization

LOAN #: ▓▓▓.0162

## Certification

The undersigned certify the following:

1. I/We have applied for a mortgage loan from
   COUNTRYWIDE HOME LOANS, INC.

   ("Lender"). In applying for the loan, I/we completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that Lender reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

4. If two or more names are set forth below, one or more applicants have stated that this is an application for joint credit. To confirm the intent to apply for joint credit, both applicants must sign and date below. If both applicants do not intend to apply for joint credit, please contact your Loan Specialist immediately at the phone number listed in the enclosed letter.

## Authorization to Release Information

To Whom It May Concern:

1. I/We have applied for a mortgage loan from Lender. As part of the application process, Lender may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to Lender, and to any investor to whom Lender may sell my/our mortgage, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. Lender or any investor that purchases the mortgage may address this authorization to any party named in the loan application or disclosed by any consumer credit reporting agency or similar source.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to Lender or the investor that purchased the mortgage is appreciated.

**NOTICE TO BORROWERS:** This is notice to you as required by the Right to Financial Privacy Act of 1978 that HUD/FHA has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to HUD/FHA without further notice or authorization but will not be disclosed or released by this institution to another Government Agency or Department without your consent except as required or permitted by law.

| | | |
|---|---|---|
| *Gabriel Marquez Vargas* | *12-12-05* | REDACTED |
| GABRIEL MARQUEZ VARGAS | | |
| (Borrower's Signature) | (Date) | (Social Security Number) |
| | | |
| (Borrower's Signature) | (Date) | (Social Security Number) |
| | | |
| (Borrower's Signature) | (Date) | (Social Security Number) |
| | | |
| (Borrower's Signature) | (Date) | (Social Security Number) |

* Borrower's Authorization & Certification
2E338-US (01/05)(d)





0 1 6 2 0 0 0 0 0 2 E 3 3 8 *

432

Exhibit 1-4  460

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE:    12/07/2005
BORROWER:  GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:    <span>REDACTED</span>162
PROPERTY ADDRESS:  4611 S 164TH ST
                     TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253) 835-5667
Br Fax No.: (253) 815-0701

## DISCLOSURE STATEMENT ABOUT MERS

Mortgage Electronic Registration Systems, Inc. (MERS) is named on your mortgage as the mortgagee in a nominee capacity for
COUNTRYWIDE HOME LOANS, INC.
(Lender). MERS is a company separate from your lender that operates an electronic tracking system for mortgage rights. MERS is not your lender; it is a company that provides an alternative means of registering the mortgage lien in the public records. MERS maintains a database of all the loans registered with it, including the name of the lender on each loan. Your lender has elected to name MERS as the mortgagee in a nominee capacity and record the mortgage in the public land records to protect its lien against your property.

**Naming MERS as the mortgagee and registering the mortgage on the MERS electronic tracking system does not affect your obligation to your Lender, under the Promissory Note.**

*GMV*

FHA/VA/CONV
● MERS Disclosure Statement
1D5421US (12/99).01(d)

433

Exhibit 1-4  461

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 12/07/2005
BORROWER: GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #: ▓▓▓▓▓▓▓0162
PROPERTY ADDRESS: 4611 S 164TH ST
TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

