The Honorable Lauren King

1

2

3

4

5

6

7                         UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE
8

9   GABRIEL MARQUEZ VARGAS,              Case No. 2:22-cv-01440-LK

10              Plaintiff,               SECOND AMENDED COMPLAINT

11   v.                                  DEMAND FOR JURY TRIAL

12   RRA CP OPPORTUNITY TRUST 1,
13   REAL TIME RESOLUTIONS, INC.,
     and NORTH STAR TRUSTEE, LLC,
14

15              Defendants.

16              I.      PARTIES, JURISDICTION AND VENUE

17        1.      Plaintiff Gabriel Marquez Vargas resides in King County, Washington, and owns

18   and occupies a homestead at 4611 S. 164th St., Tukwila, WA 98188 (the "Property" or the

19   "Home") in King County, which is further described legally as:

20        THE NORTHERLY 145.00 FEET OF THE EAST 60.00 FEET OF THE FOLLOWING
          DESCRIBED TRACT: THAT PORTION OF THE NORTHEAST QUARTER OF
21        SECTION 27, TOWNSHIP 23 NORTH, RANGE 4 EAST, W.M., IN KING COUNTY,
          WASHINGTON, DESCRIBES AS FOLLOWS: COMMENCING AT A POINT ON
22        THE NORTHERLY LINE OF SAID SECTION 27 A DISTANCE NORTH 89º 59'10"
          WEST 1256.10 FEET FROM THE NORTHEAST CORNER THEREOF; THENCE
23        SOUTH 00º 15'50" EAST 1251.60 FEET TO THE TRUE POINT OF BEGINNING OF
          THEN TRACT HEREIN DESCRIBED; THENCE CONTINUING SOUTH 00º 15'50"
24        EAST 290.40 FEET; THENCE NORTH 89º 59'10" WEST 150.00 FEET; THENCE
          NORTH 00º 15'50" WEST 290.40 FEET; THENCE SOUTH 89º 59'10" EAST 150.00
25        FEET TO THE TRUE POINT OF BEGINNING; (ALSO KNOWN AS A PORTION
          OF LOT 9 IN BLOCK 14 OF MCMICKEN HEIGHTS DIVISION NO. 2
26        UNRECORDED.).

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

Situated in the County of King, State of Washington

King County Parcel: 5379802945

More commonly known as: 4611 S. 164th St., Tukwila, WA 98188 ("the Property").

2.      The Plaintiff's loan at dispute in these proceedings is a consumer loan because Mr. Marquez used the loan primarily for personal, family, or household purposes.

3.      Public records indicate that the Defendant RRA CP Opportunity Trust 1 ("RRA CP") organized as a Delaware statutory on or about April 14, 2016. Wilmington Savings Fund Society, FSB serves as the registered agent for RRA CP.

4.      Upon information and belief RRA CP formed with the primary purpose of acquiring defaulted consumer mortgage debts.

5.      Upon information and belief, RRA CP is not registered as a foreign business in the State of Washington with the Department of Revenue, Secretary of State, or licensed by the Department of Licensing as a collection agency.

6.      RRA CP, as a debt buyer, is a debt collector pursuant to 15 U.S.C. § 1692a(6) because its principal business purpose is the purchase of defaulted debts for collection. *See also McAdory v. M.N.S. & Assocs., LLC,* 952 F.3d 1089 (9th Cir. 2020).

7.      RRA CP is also a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity involves the use instrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. § 1692f(6) because its principal business activity involves the use instrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. § 1692f(6) which bars certain debt collectors, like RRA CP, from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral when the debt collection action is barred as a matter of law.

8.      RRA CP meets the definition of an out of state collection agency, as defined by the Collection Agencies Act at RCW 19.16.100(12), but they are not licensed under the Act.

9.      RRA CP also meets the definition of a "debt buyer," as defined by RCW 19.16.100(7), but they are not licensed under the Collections Agencies Act.

10.     RRA CP purports to be the owner of the home equity line of credit loan ("HELOC") secured by the Marquez property located at 4611 S. 164th St., Tukwila, WA 98188. RRA CP's purported purchase of the HELOC occurred after April 14, 2016, well after the loan went into default.

11.     RRA CP retained Real Time Resolutions, Inc. ("Real Time") to service and foreclose the HELOC with the express authority granted of RRA CP.

12.     Defendant Real Time is a Texas corporation headquartered in Dallas, Texas and conducts mortgage servicing and consumer debt collection operations in multiple states.

13.     Real Time regularly attempts to collect loans owned by others, including RRA CP, which are in default at the time Real Time assumes servicing.

14.     Real Time is a licensed out of state collection agency under RCW 19.16.100(4)(d) and (12).

15.     Real Time was, at all times relevant to the allegations in this amended complaint, acting as the agent of Defendant RRA CP and as the servicer of the mortgage loan at issue in this matter, within the meaning of the Regulation Z of the Truth in Lending Act ("TILA), and subject to its requirements at 12 CFR 1026.40.

16.     At all times relevant hereto and in all matters alleged herein, Real Time acted as agent for and on behalf of Defendant RRA CP. All the actions taken by Real Time as alleged in this matter were taken under the supervision and/or direction of RRA CP.

17.     North Star Trustee, LLC ("North Star") is a nonjudicial foreclosure trustee. North Star is a debt collector pursuant to 15 U.S.C. §1692a(6) because nonjudicial foreclosure is a means of collecting a debt, whether directly or indirectly. Additionally, for the purposes of 15 U.S.C. §1692f(6), under Title 15, a debt collector includes any person… in any business the principal purpose of which is the enforcement of security interests.