## DOCUMENT CORRECTION AND FEES DUE AGREEMENT

**AGREEMENT TO CORRECT MISSTATED OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of Lender disbursing funds for the closing of the Loan secured by the Property being encumbered, and regardless of the reason for any loss of, misplacement of, inaccuracy in, or failure to sign any Loan documentation, Borrower(s) agrees as follows: If any document is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan, or otherwise missing upon request of the Lender, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary to replace or correct the lost, misplaced, misstated, inaccurate or otherwise missing document(s). If the original promissory note is replaced, the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower(s) agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement. Borrower(s) also agrees that at any time, upon request by Lender, including at the time of loan pay-off, Borrower(s) will supply additional amounts and/or pay to Lender any additional sum previously disclosed to Borrower(s) as a cost or fee associated with the Loan, which for whatever reason was not collected at closing ("Fees"). Such amount due from Borrower(s) may also be off-set by Lender from any funds held by Lender, for Borrower's benefit, after loan pay-off. Borrower(s) further agrees that if funds are collected by Lender at closing to pay any outstanding Escrow Items for (a) taxes and assessments; (b) hazard or property insurance premiums; (c) leasehold payments or ground rents on the property; (d) flood insurance premiums; or (e) mortgage insurance premiums, and if those Escrow Items have been or are paid by Lender from Borrower's old escrow account, then Lender may retain those funds to reimburse Lender for any shortage in Borrower's old escrow account that results from such payment.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender, (including assignees and persons acting on behalf of the Lender) or Settlement Agent, and shall be *prima facie* evidence of the necessity for same. A written statement addressed to Borrower(s) at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for the Documents.

**FAILURE TO DELIVER DOCUMENTS CAN CONSTITUTE DEFAULT:** If the Loan is to be guaranteed by the Department of Veterans Affairs ("VA") or insured by the Federal Housing Administration ("FHA"), Borrower(s) failure or refusal to comply with the terms of the correction request may constitute a default under the note and/or deed of trust, and may give Lender the option of declaring all sums secured by the loan documents immediately due and payable. If applicable, Borrower(s) further acknowledges that Lender estimated the amount of the one-time FHA Mortgage Insurance Premium (MIP) or VA Funding Fee at the time the loan was made. Borrower(s) hereby agrees and consents that Lender has the right to apply to the debt any amount held by the Lender in excess of the actual MIP or VA Funding Fee, as an offset against the debt.

**BORROWER LIABILITY:** If Borrower(s) fails or refuses to execute, acknowledge, initial and deliver the Documents or pay the Fees to Lender more than ten (10) days after being requested to do so by Lender, and understanding that Lender is relying on these representations, Borrower(s) agree(s) to be liable for any and all loss or damage which Lender reasonably sustains thereby, including but not limited to all reasonable attorney's fees and costs incurred by Lender.

**RETURNED PAYMENTS:** The Borrower understands and agrees that for the life of the loan, Borrower will be charged a fee for each transaction that results in nonpayment from Borrower's financial institution account. The maximum amount that Borrower will be charged is that legally permitted in the state the property associated with this loan is located, unless otherwise expressly limited or prohibited by law.

**This agreement shall survive the closing of the Loan, and inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devisees, personal representatives, successors and assigns of Borrower(s).**



| | |
|---|---|
| _____ | *Gabriel Marquez Vargas* |
| GERY M. WOLDE | GABRIEL MARQUEZ VARGAS (Borrower) |
| (Seller/Contractor) | |
| | _____ (Borrower) |
| _____ | |
| TATIOS GEBRE FIKRE | |
| (Seller/Contractor) | _____ (Borrower) |

FHA/VA/CONV
● Document Correction and Fees Due Agreement
2C040-US (08/04)(d)

* 2 3 9 9 1 *  REDACTED 0 1 6 2 0 0 0 0 0 2 C 0 4 0 *

434

Exhibit 1-4  462

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE:          12/07/2005
BORROWER:  GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:        <span>████</span>0162
PROPERTY ADDRESS:   4611 S 164TH ST
                                TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone:  (253)835-5667
Br Fax No.:  (253)815-0701

## HAZARD INSURANCE REQUIREMENTS

An insurance policy may take several weeks to procure and, accordingly, you should not delay contacting the appropriate providers. **THE FAILURE TO PROCURE A POLICY AND PROVIDE IT TO THE LENDER MAY DELAY THE LOAN CLOSING.**

### PART I - HOMEOWNER/FIRE INSURANCE

Your lender and FHA/VA have basic, minimum hazard insurance requirements related to your home mortgage, which are described below:

1.   Coverage must be at least fire and extended coverage with a "special form" coverage endorsement, i.e.: fire only - DP1 or DF1, homeowners policy - HO1 (as opposed to "Broad" form - HO2 - except in Texas). The insurance must not limit or exclude from coverage (in whole or in part) windstorm, hurricane, hail damages, or any other perils that are normally included under an extended coverage endorsement.