18.     Defendants have used the mails, wires, and the internet to reach across state lines into Washington to conduct their business.

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

## II.    FACTS

19.     This case rises from the emergence of the defaulted debt-buying industry in the wake of the 2008 financial collapse. The debt-buying industry finds fuel from private equity hedge funds to acquire hundreds of thousands of defaulted, non-performing, charged-off consumer mortgage loans for a minuscule amount of their face-value. These entities partner with companies like Real Time and North Star to varnish the debt with monthly statements and declarations to plug the holes in the paper. This case brilliantly highlights the inherently unfair and deceptive practices attendant to the foreclosure of a non-negotiable Home Equity Line of Credit Mr. Marquez stopped paying approximately five years before RRA CP came into existence and ten years before RRA CP appeared to assert its "rights."

20.     Mr. Marquez purchased his homestead in December of 2005. In addition to his first mortgage, originated through Countrywide Home Loans, Inc., Mr. Marquez executed a Home Equity Credit Line Agreement and Disclosure Statement on December 12, 2005, also originated by Countrywide, which was subordinate to the first mortgage.

21.     Federal regulators define home equity plans as "open-end credit plans secured by the consumer's dwelling." 12 C.F.R § 1026.40. The C.F.R enumerates multiple, unique provisions applicable to open-end credit plans not otherwise applicable to standard mortgages. See, 12 C.F.R Part 1026.40 and 12 C.F.R Part 1026.5 through 1026.16.

22.     The open-ended HELOC did not extend Mr. Marquez a loan for a fixed amount of money. According to Paragraph 5 of the HELOC:

> **CREDIT LIMIT.** My Credit Limit under this Agreement is $59,900.00. I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the 'Available Credit Limit' shown on my most recent periodic statement…

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

23.     The HELOC did not contain a fixed term or date of maturity. The minimum loan term was 20 years, and the maximum loan term was 25 years. According to Paragraph 1 of the HELOC:

> Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period such, Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement.

24.     The HELOC does not contain a requirement for Mr. Marquez to pay a fixed, monthly installment. Section 4 requires the borrower to make minimum "payments in the manner specified in the periodic statement." The HELOC speaks of the billing cycle and periodic payments rather than a particular calendar date. The amount due during the draw period, which can be 60 or 120 months, differs from the amount due during the "repayment period" when the loan amortizes over 180 months depending on the then-existing principal balance.

25.     The HELOC expressly incorporates a separate writing, "Billing Rights Statement," into its terms.  The HELOC also effectively incorporates by reference two documents: "Important Terms of Our Home Equity Line of Credit" and "When Your Home Is On The Line."

26.     The HELOC refers to draws, loans (plural), draw periods, credit limits, the ability to use checks and a credit card to draw on the credit line, and a 15-year repayment period following the 60 or 120 months draw period. The HELOC does not contain the word "NOTE."

27.     The HELOC uses the word "accelerate" once, on page seven, but otherwise lacks any explicit reference to acceleration.

28.     To secure the HELOC, Mr. Marquez executed a "Deed of Trust (Line of Credit Trust Deed)" (hereinafter "Line of Credit Trust Deed") that was recorded on December 15, 2005, as King County, Washington Instrument 20051215002817.

29.     The Line of Credit Trust Deed named Landsafe Title of Washington as the Trustee.

30.     The Line of Credit Trust Deed named the Beneficiary as "Mortgage Electronic Registration Systems, Inc. as designated nominee for Countrywide Home Loans, Inc."

31.     The Line of Credit Trust Deed contained a MERS Mortgage Identification Number ("MIN") indicating that the Marquez HELOC mortgage was "recorded in the name of the Mortgage Electronic Registration System, Inc. or MERS®, as nominee for the owner of the mortgage loan, and subsequent assignments of the mortgage were, or in the future may be, at the discretion of the master servicer, registered electronically through the MERS® System."

32.     The Line of Credit Trust Deed cross-references a nonexistent "Note."

33.     The Line of Credit Trust Deed omits any references to the term "acceleration."

34.     The Line of Credit Trust states: "The maximum term of the Note is 25 years, including any renewals or extensions thereof."

35.     The Line of Credit Trust Deed states:

> This Deed of Trust will secure your loan to us in the principal amount of $59,500 or so much thereof as may be advanced and readvanced from time to time to GABRIEL MARQUEZ VARGAS the Borrower(s) under the Home Equity Line Agreement and Disclosure Statement (the "Note") dated DECEMBER 07, 2005, plus interest and costs, late charges and all other charges related to the loan, all of which are sums repayable according to the Note. This Deed of Trust will also secure the performance of all of the promises and agreements in this Deed of Trust, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the Section of the Deed of Trust entitled "Our Authority to You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

36.     Upon information and belief, Countrywide Home Loans, Inc. originated the Marquez HELOC and sold it to the HELOC CWHEQ Revolving Home Equity Loan Trust, Series 2005-I which packaged the HELOC into a $2,000,000,000 security that was sold to individual and institutional investors. According to the CWHEQ Revolving Home Equity

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

Loan Trust, Series 2005-I Prospectus Supplement dated December 22, 2005, the notes sold to investors "will be secured by a trust fund consisting primarily of two loan groups of home equity revolving credit line loans made or to be made in the future under certain home equity revolving credit line loan agreements. The loans will be secured by second deeds of trust or mortgages primarily on one- to four-family residential properties and will bear interest at rates that adjust based on the prime rate. The trust fund may initially include funds that are expected to be used to acquire additional home equity revolving credit line loans not included in the initial cut-off date pool."