2.   The amount of insurance coverage must at least equal the lesser of (1) 100% of the insurable value of the improvements as established by the property insurer (replacement value); or (2) the unpaid balance of the mortgage, with a replacement cost endorsement to compensate for the full amount of damage or loss to improvements.

3.   The insurer must be licensed to transact insurance in the jurisdiction where the dwelling is located, and must also meet at least one of the following criteria: (1) be rated "B" or better or have a minimum Financial Performance Index of "6" as reported in **Best's Insurance Reports**; (2) be rated "A" or better in Demotech, Inc.'s Hazard Insurance Financial Stability Ratings; or (3) be rated BBB or better or have a BBB qualified solvency ratio in Standard & Poor's **Insurer Solvency Review**, or have an "Aaisi" rating as reported in Standard & Poor's **International Confidential Rating Service**. If the insurer is not admitted in the jurisdiction where the dwelling is located, it must have an A.M. Best's rating of "A" or better as reported in **Best's Insurance Reports** or a rating of "AA-" or better as reported in Standard & Poor's **Insurer Solvency Review**. Coverage underwritten by a state's FAIR Plan or through state insurance plans is acceptable if such insurance is the only insurance available to the borrower. An insurer that does not otherwise meet the requirements of this paragraph can qualify as an acceptable insurer if it is covered by reinsurance with a company that meets either of the A.M. Best's or Standard & Poor's ratings set forth in this Section 3, provided that the reinsurance agreement contains a "cut-through" endorsement that provides for the reinsurer to become immediately liable for 100% of any covered loss payable but unpaid by reason of the insolvency of the primary insurer. Your insurance agent should be able to advise as to which insurance companies meet these requirements.

4.   All policies, invoices and correspondence must refer to your loan/account number. You should provide this information to your insurance company or agent.

5.   Acceptable proofs of coverage include: Evidence/Certificates of insurance, Binders, Declaration Pages, and Policies. The term of a binder may not exceed 90 days, unless a longer period is required by state law.

6.   Properties being improved or rehabilitated are subject to the same standards of coverage as noted in paragraph number two. This means that if necessary, following the completion of the repair or rehabilitation work, you may need to increase your insurance coverage.

     Further, for properties being improved or rehabilitated, additional premiums may be required for sub-par properties. Once you have completed the improvements or rehabilitation, you should contact your insurance agent to see if you can or should change your coverage and your premium. The coverage must also properly reflect your actual occupancy of the property.

FHA/VA/CONV
● Hazard Insurance Requirements
2C211-US  (04/05)(d)

Page 1 of 4





435

Exhibit 1-4  463

7. Changes in federal or state laws or regulations, or other changed circumstances, may require the lender to modify its insurance requirements to include additional types or amounts of coverage. In such an event the lender will notify you prior to the effective date of any additional coverage so that you may purchase such required coverage. If you fail to purchase such required coverage, the lender may do so on your behalf and, in such event, the lender will bill you for the insurance premium for such coverage.

## PART II - FLOOD INSURANCE

1. The Federal Flood Disaster Protection Act of 1973, as amended, and/or the terms of your mortgage/deed of trust, require that flood insurance be purchased and maintained for the entire term of your loan if the improvements to your Property (buildings, homes, condominiums and mobile homes) are located in a Special Flood Hazard Area (Flood Area), as shown on a map published by the Federal Emergency Management Agency (FEMA).

2. If your home is located in a Flood Area, you must purchase a flood insurance policy that (1) is issued by the National Flood Insurance Program (NFIP) or a private insurer properly licensed to do business where the Property is located that provides coverage at least as broad as the coverage offered by the NFIP flood policies; (2) has a deductible no greater than $1,000 or 1% of the face amount of the flood insurance policy, unless a higher maximum deductible is required by state law; (3) identifies as the named insured on the policy the mortgagor/trustor on your mortgage or deed of trust, (4) includes a standard mortgagee clause naming your lender or servicer as an additional insured and (5) provides for notice to the lender or servicer at least 30 days prior to cancellation or non-renewal of the policy. The amount of flood insurance coverage must be at least equal to the lesser of (1) the total amount of (a) the loan for which you are applying and (b) any loan secured by the Property that is superior to the loan for which you are applying or (2) the maximum insurance available under the NFIP (currently $250,000), but not exceeding the value of the improvements, typically determined by the amount of coverage shown on the declaration page of the hazard insurance policy on your Property.