37.     The Prospectus Supplement assured investors that the mortgage servicer would mail borrowers like Mr. Marquez monthly billing statements. According to the Prospectus Supplement: "Billing statements are mailed monthly by the master servicer (emphasis added). The statements detail all debits and credits and specify the minimum payment due and the *available credit line. Notice of changes in the applicable loan rate are provided by the master servicer to the borrower with the monthly statements*" (emphasis added).

38.     The Prospectus Supplement assured investors that the mortgage servicer would timely foreclose the properties securing the defaulted HELOCs. According to the Prospectus Supplement: "The general policy of the master servicer is to initiate foreclosure in the underlying property for a mortgage loan after the loan is 90 days or more delinquent and satisfactory arrangements cannot be made with the borrower, or if a notice of default on a senior lien is received by the master servicer."

39.     The Prospectus Supplement stated that "[t]he sale and servicing agreement will require that Countrywide deliver to the depositor for delivery to the trust fund, and the trust fund will deliver to the custodian, the mortgage notes related to the mortgage loans endorsed in blank and the Related Documents…"

40.     However, according to the Prospectus Supplement, "[i]n lieu of delivery of original documentation, Countrywide **may deliver documents that have been imaged optically** on delivery of an opinion of counsel that the imaged documents are enforceable to

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

the same extent as the originals and do not impair the enforceability of the transfer to the trust fund of the mortgage loans."

41.     Moreover, "[i]n addition, with respect to any of the mortgage loans, in lieu of transferring the related mortgage to the indenture trustee as one of the Related Documents, the depositor may at its discretion provide evidence that the related mortgage is held through the MERS® System."

42.     The Purchase and Sale Agreement for the CWHEQ Revolving Home Equity Loan Trust, Series 2005-A makes clear that MERS registered loans did not require the delivery to the trust of "an original assignment of mortgage in blank in recordable form."

43.     The Purchase and Sale Agreement for CWHEQ Revolving Home Equity Loan Trust, Series 2005-A represented and warrantied that the HELOC "Mortgage Notes constitute either 'instruments' or 'general intangibles' as defined in the UCC."

44.      No one serviced the HELOC between origination and when Bank of America Home Loans ("BANA") began servicing it on July 1, 2011. Mr. Marquez made a $331.55 payment on or about December 22, 2010

45.     Mr. Marquez made his final payment in the amount of $342.60 on or about February 18, 2011.

46.      On or about February 18, 2011, a principal amount of $59,761.05 remained owing on the HELOC. Mr. Marquez did not make any more payments.

47.      More than ten years elapsed between the date of last payment and receipt of the Notice of Default.

48.     BANA's Loan History covers the period between December 15, 2005 and February 18, 2011, with no activity after February 18, 2011. RTR's Loan History Summary only covers the period after November 6, 2012. The account histories from Bank of America and RTR show no account activity for Marquez HELOC between February 18, 2011 and November 6, 2012. Neither RRA CP nor RTR appear to know with certainty whether a prior beneficiary or servicer charged off the loan nor can they provide any explanation for the gap in loan servicing records.

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

49.     On or about June 27, 2012, nearly seven years after origination of the HELOC, Mortgage Electronic Registration Systems, Inc. ("MERS"), acting through Assistant Secretary Rene Rosales, likely an employee of Bank of America, executed a purported "Assignment of Deed of Trust" ("2012 AODT"), recorded on July 2, 2012, as King County Instrument 20120702000394. The 2012 AODT claims that MERS, "For Value Received"… "does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK ("BONY"), AS SUCCESSOR TRUSTEE TO JP MORGAN CHASE BANK, N.A. ("Chase"), AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I ("BONY")…all beneficial interest under that certain Deed of Trust, described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust."

50.     The 2012 Assignment identified BONY as a purported successor trustee to Chase who acted as trustee on behalf of the certificateholders of the CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I.

51.     On or about November 6, 2012, Real Time Resolutions, Inc.'s records indicate it posted the Marquez HELOC to its systems as a "new loan" showing a due date of September 25, 2010, and a principal balance of $59,761.05.

52.      The next entry in the Real Time "Loan History Summary" was made on January 5, 2013.

53.     The Loan History Summary does not track accumulated, unpaid interest.

54.     Real Time sent some monthly statements to Mr. Marquez.

55.     The monthly statements sent by Real Time do not detail the available credit line.

56.     Not all of the monthly statements sent by Real Time detail *changes* in the interest rate.

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

57.     The Real Time Loan History Summary indicates that a new investor purchased the Marquez HELOC Account on July 1, 2016, and the account was due for the September 25, 2010 payment.

58.     The Real Time Loan History Summary indicates that a new investor purchased the Marquez HELOC Account on July 5, 2016, and the account was due for the September 25, 2010 payment.

59.     On or about May 23, 2017, "The Bank of New York Mellon fka The Bank of New York, Successor Indenture Trustee to JP Morgan Chase Bank, N.A., as Trustee for the CWHEQ Revolving Home Equity Loan Trust, Series 2005-I (assignor)" acting through Bank of America Assistant Vice President Dana M. Burton executed a purported "Assignment of Deed of Trust" ("2017 AODT"), recorded on June 1, 2017, as King County Instrument 20170601000370. The 2017 AODT claims that BONY "FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged…does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereof to RRA CP OPPORTUNITY TRUST 1.

60.     The 2017 AODT purportedly referred to Chase as "Successor Indenture Trustee," while the 2012 AODT simply referred to Chase as "Successor Trustee." Moreover, the 2017 AODT referred to the CWHEQ Revolving Home Equity Loan Trust, Series 2005-I while the 2012 AODT referred to a different entity or entities, CWHEQ INC., CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-I.