3. **The lender or servicer of your loan can require you to purchase, or increase the amount of, flood insurance at any time during the term of the loan if the lender or servicer determines that the Property is in a Flood Area and is not covered by adequate flood insurance.** In addition, changes in federal or state laws or regulations, changes in property value, construction of additional improvements or other changed circumstances, may require the lender to modify its insurance requirements to include additional types or amount. of coverage.

4. If you fail to purchase or maintain adequate flood insurance coverage within 45 days after receiving notice that such coverage is required, the lender or servicer may purchase the necessary coverage for the Property and will bill you for the cost of premiums for the policy. Any amounts advanced by the lender or servicer to obtain flood insurance for the Property will become an additional obligation secured under your loan. A flood insurance policy obtained by the lender or servicer may be more expensive and may provide less coverage than a policy that you could obtain personally. For example, the policy obtained by the lender typically will not include coverage for your personal property.

5. If flood insurance is not required for your Property, coverage still may be available through private insurance companies. Check with your property insurance agent for more information.

6. No right or obligation of a lender or servicer under The Federal Flood Disaster Protection Act of 1973, as amended, and/or the terms of your mortgage/deed of trust with respect to requiring flood insurance on mortgaged properties within a Flood Area creates a duty owed by the lender or servicer to a borrower. Your lender and servicer expressly disclaim any implication of such a duty under a breach of contract, fiduciary relationship or any other legal theory.

## PART III - GENERAL

1. Unless a higher maximum amount is required by law, the maximum dwelling deductible for homeowners/fire insurance and flood insurance may not exceed the higher of $1,000 or 1% of the face amount of the dwelling coverage. With regard to wind/hurricane coverage, the maximum deductible may not exceed the higher of $2,000 or 2% of the face amount of the dwelling coverage.

2. The lender will accept multi-year and/or continuous policies.

3. The loss payee clause must read:
   COUNTRYWIDE HOME LOANS, INC.
   and/or its assigns as their interest may appear (A.T.I.M.A.). Mail to: MSN-SV22, P.O. Box 10212, Van Nuys, CA 91410-0212. If mail is being forwarded by means of overnight mail, use the following address: 400 Countrywide Way-MSN-SV22, Simi Valley, CA 93065. Certificates of Insurance are accepted from Allstate, State Farm, American Family Mutual, Auto Owners, Farmers, Country Company, Liberty Mutual Insurance, Nationwide and Safeco; all other insurance companies must have original policies.

4. **Important Note: If you are purchasing a home, the seller's insurance policy does not automatically transfer to you.** The seller's insurance policy is not and typically does not become your policy until you take certain steps and you obtain the approval of the seller's insurance company. It is your responsibility to take all necessary and

appropriate steps to obtain the benefits of the existing insurance policy, or to acquire a new policy. This requirement is yours, and continues even if you are receiving an assignment of the seller's escrow funds.

5.  If you fail to maintain or provide evidence of the required insurance, the lender may purchase insurance at your expense to protect the Lender's interest in the property; such insurance may or may not protect your interests. We will bill you for the cost of premiums and fees incurred in purchasing such insurance. Insurance obtained by the lender may be more expensive than, and may not provide the same coverage as, insurance you could obtain on your own. Any amounts paid by the lender will become an additional obligation secured under your loan. You may cancel insurance purchased by us, but only after providing us with evidence that you have obtained insurance coverage in the amounts and types required in our agreement.