61.     A statement from Real Time dated **January 31, 2021**, stated "Your account became delinquent on ***09/26/2010***" (emphasis added). This statement indicated an interest rate of 6.75% and an outstanding principal balance of $59,761.05.

62.     On or about October 4, 2021, Mr. Marquez received a Notice of Pre-foreclosure Options from ZBA Law, LLP. Mr. Marquez subsequently submitted financial information and attended an ultimately futile meeting with Real Time. Mr. Marquez spent thousands of dollars to investigate his options. From October 4, 2021 until the present, the defendants actions have

SECOND AMENDED COMPLAINT - 10
2:22-cv-01440-LK

also caused Mr. Marquez to suffer unnecessary fear, frustration, and anxiety regarding the loss of his homestead.

63.     A statement from Real Time dated **October 31, 2021**, stated "Your account became delinquent on *01/26/2016*" (emphasis added). This statement indicated an interest rate of 6.75% and an outstanding principal balance of $59,429.04.

64.     Correspondence dated by Real Time on November 15, 2021 provided Mr. Marquez "[a] copy of the signed Home Equity Credit Line Agreement and Disclosure Statement, bearing your signature and detailing your promise to *pay a specific sum under explicit terms*…" (emphasis added). The correspondence included multiple documents, including the Loan History Summary, Deed of Trust, and a copy of the HELOC which contains an undated allonge, endorsed in blank without recourse, executed by Countrywide Home Loans, Inc.

65.     An Real Time Payoff Request dated December 21, 2021 stated:

> Loan Type HELOC
> Interest rate 7%
> Due: 1/25/2016
> Investor 454
> Principal balance $59,429.04
> Interest Method Daily/Actual

66.     A statement from Real Time dated **January 31, 2022**, stated "Your account became delinquent on *01/26/2016*" (emphasis added).  This statement indicated an interest rate of 6.75% and an outstanding principal balance of $59,429.04.

67.     On or about April 5, 2022, David Rosas, Real Time's Director of Loss Mitigation, executed a document entitled "Declaration of Note Holder." Paragraph 3 of The Declaration stated, in relevant part: "RRA CP Opportunity Trust 1 By: Real Time Resolutions, Inc.; Its: Attorney-in-Fact is the *holder* of the *Promissory Note* dated 12/7/2005 executed by Gabriel Marquez Vargas, an unmarried man (the borrower") in favor of *Countrywide Home Loans, Inc.* in the *principal amount* of $59,900.00" (emphases added).

SECOND AMENDED COMPLAINT - 11
2:22-cv-01440-LK

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

Paragraph 4 of the Declaration stated, in relevant part, "The Beneficiary has **possession** of the original **note**" (emphasis added).

68.     North Star Trustee, LLC prepared and served a Notice of Default on Mr. Marquez on or around May 9, 2022. The Notice of Default alleged:

> The Beneficiary and Note holder: RRA CP Opportunity Trust 1
> Monthly payments due May 25, 2016 through April 28, 2022
>
> **PROMISSORY NOTE INFORMATION**
> Note Dated: 12/7/2005
> Note Amount: $59,900.00
> Interest Paid To: April 25, 2016
> Next Due Date: May 25, 2016

69.     A statement from Real Time dated **July 31, 2022**, stated "Your account became delinquent on **05/26/2016**" (emphasis added). This statement indicated an interest rate of 8.25% and an outstanding principal balance of $58,101.00.

70.     North Star Trustee, LLC prepared, served, and recorded a Notice of Trustee's Sale on or about July 15, 2022 as King County Instrument 20220715000341. The Notice of Trustee's Sale alleged:

> Current beneficiary of the deed of trust: RRA CP Opportunity Trust 1
> Monthly payments due May 25, 2016 through July 1, 2022
>
> **PROMISSORY NOTE INFORMATION**
> Note Dated: 12/7/2005
> Note Amount: $59,900.00
> Interest Paid To: April 25, 2016
> Next Due Date: May 25, 2016

71.     The Notice of Foreclosure accompanying the Notice of Trustee's Sale indicated a principal balance due of $58,101.00, $28,251.78 in unpaid interest, and $7,826.82 in fees and costs.

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

III.    CAUSES OF ACTION

1. **Quiet Title Action Against RRA CP**

72.     Plaintiff incorporates herein by reference as though fully set forth at length, each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

73.     When an action to foreclose on a deed of trust is barred by the statute of limitations, RCW 7.28.300 authorizes the record owner to bring a quiet title action to clear the deed of trust. *Westar Funding v. Sorrels*, 157 Wn.App. 777, 785 (2010).

74.     The Marquez HELOC is an open-ended credit agreement whose monetary obligation was never fixed in either the HELOC Agreement or the Line of Credit Trust Deed. Indeed, "Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note." The HELOC agreement is not a negotiable instrument because the contract, as drafted by the originator, did not articulate a fixed amount owed because it allowed Mr. Marquez to pay down and draw from the HELOC for five to ten years.Absent the ability to unequivocally ascertain the amount of the sum certain owed on the HELOC and the date of maturity, the HELOC cannot constitute a negotiable instrument. See, e.g., Investment Consultants, Inc. v. Ramirez (In re Ramirez), No. CC-19-1257-STaF, 2020 WL 4436263, at *8 n.6 (B.A.P. 9th Cir. Aug. 3, 2020 (unpublished) (A HELOC is not a promissory note within the meaning of Article 3 of the Uniform Commercial Code).