6.  **An insurance agency affiliated with the lender or servicer may receive a commission or other compensation if insurance is obtained by the lender on a Borrower's behalf.**

THE REQUIREMENTS BELOW RELATE TO LOANS FOR WHICH THE LENDER MAINTAINS AN IMPOUND/ESCROW ACCOUNT FOR PAYMENT OF PROPERTY INSURANCE PREMIUMS.

1.  You are responsible for ensuring that the insurance company sends a bill to the lender or servicer at least 30 days in advance of the renewal date. If the lender or servicer does not receive the bill on or before the renewal date, the lender may obtain the required insurance on your behalf and you will be charged for the insurance premium as explained above.
2.  Invoices for payment must indicate the total premiums to be paid for the insurance coverage of only the mortgaged property.

3.  The lender will escrow all premiums and fees for flood insurance if an escrow has already been established for taxes, other insurance premiums, or other fees or charges.

IF YOU DO NOT HAVE AN ESCROW ACCOUNT, THE LENDER WILL BILL YOU FOR THE ADVANCED PREMIUMS.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTOOD THE FOLLOWING, AND I ACKNOWLEDGE RECEIPT OF A COPY OF THIS FORM:

### FLOOD INSURANCE CERTIFICATION

If the primary structure on the real property I am purchasing is not in a Special Flood Hazard Area, flood insurance is not required by the lender. I am aware that the possibility of flood damage may still exist and in the event of damage from flood there may be no government or lender assistance. If the property is not in a Special Flood Hazard Area, flood insurance coverage may be available from a private property insurance agent.

I am also aware that the purchase of flood insurance may be required by law at a later date if FEMA later determines that the mortgaged property is in a Special Flood Hazard Area. If I am notified of a change of status, I must obtain adequate flood insurance coverage on the property. If I do not obtain adequate flood insurance, the lender or servicer may obtain such insurance at my expense, as explained above.

### BORROWER'S RIGHT TO CHOOSE INSURANCE COMPANY AND AGENT

Federal and state law provide that I have the right to select the insurance company and insurance agent of my choice to provide the required property insurance. A lender may not require me to purchase insurance through any particular insurance company or insurance agent as a condition to obtaining a loan, provided the insurance company meets the lender's reasonable requirements as to the financial standing of the insurance company and the adequacy of the coverage. I understand my rights to select the insurance company and insurance agent of my choice and that this will not affect the decision made by the lender or terms of the loan. I have made my selection freely and without coercion by the lender.

FHA/VA/CONV
● Hazard Insurance Requirements
2C211-US (04/05)

Page 3 of 4

437

Exhibit 1-4 465

**NOTICE TO THE BORROWER-YOU MAY BE REQUIRED TO PURCHASE PROPERTY INSURANCE AS A CONDITION OF RECEIVING THE LOAN. IF PROPERTY INSURANCE IS REQUIRED, YOU MAY SECURE INSURANCE FROM A COMPANY OR AGENT OF YOUR OWN CHOOSING.**

I acknowledge that I have no claim against the lender or servicer in the event the lender or servicer fails to notify me that my property is within a Special Flood Hazard Area.

_Gabriel Morquez Vargas_                      12-12-05
Applicant      GABRIEL MARQUEZ VARGAS                      Date

_____
Applicant                                      Date

_____
Applicant                                      Date

_____
Applicant                                    . Date

438

Exhibit 1-4  466

Prepared by: CONNIE TOLAN

**COUNTRYWIDE HOME LOANS, INC.**

DATE:            12/07/2005
BORROWER:   GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:          ███████162
PROPERTY ADDRESS:   4611 S 164TH ST
                    TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

### Borrower Acknowledgment
### Regarding Effect of a Second Lien

I currently have a balloon loan which includes a conditional right to refinance. Among the conditions for being able to exercise that conditional right to refinance is the requirement that no lien against the property (except for taxes and special assessments not yet due and payable) other than the first mortgage lien exist.

By signing this Acknowledgment form, I acknowledge that obtaining a second lien home equity line of credit or closed-end second could negatively affect my conditional right to refinance the balloon loan. This means that when the balloon loan comes due, I may be unable to refinance the balloon loan without having previously paid off in full the junior lien I am now applying for.