75.     Here, the "maturity" date cannot be found in the HELOC. To constitute a negotiable instrument, the instrument must be payable at a definite time. RCW 62A.3-104(a)(2). While the parties agree the maximum term of the Marquez HELOC was 25 years, the minimum term was 20 years. Dkt. 26, ¶ 23. The actual term of the contract turned on whether the creditor sent the borrower a written notice declining to renew the initial draw period. *Id.*  The necessity of referring to written notices sent years after origination prevents the creditor from presenting the contract to the Court as a negotiable instrument. Ronald A. Anderson, On The Uniform Commercial Code § 3-104:13, at 115 (3d ed. 1994) (*citing Holsonback v. First State Bank of Albertville*, 394 So.2d 381, (Ala. Civ. App. 1980)).

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

76.     In this HELOC the provisions of the non-negotiable agreement in Paragraph 18(I)– Other Provisions, Waiver of Notice – states that any right to notice of default demand or other notices and formalities are not required.

77.     To constitute a negotiable instrument, the promises contained in the contract must be unconditional. RCW 62A.3-104(a). The Marquez HELOC Agreement explicitly incorporates by reference the Billing Rights Statement and implicitly incorporates at least two external writings: "Important Terms of Our Home Equity Line of Credit," and "When your home is on the line." Dkt. No. 27- 5, p. 61. The HELOC's reliance on external documents which contain substantive terms reinforce its lack of negotiability and the inapplicability of Article 3 case law.

78.     Here, the account history for the HELOC shows a gap in the payment history from February 18, 2011 through November 6, 2012. This gap indicates no statements were produced and Bank of America, Countrywide, or another entity charged-off the loan. Thus, all subsequent parties took possession of the HELOC knowing that the agreement was in default.

79.     The Defendants know they have run out of time.  Real Time's January 31, 2021 statement lists September 26, 2010 as the date of delinquency. Without explanation, Real Time's October 31, 2021 statement alleged, "Your account became delinquent on *01/26/2016*" (emphasis added). Real Time's July 31, 2022 statement provided yet a different date of delinquency of May 26, 2016.

80.     No payments at this time are due as the HELOC is completely barred by the six-year statute of limitations for contracts enumerated at RCW 4.16.040. The Legislature enumerated Washington's general statute of limitations for contracts at RCW 4.16.040 which provides that "[a]n action upon a contract in writing, or liability express or implied arising out of a written agreement…shall be commenced within six years." RCW 4.16.040(1),

> Under Washington's generally applicable statute of limitations for contracts:
>
> A cause of action accrues when the party has the right to apply to a court for relief. In many instances an action accrues immediately

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

when the wrongful act occurs, but in some circumstances where the plaintiff is unaware of harm sustained, a 'literal application of the statute of limitations' could 'result in grave injustice.' To avoid this injustice, courts have applied a discovery rule of accrual, under which the cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action. This does not mean that the action accrues when the plaintiff learns that he or she has a legal cause of action; rather, the action accrues when the plaintiff discovers the salient facts underlying the elements of the cause of action.

*1000 Va. Ltd. P'ship v. Vertecs*, 158 Wash. 2d 566, 575-76, 146 P.3d 423, 428 (2006).

81.    To ascertain which statute of limitations applies, we must read the HELOC as it was drafted at the time it was drafted, not based on the assumptions and practices of the loan servicer. *Bucci v. Nw. Tr. Servs., Inc.*, 197 Wn. App. 318, 329 (2016). If we read the HELOC honestly, as drafted by Countrywide, we can only conclude that the Marquez HELOC constitutes a nonnegotiable contract because it contained conditional promises and provided Mr. Marquez with an open-ended credit line without a fixed term, monthly installment, or amount due at the time it was drafted and executed. Thus, Washington's general six-year statute of limitations for contracts applies to this HELOC and the statute accrued upon discovery of Mr. Marquez's breach.

82.    RRA CP also lacks standing to bring a non-judicial foreclosure. It has not presented any credible evidence to show it is entitled to enforce the HELOC.

83.    It seems that RRA CP believes that "holding" the HELOC Agreement alone is enough to enforce it. However, this is not a negotiable instrument, and to foreclose they must authenticate the chain of assignments.

84.    The facts demonstrate that Real Time, North Star, and RRA CP falls short in authenticating the documents comprising the chain of title because the securitized trust documents expressly articulate that the original assignments were scanned and shredded.

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

85.     The Defendants also cannot prove up their authority in reliance on a beneficiary declaration which speaks of a sum certain relevant only to a negotiable instrument, language completely foreign to the enforcement of a non-negotiable HELOC Agreement.

86.     As such, the statute of limitations bars any actions to foreclose the HELOC and RCW 7.28.030 empowers this Court to quiet title in favor of Mr. Marquez and against RRA CP. The HELOC constitutes a cloud on Mr. Marquez's title that this honorable court should remove.

## 2.  FDCPA (All Defendants)

87.     Plaintiff incorporates herein by reference as though fully set forth at length, each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

88.     RRA CP is a debt buyer whose principal business purpose is the purchase of defaulted debts for collection. Here, it bought the loan after it went into default and is a debt collector.

89.     Real Time collects the Plaintiff's loan on behalf of defendant RRA CP. Real Time regularly uses the mails and/or the telephone in their business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts.

90.     It did not service the Loan until after Mr. Marquez defaulted. Thus, Defendant Real Time was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt they sought to collect from Mr. Marquez.