_Gabriel Marquez Vargas_
GABRIEL MARQUEZ VARGAS

_12-12-05_
Date

_____
Date

_____
Date

_____
Date

CONV
● HELOC – Borrower Acknowledgment Regarding Effect of a Second Lien
2C899-US (09/01)(d)

439

Exhibit 1-4  467

Prepared by: CONNIE TOLAN

# HOME EQUITY
## CONFIRMATION AGREEMENT

AGENT: MARIA TAPIA

SKYLINE PROPERTIES
606 12TH AVE NE STE D204
BELLEVUE, WA 98005

ORIGINATION DATE: 11/21/2005
AGREEMENT DATE: 11/21/2005
APPLICANT: GABRIEL MARQUEZ VARGAS
CO-APPLICANT:
PROPERTY ADDRESS: 4611 S 164TH ST
TUKWILA, WA 98188-3216

BRANCH # 0000029          32001 32ND AVENUE SOUTH #110
                          FEDERAL WAY, WA 98001

LOAN NUMBER: ████162
LOAN AMOUNT: 59,900.00
LOAN TYPE: HELOC - Piggyback/100.00%/Gold/Cost

INDEX: WSJ Prime Rate
OCCUPANCY: OWNER OCCUPIED

CONFIRMATION NO.: 9704
POINTS: 0.000
AGREEMENT TERM: 45 Days
EXPIRATION DATE: 01/05/2006

| MARGIN | CURRENT INDEX | INT. RATE CEILING |
|--------|---------------|-------------------|
| 3.500  | 7.000         | 18.000            |

This Agreement covers only the above described Applicant, property, and loan program and is subject to the following terms and conditions. **YOU MUST SIGN THIS AGREEMENT AND RETURN IT TO THE LENDER WITHIN 10 DAYS OF THE DATE OF THIS AGREEMENT.**

1.  ☐ This home equity line of credit loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate will be based on the then-current value of the Index plus the Margin shown above. The loan you have applied for also has an Introductory Interest Rate, which may be lower or greater than the rate that you will be required to pay for the remaining term of the loan. Refer to the "Important Terms of Our Home Equity Line of Credit" disclosure for complete information.

    ☒ This home equity line of credit loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate after closing will be based on the then-current value of the Index plus the Margin shown above. Refer to the "Important Terms of Our Home Equity Line of Credit" disclosure for complete information.

    ☐ This home equity loan is an adjustable rate mortgage loan, and the interest rate is subject to periodic adjustment. The interest rate will be based on the then-current value of the Index plus the Margin shown above. The loan you have applied for also has an Introductory Interest Rate, which may be lower or greater than the rate that you will be required to pay for the remaining term of the loan.

2.  The loan must close, the three-day rescission period (unless such a period is not applicable) must expire, and funds must be disbursed on or before the expiration date set forth above.

3.  Upon loan closing, the Lender must receive a valid first or second lien on the property, as specified in the loan application, and title must be clear, without defects unacceptable to Lender. If required, there must be title insurance in an amount and form acceptable to the Lender.

4.  The Applicant must submit to the Lender a complete loan application, including any additional supporting documentation which the Lender may request in order to enable the Lender to make an underwriting decision.

5.  If this Agreement covers a "reduced documentation" loan application, the Lender reserves the right, in its discretion, to require the Applicant to submit a complete loan application with any additional supporting documentation which the Lender may request. This may result in delays due to the time the Lender will need to verify the information contained in the complete loan application and/or supporting documentation.

6.  This is not a loan approval or loan commitment. Any program described above may not be available for Applicant. The Lender will not close the loan unless, among other things, it approves the Applicant's loan application, including employment, income, assets, credit and property, and all conditions of such approval are satisfied prior to loan closing.

7.  As of the date of loan closing, the Applicant must have hazard insurance on the property covering the replacement cost of the dwelling with an insurance carrier acceptable to the Lender. If the property is located in a special flood hazard area, flood insurance will be required. If the property includes commonly owned area, a master policy insurance certificate will be required. Insurance against additional perils, including but not limited to earthquake, may also be required.