91.     The available evidence leads to the reasonable inference that Bank of America, N.A., Countrywide Home Loans, Inc., or some other entity charged-off the HELOC before Real Time appeared in late 2012 and well before RRA CP came into existence. A predecessor's charge-off and waiver of the right to collect interest bars subsequent successors from charging interest and fees. The loan history gap shows that Bank of America, Countrywide, or another entity waived fees and interest after the HELOC defaulted, and Real Time violated the FDCPA by collecting fees and interest knowingly waived by the original creditor seller.

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

92.     Federal rules also bar creditors from charging any additional fees or interest on a HELOC after deeming an account uncollectible, charging it off, and ceasing the delivery of periodic statements to the borrower. See 12 CFR § 1026.5(b)(2)(i) and 1026.7. The gap in the account history and subsequent sale of the defaulted debt gives rise to an inference that Bank of America or Countrywide Home Loans, Inc. charged-off the Marquez HELOC, stopped sending statements to Marquez, and waived the right to charge him additional fees or interest on the charged-off account.

93.     The evidence from the record indicates the defendants acted in concert to collect on a time barred debt. They acted to eliminate 64 and then 68 purported installment payments when there are no amounts legally enforceable on this HELOC.

94.     Given the information contained in the record identifying three different dates of default and corresponding differences in the interest fees, and principal balance owed, the defendants have provided abundant evidence that they continue to collect on time-barred debt.

95.     Real Time cannot foreclose the Marquez HELOC because it lacks the present right to possession of the Marquez collateral when they initiated nonjudicial foreclosure against Mr. Marquez.

96.     The foregoing acts and omissions of Defendants constituted (1) false, deceptive and misleading statements, and (2) unfair practices in violation of 15 U.S.C. §§ 1692e and 1692f of the FDCPA.

97.     In relevant part, § 1692e prohibits debt collectors from using:
"[a]ny false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: …… (2) The false representation of – (A) the character, amount, or legal status of any debt; …… (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. ……. (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e.

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

98.      . In the instant matter, Defendants' actions violated §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

99.      Defendants ran afoul of the foregoing provisions by doing the following: (1) proclaiming that RRA CP was entitled to foreclose on Plaintiff by claiming it has possession of the original note, (2) by claiming that RRA CP was entitled to collect 8.25% interest from Plaintiff in the notice of foreclosure, and 7% interest in the payoff statement, when no interest was due, (3) by claiming that the loan first came delinquent on *05/26/2016* when the first delinquency was in *09/26/2010* and the last payment made on the loan was on February 18, 2011, such that the loan is time-barred, and (4) proclaiming that RRA CP was entitled to foreclose on Plaintiff thanks to an assignment from The Bank of New York Mellon fka The Bank of New York, Successor Indenture Trustee to JP Morgan Chase Bank, N.A., as Trustee for the CWHEQ Revolving Home Equity Loan Trust, Series 2005-I (assignor) when the only documentation for an assignment is an undated allonge, endorsed in blank without recourse and executed by Countrywide Home Loans, Inc.

100.     Additionally, Real Time sent Mr. Marquez one or more monthly statements debt from March 2017 through January 2021, seeking to collect time barred debt.

101.     Since the mortgage debt was time barred, any communication to Mr. Marquez that included amounts that were not owed, were an attempt to trick the Plaintiff into resuming payments that were not owed to restart the statute of limitations. Thus, Defendant Real Time violated the FDCPA when they sent misleading mortgage statements.

102.     Here, Defendant Real Time communications that Mr. Marquez still owed the time barred debt violated the FDCPA, including but not limited to the following:

   a.   Using any false, deceptive, or misleading representation or means in connection with the collection of any debt, in violation of 15U.S.C. §§ 1692e and e(10);

   b.   Falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

c. Representing or implying that nonpayment of any debt will result in …. the seizure ……or sale of any property or wages of any person when such action is not lawful, in violation of 15 U.S.C. § 1692d(4);

d. Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f; and

e. Collecting any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, in violation 15 U.S.C. § 1692f(1);

103.    In relevant part, § 1692f prohibits debt collectors from engaging in: "[u]nfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f.

104.    Merriam-Webster's Collegiate Dictionary defines unfair as: "[M]arked by injustice, partiality, or deception." Merriam-Webster's Collegiate Dictionary, 11th Ed. 2012.

105.    In the instant matter, Defendants' actions constituted unfair conduct in violation of §1692f because critical representations made by Defendants to Plaintiff, to the court, and to the general public contained material falsehoods.

106.    Defendants falsely represented to the general public that RRA CP Opportunity Trust 1 had the right to foreclose on Plaintiff's HELOC.

107.    Unfortunately, RRA CP does not have any way to show a chain of assignment from Countrywide Home Loans since they ceased to exist many years ago. The only evidence produced is an undated allonge, endorsed in blank without recourse and executed by Countrywide Home Loans, Inc which is not proper proof of assignment for a HELOC.

108.    Real Time as the agent for RRA CP, filed this assignment on June 1, 2017 from The Bank of New York Mellon fka The Bank of New York, Successor Indenture Trustee to JP Morgan Chase Bank, N.A., as Trustee for the CWHEQ Revolving Home Equity Loan Trust, Series 2005-I (assignor) knowingly, as a person had to intentionally add typed text onto a blank, notarized form in order to create the "assignment."

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

109.    . Defendants Real Time and North Star also falsely represented to the general public that RRA CP was entitled to claim 8.5% interest when it was not due any interest at all.

110.    Additionally, any legal right to collect on the Marquez HELOC expired on or about November 7, 2018 because the six-year statute of limitations accrued for the entire HELOC on February 18, 2011, that date of last payment on the loan. Thus, Real Time violated the FDCPA under 15 U.S.C. §1692f(6) because the law bars debt collectors from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral when the debt collection action is barred as a matter of law. Notably, the HELOC Agreement indicates that the creditor agrees to comply with Regulation Z.