440

Exhibit 1-4 468

8.  The Applicant must complete or cause to be completed all required construction, tests or repairs prior to loan closing, and the property must be suitable for occupancy. The Applicant must obtain all required inspections or certifications by applicable and appropriate authorities prior to loan closing. These include, but are not limited to, wood-destroying insect inspection, repair and abatement; radon test; well water or septic system acceptance; local occupancy or use permits; and repairs required by the appraiser as a valuation condition.

9.  If this Agreement covers a purchase transaction, the sale must close with each party paying costs and expenses as specified in the copy of the purchase agreement supplied to the Lender. Any changes in such purchase agreement must be approved by the Lender prior to closing.

10. The points specified above ☐ do ☒ do not include all other loan fees, costs and expenses.

11. The Lender estimates that it will take approximately 45 days to process, approve, close and fund the loan. The Lender agrees to use commercially reasonable efforts to fund the loan prior to the expiration date of this Agreement. However, this Agreement is not a commitment to close and fund the loan prior to the expiration date. Delays may occur, and this Agreement may expire prior to loan closing due to a variety of circumstances. Such circumstances include, but are not limited to, unforeseeable or extraordinary events, delays in receipt or failure to receive various required information, documents or fees from either the applicant or third parties, and acts of God. The Lender agrees to exercise reasonable efforts to obtain third-party documentation. Nevertheless, the expiration date of this Agreement shall not be extended as a result of any such circumstances or events.

12. Regardless of whether or not loan documents have been signed, if the Lender discovers a material change in the information provided with respect to the loan, including but not limited to, the borrowers' income, employment, credit or the property, the Lender shall not be obligated to fund the loan, and the expiration date of this Agreement shall not be extended as a result of any such circumstances or events.

13. If the loan does not close and funds are not disbursed prior to the expiration date of this Agreement, the Lender and the Applicant may enter into a new Confirmation Agreement. The interest rate and points specified in such new Agreement may be higher than either of the interest rate and points specified above or the Lender's then-current market rate and points.

Any questions concerning the terms and conditions of this Agreement may be directed to
LYNNE GARTON                                    (253) 835-5667

BY SIGNING BELOW, LENDER AND APPLICANT AGREE TO THE TERMS AND CONDITIONS OF THIS CONFIRMATION AGREEMENT.
**COUNTRYWIDE HOME LOANS, INC.**

BY _____          TITLE  CLUES LOAN PROCESSOR
     CONNIE TOLAN

Please sign and date below; return the original and keep a copy for your records.

I (We) have read this Confirmation Agreement and agree to all the terms and conditions set forth herein.

*Gabriel Marquez Vargas*   12-12-05        _____
Signature                          Date      Signature                          Date
GABRIEL MARQUEZ VARGAS

_____              _____
Signature                          Date      Signature                          Date

● Home Equity – Confirmation Agreement
2C769-US (04/05)                          . Page 2 of 2

441

Exhibit 1-4  469

Prepared by: CONNIE TOLAN
LOAN #: ▓▓▓▓▓0162

Date 12/07/2005

Name GABRIEL MARQUEZ VARGAS
Address 4611 S 164TH ST
City, State, Zip TUKWILA, WA 98188-3216

## Home Equity Line of Credit
## Initial Draw Acknowledgment

I have requested an initial draw to be disbursed from my line of credit at the time of closing.

I have requested an initial draw of $ 59,900.00

I acknowledge and understand that the initial draw amount includes any amounts that are used to pay off creditors and/or closing costs, and that the balance will be disbursed to me directly by the closing agent.

I acknowledge and understand that I am responsible for interest due on the full amount of the initial draw starting from the day of funding.