111.    Such violations constituted false representations of the amount of a debt, false statements in connection with the collection of a debt, and threats to take action that cannot legally be taken.

112.    As a result of Defendants' actions, Plaintiff has suffered such harm as has previously been stated herein.

113.    Such conduct has damaged Mr. Marquez by causing him to incur sums to hire an attorney to investigate such unlawful actions, and but for their conduct, he would not have suffered fear, frustration, and anxiety regarding the loss of his homestead through unlawful and deceptive foreclosure proceedings based on time-barred debts.

114.    The Plaintiff's emotional turmoil is exacerbated because he defaulted on his first mortgage during the COVID crisis and the decision of Real Time to collect a time-barred debt is interfering with the Plaintiff's ability to negotiate a modification and resolution of the default on the first mortgage loan.

115.    Defendants' conduct in violation of the FDCPA caused and proximately caused injury and damages to the Plaintiff.

116.    Mr. Marquez is entitled to compensatory, special and general damages as allowed by law.

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

117.    Mr. Marquez is also entitled to statutory damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

118.    Due to the foregoing violations of 15 U.S.C. §§ 1692e and 1692f, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount of up to $1000.00 pursuant to § 1692k(a)(2)(A); and reasonable attorneys' fees and costs pursuant to § 1692k(a)(3).

### 3.    Unlawful Collection Attempts on Time Barred Debts in Violation of RCW 4.16.040(1) Violate the Washington State Consumer Protection Act.

119.    The Plaintiff re-alleges and incorporate all previous paragraphs herein.

120.    With respect to the alleged debt, Plaintiffs are "debtors" as defined by RCW 19.16.100(8) and Defendants RRA CP and Real Time Resolutions are collection agencies as defined by RCW 19.16.100(4).

121.    Violations of RCW 19.16.250 and 19136.260 are per se violations of the Consumer Protection Act ("CPA"), RCW chapter 19.86.1 *See* RCW 19.16.440. RCW 19.86.090 provides for treble damages (to a limit of $25,000) and attorney's fees.

122.    RCW Chapter 19.16 is enforced through RCW 19.86 et seq., the below allegations for violations of RCW Chapter 19.16 and are therefore CPA violations.

123.    Even minimal or nominal damages constitute "injury" under the CPA. *Panag v. Farmers Ins. Co. of Wash*., 166 Wn.2d 27, 57 (2009). A plaintiff need not prove any monetary damages at all, as even "unquantifiable damages" suffice to establish "injury" for purposes of the CPA. *Id.* (citing *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987))

124.    Under the Collection Agency Act, it is prohibited as an unfair and deceptive act for any person or entity to act as a collection agency in Washington State without having a collection agency license. RCW 19.16.110.

125.    The Collection Agency Act defines a "collection agency" as "[a]ny person or entity that directly or indirectly engages in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." RCW 19.16.100(4)(a).

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

1   126.    Real Time is a licensed collection agency.

2   127.    RRA CP is a debt buyer who is required to be a licensed collection agency but it

3   is unlicensed.

4   128.    RRA CP, by collecting delinquent debt on Washington Residents and otherwise

5   operating as a collection agency in Washington without being licensed as required by law, RRA CP

6   violated the Collection Agency Act. RCW 19.16.110; RCW 19.16.260(1)(a).

7   129.    Violations of RCW 19.16.110 of the Collection Agency Act are *per se* unfair or

8   deceptive practices in trade or commerce under the CPA. RCW 19.16.440.

9   130.    Violations of RCW 19.16.250(15); RCW 19.16.250(16) and RCW 19.16.250(21)

10  of the Collection Agency Act are also *per se* unfair or deceptive practices in trade or commerce

11  under the CPA. RCW 19.16.440

12  131.    Violations of the licensing requirement in RCW 19.16.110 and the prohibited

13  collection practice provisions in RCW 19.16.250 of the Collection Agency Act, which includes

14  RCW 19.16.250(15); RCW 19.16.250(16) and RCW 19.16.250(21), also satisfy the "public

15  interest impact" element of a CPA claim. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d

16  27, 54, 204 P.3d 885 (2009).

17  132.    RCW 19.16.250(15) states that a collection agency shall not "represent or imply

18  that the existing obligation of the debtor may be or has been increased by the addition of

19  attorney fees, investigation fees, service fees, or any other fees or charges when in fact such fees

20  or charges may not legally be added."

21  133.    Under the Collection Agency Act, it is also prohibited for a licensed collection

22  agency to threaten to take any action against the debtor which the licensee cannot legally take at

23  the time the threat is made. RCW 19.16.250(16).

24  134.    This prohibition against threatening to take an action against the debtor which the

25  licensed collection agency cannot legally take at the time the threat is made includes taking the

26  action that cannot legally be taken.

135.    Under the Collection Agency Act, it is also prohibited for a licensed collection

agency to collect or attempt to collect in addition to the principal amount any sum other than

SECOND AMENDED COMPLAINT - 22
2:22-cv-01440-LK

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, allowable attorney's fees and taxable court costs. RCW 19.16.250(21).

136.     By including interest, fees and costs that could not be legally collected in an attempt to represent or imply that the existing obligation of the debtor may be or has been increased by the addition of interest, fees and costs when in fact such fees or charges may not legally be added and violated RCW 19.16.250(15).

137.     By sending the Plaintiff monthly statements when there was no debt due, Real Time and RRA CP threatened to take and took action to collect debt that they could not legally take at the time the threat was made and violated RCW 19.16.250(16).