12-12-05
Date

Gabriel Marquez Vargas
Borrower GABRIEL MARQUEZ VARGAS

Date

Borrower

Date

Borrower

Date

Borrower

442

Exhibit 1-4  470

# STATEMENT OF BORROWER'S BENEFITS

| Borrower Name(s): | Lender: |
|---|---|
| GABRIEL MARQUEZ VARGAS | COUNTRYWIDE HOME LOANS, INC. |
| | 32001 32ND AVENUE SOUTH #110 |
| | FEDERAL WAY, WA 98001 |

| Property Address: | Date: |
|---|---|
| 4611 S 164TH ST | |
| TUKWILA, WA 98188-3216 | 12/07/2005 |

You are entering into a transaction which refinances one or more existing mortgage loan(s) with a new mortgage loan. There are costs associated with your new loan, and your new loan will have different terms than your existing loan(s). We want you to be sure that the new loan is beneficial to you after taking into account the terms of both the new and existing loans, the cost of the new loan, and your own circumstances. Please check each of the following benefits that apply to your personal situation (you can check more than one):

☐ I am refinancing my existing loan(s) to receive cash-out from the new loan to pay necessary expenses. I will use the proceeds of my new loan towards the following (check all that apply):

☐ Medical expenses      ☐ Other:

☐ Education expenses      ☐ Other:

☐ Home improvement      ☐ Other:

☐ I am refinancing my existing loan(s) to obtain a lower interest rate.

☐ I am refinancing my existing loan(s) to obtain a lower monthly payment.

☐ I am refinancing my existing loan(s) to obtain a shorter loan term (e.g., from a 30-year term to a 15-year term).

☐ I am refinancing my existing adjustable rate loan to obtain a fixed rate loan

☐ I am refinancing my existing loan(s) because I am consolidating other loans and debts I have into a single new loan.

☒ Other (please specify): _Purchase new home_

I have considered the terms of both the existing and new loans, the cost of the new loan, and my personal circumstances. I understand that the term of the new loan (maturity date) may be different than the term of my existing loan(s), but I believe the overall benefits of the new loan make the new term beneficial to me. I have determined that it would be beneficial for me to refinance my existing loan(s) with this new loan for the reason or reasons identified above. I understand that the lender is making this loan in reliance upon the accuracy and completeness of this Statement of Borrower's Benefits.

_Gabriel Marquez Vargas_    12-12-05
GABRIEL MARQUEZ VARGAS      Date
Borrower

_____      Date
Borrower

_____      Date
Borrower

_____      Date
Borrower

VMP-1086 (0105)    CHL (05/01)(d)      VMP MORTGAGE FORMS - (800)521-7291      5/01



*23991*      REDACTED 01620000021086*

443

Exhibit 1-4  471

Prepared by: CONNIE TOLAN

# COUNTRYWIDE HOME LOANS, INC.

DATE:    12/07/2005
BORROWER:  GABRIEL MARQUEZ VARGAS
CASE #:
LOAN #:    ■■■■.0162
PROPERTY ADDRESS:4611 S 164TH ST
                TUKWILA, WA 98188-3216

Branch #: 0000029
32001 32ND AVENUE SOUTH #110
FEDERAL WAY, WA 98001
Phone: (253)835-5667
Br Fax No.: (253)815-0701

## APPRAISAL DISCLAIMER

Enclosed is a copy of the appraisal report prepared in connection with your application for a mortgage loan.

This appraisal was prepared by an independent professional appraiser for the lender's use in substantiating property value in support of your application. Appraisers must meet certain qualification requirements before their reports will be accepted by the lender; however, a lender's acceptance of an appraiser's reports is not an endorsement of either the appraiser or the appraisal report.

An appraisal is not a guarantee of either the value or condition of the property, and the lender assumes no responsibility for the accuracy of the information contained in the appraisal report. Homeowners and homebuyers are advised to procure the services of a structural engineer, house inspection service or contractor to inspect the property for condition and defects.

COUNTRYWIDE HOME LOANS, INC.

By _Gabriel Marquez Vargas_

Date _12-12-05_

FHA/VA/CONV
● APPRAISAL DISCLAIMER
2C271-US (08/01)(d)



REDACTED 0162000002C271

**444**

Exhibit 1-4  472