138.     By knowingly attempting to collect upon time barred debts under the color of law, Real Time and RRA CP engaged in unfair and deceptive business practices in violation of the Revised Code of Washington Ch. 19.86. It is unlawful for Real Time to "[b]ring an action or initiate an arbitration proceeding on a claim when the licensee knows, or reasonably should know, that such suit or arbitration is barred by the applicable statute of limitations." RCW 19.16.250(23).

139.     By wrongly conflating Article 3 enforcement concepts with the rules for the enforcement of a non-negotiable HELOC Agreement, Real Time unfairly deceived Mr. Marquez, the public, and the courts into believing that HELOC Agreements may be enforced as negotiable instruments.

140.     By failing to articulate a consistent position regarding the accrual of the statute of limitations with respect to individual installment payments, Real Time published inaccurate statements and default information that unfairly deceived Mr. Marquez and the public record.

141.     Real Time's production and conveyance of post-charge off monthly statements without qualification and which included fees and interest not allowed by law unfairly deceived recipients such as Mr. Marquez about the amount of any debt they owed.

142.     Real Time's production of inaccurate monthly statements that omitted information regarding changes in the interest rate and available credit line unfairly deceived recipients regarding the nature of the debt.

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

143.     Real Time's production of statements which contained inflated, time-barred principal amounts unfairly deceived the Plaintiff. Similarly, on November 15, 2021, Real Time deceptively alleged that Mr. Marquez agreed to "pay a specific sum under explicit terms…"

144.     The decision of Real Time to include interest and fees on a charged-off HELOC on documents recorded in the public record unfairly deceived the public and recipients such as Mr. Marquez about the character and amount of any debt they owed.

145.     The preparation, publication, and propagation of documents like the "Declaration of Note Holder" which contained references to legal nullities unfairly deceived recipients like Mr. Marquez because the documents wrongfully inculcated the belief that Real Time possessed the legal authority and right to seize Washington homesteads.

146.     Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward hundreds of other alleged debtors in Washington.

147.     As a result of the above unlawful actions and practices in violation of RCW 19.16.250(15); 19.16.250(16) and RCW 19.16.250(21) and RCW 19.16.250(23), Real Time and RRA CP are prohibited from recovering any interest, attorneys' fees, or other costs otherwise chargeable to the debtor on these accounts other than the amount of the original claim it is somehow not time barred.

148.     The actions of Real Time injured Mr. Marquez because he spent money to defend and investigate the actions of the defendants as a proximate cause of their willful failure to comply with state and federal law.

149.     Real Time further injured Mr. Marquez by engaging in unfair and deceptive conduct which directly caused Mr. Marquez to suffer fear, frustration, and anxiety in the face of the wrongful loss of his homestead because the statute of limitations barred the defendants from foreclosing.

150.     RRA CP is vicariously liable for the acts and omissions of Real Time because it engaged and authorized Real Time to act on its behalf through written contracts in relation to the Plaintiff and/or ratified Real Time's conduct performed on their behalf.

**Barraza Law PLLC**
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

151.    The wrongful foreclosure of Washington homesteads based on partially or completely time-barred debts portends an unacceptable risk of propagation and actually damages the public's faith in the rule of law, the public's sense of security in their homesteads, and unnecessarily burdens the recorder, assessor, courts, Sheriffs and other public officials who provide essential services to enable creditors, loan servicers, and their nonjudicial foreclosure trustees to effectuate foreclosures under the color of law.

152.    The wrongful conduct exhibited by the defendants should be enjoined as authorized by RCW 19.86.

153.    In addition to their individual damages, Plaintiffs are entitled to an award of reasonable attorney's fees and non-taxable and taxable costs incurred on his behalf.

### 4.  Declaratory and Injunctive Relief Against Real Time .

154.    The Plaintiff re-alleges and incorporates all previous paragraphs herein

155.    A plaintiff may seek a declaratory judgment under RCW 7.24 *et seq.* and injunctive relief for violations of the Consumer Protection Act. RCW 7.24 *et seq.*; RCW 19.86.090.

156.    Mr. Marquez seeks injunctive relief from this Court to enjoin Real Time from collecting debts in the manner described above from the Plaintiff and any other person similarly situated.   *Hockley v. Hargitt*, 82 Wn.2d 337, 350, 510 P.2d 1123 (1973).

157.    Specifically, Mr. Marquez seeks an injunction prohibiting Real Time from pursuing their unlawful collection tactics, including but not limited to demanding collection fees/costs that are specifically disallowed by statute, misrepresenting the status of the debt, and collecting on foreclosure debt barred by the passing of the statute of limitations.

158.    Plaintiff has reason to believe these actions make up a pattern and practice of behavior capable of, or which, impacts similarly situated consumers.

159.    Injunctive relief is necessary to prevent further injury to Mr. Marquez and the Washington state public.

160.    Injunctive relief should therefore issue as described herein.

Respectfully submitted this 30th day of January 2023.

Barraza Law PLLC
10728 16th Ave SW
Seattle, WA 98146
telephone (206) 933-7861
fax (206) 933-7863

BARRAZA LAW, PLLC

*/s/ Vicente Omar Barraza*
Vicente O Barraza, WSBA 43589
10728 16th Ave SW
Seattle, WA 98146
omar@barrazalaw.com
Tel# 206-933-7861

HENRY & DEGRAAFF, P.S.

*/s/ Christina L Henry*
Christina L. Henry, WSBA# 31273
113 Cherry St, PMB 58364
Seattle, Washington 98104-2205
chenry@HDM-legal.com
Tel# 206-330-0595